# Exhibit A

**Before the**
**FEDERAL COMMUNICATIONS COMMISSION**
**Washington, D.C.  20554**

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| **Paramount Global**, Petitioner, | ) | |
| | ) | |
| Petition for Declaratory Ruling under Section | ) | File No. ISP-PDR-_____-_____ |
| 310(b)(4) of the Communications Act, of 1934, as | ) | |
| Amended | ) | |
| | ) | |

**PETITION FOR DECLARATORY RULING**

Paramount Global ("Paramount" or "Petitioner"), on behalf of itself and its subsidiaries

that operate television broadcast stations ("Licensees"), files this petition for declaratory ruling

("Petition") pursuant to Section 310(b)(4) of the Communications Act of 1934, as amended (the

"Act"), and Section 1.5000 *et seq.* of the Commission's rules.[1]  Specifically, as a result of the

Proposed Investment (defined in Section I, below), Paramount anticipates an increase in foreign

investment in its parent entity, Paramount Skydance Corporation ("Paramount Skydance"),[2]

through the issuance of new non-voting, Class B shares.  Accordingly, Paramount requests that

the Commission issue a declaratory ruling to (1) permit existing and prospective foreign

investors to indirectly hold in excess of 25 percent of Paramount's equity and/or voting interests,

in the aggregate, and (2) grant specific and advance approval for certain non-U.S. entities to

indirectly hold equity and/or deemed voting interests of greater than 5 percent in Paramount, in

---

[1] 47 U.S.C. § 310(b)(4); 47 C.F.R. § 1.5000 *et seq.*

[2] Paramount Skydance Corporation is the entity identified as "New Paramount" in the
application for approval and the Commission's order approving the transfer of control of
Paramount Global to the Ellison family.  *See Applications for Consent to the Transfer of Control
of Paramount Global*, MB Docket No. 24-275, Memorandum Opinion and Order, FCC 25-43
(rel. July 24, 2025).

the form of newly issued non-voting, Class B shares. Although Paramount expects that existing and prospective foreign investors will indirectly hold slightly less than 50 percent of Paramount's equity interests after consummating the Proposed Investment described below, Paramount seeks approval for foreign investors in the aggregate to indirectly hold up to 100 percent of its equity and/or voting interests in light of routine fluctuations in publicly held equity interests and to account for potential future investments (subject to any specific approval requirements in Section 1.5004(a)).[3]

Notably, the Proposed Investment will not result in a transfer of control of Paramount. Rather, the Ellison family will retain a majority of the voting interests and control of Paramount. Thus, no other application is being filed in connection with this Petition. The Commission's grant of this Petition will serve the public interest by facilitating increased investment in U.S. television broadcasting, thus enabling Paramount and the Licensees to compete more effectively in the television broadcast marketplace through greater innovation and a broader range of programming and content, all without presenting any national security, law enforcement, or foreign or trade policy concerns.

## I.    BACKGROUND

### A.    Controlling U.S. Parent

Paramount, a Delaware corporation, is designated as the Controlling U.S. Parent in this Petition. This Petition seeks approval for indirect foreign ownership of Paramount that will be introduced in connection with planned new investment in Paramount Skydance (the "Proposed

---

[3] 47 C.F.R. § 1.5004(a)(1) (allowing a controlling U.S.-organized parent named in a declaratory ruling to be 100 percent owned on a going-forward basis by other foreign investors without prior Commission approval, subject to the requirement to seek prior approval before any foreign person or group not previously approved acquires more than five percent of the equity or voting interests, or a controlling interest (subject to any applicable exemption)).

2

Investment") that will occur through the Equity Syndication described below, including specific and advance approval of certain non-U.S. investors and approval of aggregate foreign ownership of up to 100 percent of the equity and/or voting interests in Paramount.

Paramount is a Delaware corporation that, through the Licensees (each a direct or indirect wholly owned subsidiary of Paramount), operates 28 broadcast television stations in certain communities across the United States pursuant to Commission authorization.[4]  Paramount is a direct, wholly owned subsidiary of Paramount Skydance, a leading global media, streaming, and entertainment company that creates premium content and experiences for audiences worldwide.

Paramount Skydance's portfolio includes iconic assets such as the national CBS television network, Paramount Pictures, Nickelodeon, MTV, Comedy Central, and BET.  The company also operates streaming platforms, including Paramount+ and Pluto TV.  Paramount Skydance holds extensive libraries of television and film titles, engages in content production and distribution, and provides advertising solutions.

### B.    Paramount Global Ownership

Paramount is directly wholly owned by Paramount Skydance Corporation, a Delaware corporation.  Paramount Skydance is owned through two classes of stock:  (i) Class A Common Stock, the holders of which have 100 percent of the voting interests in Paramount Skydance, and (ii) Class B Common Stock, which are non-voting shares.

#### 1.    Class A Voting Interests

All Class A shares in Paramount Skydance are owned directly or indirectly by Harbor Lights Entertainment, Inc. ("Harbor Lights").[5]  The Ellison family, through its investment

---

[4] See **Exhibit A** for a list of the Licensees and the communities in which they operate.

[5] Harbor Lights Entertainment, Inc. was formerly named National Amusements, Inc.  Harbor Lights owns 100 percent of HLE Entertainment Holdings LLC (formerly named NAI

vehicles, controls Paramount Skydance through ownership of 77.5 percent of Harbor Lights. The remaining 22.5 percent of Harbor Lights is owned by funds managed and controlled by RedBird Capital Partners ("RedBird"). Thus, all voting interests are held by the Ellison family and RedBird.

Specifically, Harbor Lights is directly owned by (a) Pinnacle Media Ventures, LLC, Pinnacle Media Ventures II, LLC, and Pinnacle Media Ventures III, LLC (collectively, "Pinnacle Media"), each a Delaware limited liability company controlled by the Ellison family, and (b) RB Tentpole Holdings LP, a Delaware limited partnership that is ultimately controlled by RedBird.

David Ellison is the sole manager of Hikouki, LLC, Furaito, LLC, and Aozora, LLC, which are the holding companies that each respectively own 100 percent of the Pinnacle Media entities. Sayonara, LLC ("Sayonara") is the sole member of Hikouki, LLC, Furaito, LLC, and Aozora, LLC. Sayonara is owned and controlled by The Lawrence J. Ellison Revocable Trust u/a/d 1/22/88, as amended (the "Trust"), which is controlled by Lawerence J. Ellison.

David Ellison has granted to Sayonara a voting interest equal to approximately 35.5 percent in each of Hikouki, LLC, Furaito, LLC, and Aozora, LLC, and David Ellison retains an approximately 64.5 percent interest. In addition, by voting proxy, the Pinnacle Media entities have each granted David Ellison 64.5 percent of their respective voting interests in Harbor Lights (and indirectly in Paramount Skydance) and have granted Sayonara the remaining 35.5 percent. David Ellison and Sayonara have the right to designate the Ellison family directors of Harbor Lights and Paramount Skydance, each in accordance with these voting percentages. David Ellison also serves as the Chairman and CEO of Paramount Skydance. Sayonara does not have

---

Entertainment Holdings LLC), which in turn owns 100 percent of SPV-HLE LLC (formerly named SPV-NAIEH LLC). HLE Entertainment Holdings LLC and SPV-HLE LLC each directly own Class A shares of Paramount Skydance.

4

any veto rights, or any special or outsized voting rights, in Harbor Lights or Paramount Skydance as a result of its minority voting interests.

### 2. Class B Non-Voting Interests

Class B Common Stock of Paramount Skydance is publicly traded on The Nasdaq Stock Market, LLC (Trading Symbol: PSKY).  Holders of Class B shares (who do not also hold Class A voting shares or otherwise have an active role in the management of the company) are not attributable under the Commission broadcast ownership rules.[6]

In addition to the Class A voting shares discussed above, currently (a) the Ellison family owns approximately 39.8 percent of outstanding Class B shares through various investment vehicles, (b) funds managed by RedBird own approximately 8.7 percent of outstanding Class B shares, and (c) Harbor Lights and its subsidiaries own approximately 6.6 percent of outstanding Class B shares.

### C. Proposed Investment

On February 27, 2026, Paramount Skydance and Warner Bros. Discovery, Inc. ("WBD") entered into a merger agreement ("Merger Agreement") providing for the acquisition of WBD by Paramount Skydance.  Concurrently with the execution of the Merger Agreement, Lawrence J. Ellison and the Trust (together, the "Ellison Parties") entered into a guarantee in favor of WBD to jointly and severally guarantee the payment of all amounts payable under the Merger Agreement (to the extent due and payable).  In addition, concurrently with the execution of the Merger Agreement, each of (i) the Ellison Parties and (ii) RedBird Capital Partners Fund IV (Master), L.P. ("RedBird Fund IV") entered into subscription agreements providing for a private placement investment in Paramount Skydance Class B Common Stock (which, again, are non-

---

[6] *See* 47 C.F.R. § 73.3555 Note 2(e).

voting shares) for an aggregate amount of up to $46.72 billion from the Trust, and $250 million from RedBird Fund IV.[7]

The Trust and RedBird Fund IV have entered into agreements to assign their rights to subscribe for Class B shares (the "Equity Syndication") to affiliates of the Ellison Parties and RedBird Fund IV, as well as certain institutional investors, including the following:  (i) The Public Investment Fund ("PIF"), a sovereign wealth fund and instrumentality of Saudi Arabia (ii) L'Imad 1st SPV 2 Exempt RSC LTD ("L'Imad"), an investment vehicle of L'imad Holding, an Abu Dhabi government investment fund, and (iii) QIA TMT Holding LLC ("QIA," together with PIF and L'Imad, the "Non-U.S. Investors"), an investment vehicle of the Qatar Investment Authority.[8]

After giving effect to the Proposed Investment, the Ellison family and RedBird together will continue to hold the largest equity stake in Paramount Skydance and will continue to be the indirect owners of 100 percent of Paramount Skydance Class A Common Stock, representing 100 percent of the voting shares of, and thus control of, Paramount Skydance.

---

[7] Holders of Paramount Skydance Class B Common Stock (other than the Ellison Entities and RedBird Fund IV, and their respective affiliates) will be issued warrants that will entitle the holder to purchase one share of Paramount Skydance Class B Common Stock at an initial exercise price per share equal to the 20-trading-day average of the daily volume-weighted average price of Class B Common Stock, determined as of the third business day prior to the closing of the WBD acquisition, subject to a ceiling of $16.02 per share and a floor of $12.00 per share (the "Syndication Purchase Price"), with the warrant entitlement and exercise price subject to customary anti-dilution adjustments and fundamental change make-whole adjustments.

[8] LionTree Investment Fund, L.P., a Cayman Islands exempted limited partnership that is controlled by LionTree LLC, a U.S. investment bank, will also participate in the Equity Syndication, but will hold Class B shares representing a less than five percent equity and/or voting interest, and thus does not require specific approval.

## II.    INFORMATION REQUIRED BY SECTION § 1.5001

Pursuant to Section 1.5001 of the Commission's rules,[9] Paramount provides the

following information in support of this Petition:

### A.    Section 1.5001(a) – Contact Information, Citizenship, Entity Type, Type of Business, and Certifying Individual Information

Petitioner:

Paramount Global                FRN:  0003612447
1515 Broadway
New York, NY 10036
(212) 258-6000

Entity Type: Corporation
Citizenship: U.S. (Delaware)

Certifying Individual: Makan Delrahim, Chief Legal Officer of Paramount Skydance
Corporation

### B.    Section 1.5001(b) – Legal Counsel Contact Information

Counsel for Paramount Global:

Matthew A. Brill
Elizabeth R. Park
Latham & Watkins LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC  20004
Tel: (202) 637-2200
Fax: (202) 637-2201
matthew.brill@lw.com
elizabeth.park@lw.com

### C.    Section 1.5001(c)(1) – Broadcast Service Authorizations

This Petition relates to the television broadcast licenses held by the Licensees, each of

which is a direct or indirect wholly owned subsidiary of Paramount.  See **Exhibit A** for a list of

the Licensees and the communities in which they operate.

---

[9] 47 C.F.R. § 1.5001.

### D.   Section 1.5001(d) – Type of Declaratory Ruling Requested

Paramount is requesting a declaratory ruling pursuant to Section 310(b)(4) of the Act and

Section 1.5000(a)(1) of the Commission's rules.

### E.   Section 1.5001(e) and (g) – Direct Ownership Information: Attributable Interest Holder

The following entity holds, and is expected to continue to hold upon consummation of

the Proposed Investment, a direct attributable interest in Paramount:[10]

| | |
|---|---|
| Name: | Paramount Skydance Corporation |
| Entity Type: | Corporation |
| Citizenship: | U.S. (Delaware) |
| Principal Business: | Holding Company |
| Percentage: | 100% voting / 100% equity |
| Nature of Interest: | Sole shareholder of Paramount |

No other individuals or entities hold, or upon consummation of the Proposed Investment

are expected to hold, direct attributable interests in Paramount.

### F.   Section 1.5001(f) and (g) – Indirect Ownership Information: Attributable Interest Holders

The following individuals and entities hold, and are expected to continue to hold upon

consummation of the Proposed Investment,[11] indirect attributable interests in Paramount (voting

and equity percentages reflect indirect interests):[12]

---

[10] The officers and directors in Paramount Global and Paramount Skydance Corporation that hold a direct or indirect attributable interest in Paramount Global pursuant to Section 73.3555 Note 2(g) are identified in **Exhibit C**.

[11] Pursuant to Sections 1.5001(e) and (f), the disclosable interest holders in broadcast licensees are those with attributable interests determined based on the Notes to Section 73.3555 of the Commission's rules.  The officers and directors of the attributable entities below that hold a direct or indirect attributable interest in Paramount Global pursuant to Section 73.3555 Note 2(g) are identified in **Exhibit C**.

[12] Voting interests reflect current interests and will remain the same after the Proposed Investment.  Equity interests reflect post-Proposed Investment approximate percentages calculated based on (a) Class A Common Stock having a value of 1.5 times Class B Common Stock, and (b) an assumed share price for the newly issued non-voting Class B shares of

8

Name:                SPV-HLE LLC
Entity Type:         Limited Liability Company
Citizenship:         U.S. (Delaware)
Principal Business:  Holding Company
Percentage:          15.83% voting / 0.21% equity
Nature of Interest:  Indirect through direct interest in Paramount Skydance
                     Corporation (Class A and Class B shares)

Name:                HLE Entertainment Holdings LLC
Entity Type:         Limited Liability Company
Citizenship:         U.S. (Delaware)
Principal Business:  Holding Company
Percentage:          30.65% voting / 0.65% equity
Nature of Interest:  Direct interest in Paramount Skydance Corporation (Class A and
                     Class B shares) and direct interest in SPV-HLE LLC

Name:                Harbor Lights Entertainment, Inc.
Entity Type:         Corporation
Citizenship:         U.S. (Maryland)
Principal Business:  Movie Theaters/Exhibition
Percentage:          100% voting / 1.9% equity
Nature of Interest:  Direct interest in Paramount Skydance Corporation (Class A and
                     Class B shares) and direct interest in HLE Entertainment Holdings
                     LLC

Name:                Pinnacle Media Ventures, LLC
Entity Type:         Limited Liability Company
Citizenship:         U.S. (Delaware)
Principal Business:  Holding Company
Percentage:          31% voting / 29.09% equity
Nature of Interest:  Direct interest in Harbor Lights Entertainment, Inc. and direct
                     interest in Paramount Skydance Corporation (Class B shares)

Name:                Pinnacle Media Ventures II, LLC
Entity Type:         Limited Liability Company
Citizenship:         U.S. (Delaware)
Principal Business:  Holding Company
Percentage:          31% voting / 1.77% equity
Nature of Interest:  Direct interest in Harbor Lights Entertainment, Inc. and direct
                     interest in Paramount Skydance Corporation (Class B shares)

Name:                Pinnacle Media Ventures III, LLC
Entity Type:         Limited Liability Company

---

Paramount Skydance of $16.02 per share.  The percentages may fluctuate depending on the Syndication Purchase Price, but any such fluctuations are not expected to materially change the equity percentages reflected in this Petition.

9

| | |
|---|---|
| Citizenship: | U.S. (Delaware) |
| Principal Business: | Holding Company |
| Percentage: | 15.5% voting / 1.69% equity |
| Nature of Interest: | Direct interest in Harbor Lights Entertainment, Inc. and direct interest in Paramount Skydance Corporation (Class B shares) |

| | |
|---|---|
| Name: | Hikouki, LLC |
| Entity Type: | Limited Liability Company |
| Citizenship: | U.S. (Delaware) |
| Principal Business: | Holding Company |
| Percentage: | 31% voting / 29.09% equity |
| Nature of Interest: | Sole member of Pinnacle Media Ventures, LLC |

| | |
|---|---|
| Name: | Furaito, LLC |
| Entity Type: | Limited Liability Company |
| Citizenship: | U.S. (Delaware) |
| Principal Business: | Holding Company |
| Percentage: | 31% voting / 1.77% equity |
| Nature of Interest: | Sole member of Pinnacle Media Ventures II, LLC |

| | |
|---|---|
| Name: | Aozora, LLC |
| Entity Type: | Limited Liability Company |
| Citizenship: | U.S. (Delaware) |
| Principal Business: | Holding Company |
| Percentage: | 15.5% voting / 1.69% equity |
| Nature of Interest: | Sole member of Pinnacle Media Ventures III, LLC |

| | |
|---|---|
| Name: | Sayonara, LLC ("Sayonara") |
| Entity Type: | Limited Liability Company |
| Citizenship: | U.S. (Delaware) |
| Principal Business: | Holding Company |
| Percentage: | 27.5% voting / 35.35% equity |
| Nature of Interest: | 35.5% direct voting and 100% equity interest in Hikouki, LLC, Furaito, LLC, and Aozora, LLC as Member, and direct equity interest in Paramount Skydance Corporation (Class B shares) |

| | |
|---|---|
| Name: | David Ellison |
| Citizenship: | U.S. |
| Percentage: | 50% voting / 1.84% equity |
| Nature of Interest: | 64.5% direct voting interest in Hikouki, LLC, Furaito, LLC, and Aozora, LLC as Manager and indirect equity interest in Paramount Skydance Corporation (Class B shares); Chairman and CEO of Paramount Skydance |

David Ellison controls Hikouki, LLC, Furaito, LLC, and Aozora, LLC as sole manager of each entity. David Ellison has granted to Sayonara a voting interest equal to approximately 35.5% in each of these entities, and retains an approximately 64.5%

interest.  In addition, by voting proxy, Pinnacle Media Ventures, LLC, Pinnacle Media Ventures II, LLC and Pinnacle Media Ventures III, LLC each has granted a proxy to vote shares held by such entities in Harbor Lights Entertainment, Inc. ("Harbor Lights") (i) 64.5% to David Ellison (50% of total voting shares of Harbor Lights) and (ii) 35.5% to Sayonara, LLC (27.5% of total voting shares of Harbor Lights).  David Ellison and Sayonara have the right to designate the Ellison family directors of HLE and Paramount Skydance, each in accordance with these voting percentages.

| | |
|---|---|
| Name: | Lawrence J. Ellison Revocable Trust u/a/d 1/22/88, as amended |
| Entity Type: | Trust |
| Citizenship: | U.S. (California) |
| Principal Business: | Trust |
| Percentage: | 27.5% voting / 35.35% equity |
| Nature of Interest: | Member of Sayonara, LLC |

| | |
|---|---|
| Name: | Lawrence J. Ellison |
| Citizenship: | U.S. |
| Percentage: | 27.5% voting / 36.96% equity |
| Nature of Interest: | Trustee of Lawrence J. Ellison Revocable Trust u/a/d 1/22/88, as amended, and indirect equity interest in Paramount Skydance Corporation (Class B shares) |

| | |
|---|---|
| Name: | RB Tentpole Holdings LP |
| Entity Type: | Limited Partnership |
| Citizenship: | U.S. (Delaware) |
| Principal Business: | Holding Company |
| Percentage: | 22.5% voting / 8.5% equity |
| Nature of Interest: | Direct interest in Harbor Lights Entertainment, Inc. and direct interest in Paramount Skydance Corporation (Class B shares) |

| | |
|---|---|
| Name: | RB Tentpole LP |
| Entity Type: | Limited Partnership |
| Citizenship: | U.S. (Delaware) |
| Principal Business: | Investment Fund |
| Percentage: | 22.5% voting / 8.5% equity |
| Nature of Interest: | 100% owner of RB Tentpole Holdings LP |

All of the limited partners of RB Tentpole LP are insulated in accordance with Section 1.5003 of the Commission's rules, 47 C.F.R. § 1.5003.  None of such insulated limited partners holds a 10 percent or greater interest in Paramount Global.

| | |
|---|---|
| Name: | RB Tentpole GenPar LLC |
| Entity Type: | Limited Liability Company |
| Citizenship: | U.S. (Delaware) |
| Principal Business: | Investment Fund General Partner |
| Percentage: | 22.5% voting / 0% equity |
| Nature of Interest: | General partner of RB Tentpole LP |

11

Name:                RedBird Capital Partners Holdings LLC
Entity Type:         Limited Liability Company
Citizenship:         U.S. (Delaware)
Principal Business:  Holding Company
Percentage:          22.5% voting / 0% equity
Nature of Interest:  Sole member of RB Tentpole GenPar LLC

Name:                RedBird Capital Partners L.P.
Entity Type:         Limited Partnership
Citizenship:         U.S. (Delaware)
Principal Business:  Investment Management
Percentage:          22.5% voting / 0% equity
Nature of Interest:  Member of RedBird Capital Partners Holdings LLC

Funds managed by RedBird Capital Partners L.P. will hold approximately 9.0% indirect equity interests in Paramount Skydance Corporation (Class A and Class B shares).

Name:                Phoenix HoldCo, LLC
Entity Type:         Limited Liability Company
Citizenship:         U.S. (Florida)
Principal Business:  Holding Company
Percentage:          22.5% voting / 0% equity
Nature of Interest:  Partner of Redbird Capital Partners L.P.

Name:                Gerald J. Cardinale
Citizenship:         U.S.
Percentage:          22.5% voting / 0% equity
Nature of Interest:  Sole member of Phoenix HoldCo, LLC and limited partner of RedBird Capital Partners L.P.

No other individuals or entities hold, or upon consummation of the Proposed Investment are expected to hold, indirect attributable interests in Paramount.

Although not required under Sections 1.5001(e) and (f) for broadcast licensees, Petitioner notes that the Non-U.S. Investors each will hold indirect equity or voting interests of 10 percent or greater in Paramount upon the closing of the Proposed Investment:

Name:                The Public Investment Fund
Entity Type:         Instrumentality of Saudi Arabia
Citizenship:         Kingdom of Saudi Arabia
Principal Business:  Investments
Percentage:          0% voting / 15.1% equity
Nature of Interest:  Direct interest in Paramount Skydance Corporation (Class B shares)

12

| | |
|---|---|
| Name: | L'Imad 1st SPV 2 Exempt RSC Ltd |
| Entity Type: | Limited Company |
| Citizenship: | United Arab Emirates |
| Principal Business: | Investments |
| Percentage: | 0% voting / 12.8% equity |
| Nature of Interest: | Direct interest in Paramount Skydance Corporation (Class B shares) |

| | |
|---|---|
| Name: | L'Imad 1st Holding 1 Exempt RSC Ltd |
| Entity Type: | Limited Company |
| Citizenship: | United Arab Emirates |
| Principal Business: | Investments |
| Percentage: | 0% voting / 12.8% equity |
| Nature of Interest: | Direct interest in L'Imad 1st SPV 2 Exempt RSC Ltd |

| | |
|---|---|
| Name: | L'Imad 1st Capital Holding Ltd |
| Entity Type: | Limited Company |
| Citizenship: | United Arab Emirates |
| Principal Business: | Investments |
| Percentage: | 0% voting / 12.8% equity |
| Nature of Interest: | Direct interest in L'Imad 1st Holding 1 Exempt RSC Ltd |

| | |
|---|---|
| Name: | L'Imad Holding Company – P.J.S.C |
| Entity Type: | Public Joint-Stock Company |
| Citizenship: | United Arab Emirates |
| Principal Business: | Investments |
| Percentage: | 0% voting / 12.8% equity |
| Nature of Interest: | Direct interest in L'Imad 1st Capital Holding Ltd |

| | |
|---|---|
| Name: | QIA TMT Holding LLC |
| Entity Type: | Limited Liability Company |
| Citizenship: | Qatar |
| Principal Business: | Investments |
| Percentage: | 0% voting / 10.6% equity |
| Nature of Interest: | Direct interest in Paramount Skydance Corporation (Class B shares) |

| | |
|---|---|
| Name: | Qatar Investment Authority |
| Entity Type: | Government Investment Fund |
| Citizenship: | Qatar |
| Principal Business: | Investments |
| Percentage: | 0% voting / 10.6% equity |
| Nature of Interest: | Direct interest in QIA TMT Holding LLC |

Other than these entities and the attributable interest holders disclosed above, no other individuals or entities hold, or upon consummation of the Proposed Investment are expected to hold, indirect equity or voting interests in Paramount of 10 percent or greater.

**G.   Section 1.5001(h)(1) and (i) – Estimate of Aggregate Foreign Ownership**

**1.   Equity Interests**

Upon consummation of the Proposed Investment, Petitioner expects that the aggregate indirect foreign ownership of equity interests in Paramount will be approximately 49.5 percent. The total equity in Paramount Skydance is based on the issued Class A Common Stock and Class B Common Stock, with Class A Common Stock weighted as 1.5 times Class B Common Stock. This estimate includes the following:

- The Non-U.S. Investors for which specific approval is requested below are expected to hold indirect equity interests of 38.5 percent in the aggregate.  These interests will be held in Paramount Skydance non-voting, Class B stock.

- Funds managed by RedBird will hold approximately 9.0 percent of the equity in Paramount Skydance (taking into account indirect interests in Class A and Class B shares).  Passive limited partner investors in the funds that are non-U.S. account for approximately 5.8 percent foreign equity in Paramount Skydance.

- Approximately 5.2 percent of equity interests will be held by entities that Petitioner knows to be foreign based on Class B stock transactions or through information in Securities and Exchange Commission Form 13F reports.

**2.   Voting Interests**

All voting rights and other decision-making functions in Paramount will be controlled by the Ellison family through U.S. entities.  RedBird's minority voting interest are indirectly held through RedBird's fund entities, the general partner and manager entities of which, are organized

14

in the United States and ultimately controlled by Gerry Cardinale, a U.S. citizen.  Thus, actual voting control is, and after the Proposed Investment will be, exercised solely by U.S. persons.

Section 1.5002(a)(2) of the Commission's rules provides that voting interests held through a corporation are "calculated by successive multiplication of the voting percentages for each link in the vertical ownership chain, except that wherever the voting interest for any link in the chain is equal to or exceeds 50 percent or represents actual control, it shall be treated as if it were a 100 percent interest."  47 C.F.R. § 1.5002 (a)(2).  Pursuant to this provision, the indirect foreign voting interests in Paramount will be through indirect interests in the Class A voting shares held by Harbor Lights.  All indirect foreign ownership of Class A shares will be through RB Tentpole Holdings LP.

RB Tentpole Holdings LP owns 22.5 percent of Harbor Lights and, indirectly, its Class A voting shares.  RB Tentpole Holdings LP is wholly owned by RB Tentpole LP.  The limited partners of RB Tentpole LP are insulated in accordance with Section 1.5003 of the Commission's rules.  Therefore, the foreign insulated limited partners will be deemed to have voting interests in RB Tentpole LP equal to their equity interest.  That is, the foreign investors in RB Tentpole Holdings LP in the aggregate would be deemed to have a 14.8 percent voting interest in Paramount (i.e., the portion of foreign equity in RB Tentpole LP times 22.5%).

Other indirect foreign ownership in Paramount will be through Class B shares, which are non-voting.  The foreign-owned interests through Class B shares is expected to be approximately 49.5 percent in the aggregate after the Proposed Investment.

*   *   *   *   *

Paramount requests approval for indirect foreign ownership of the equity and/or voting interests in Paramount Global for the aggregate amounts identified above, and for up to 100

15

percent in the aggregate to accommodate routine fluctuations in publicly held equity interests and to account for potential future investments (subject to any specific approval requirements in Section 1.5004(a)).

### H.    Section 1.5001(h)(2) – Ownership and Control Structure Diagram

See **Exhibit B** for charts depicting the post-Proposed Investment ownership structure of Paramount and the Licensees.

### I.    Section 1.5001(i)-(k) – Requests for Specific and Advance Approval

Paramount requests specific and advance approval for the following non-U.S. entities that will indirectly hold more than five percent of the equity of Paramount through ownership of Class B non-voting shares, and for each such entity to increase its respective indirect interest in Paramount, at some future time, up to the advance approval percentage noted.

The Commission's rule regarding the calculation methodology for corporations does not address the allocation of voting interests among different classes of stock that have different rights.  Because the voting interest of investors holding only Class B shares will be zero, applying the calculation methodology in Section 1.5002(a)(2) would result in a voting percentage of zero.  Out of an abundance of caution, to the extent that the Commission deems holders of non-voting equity in a corporation to have a "deemed" voting interest equal to their equity interest (similar to insulated partnership interests in a limited partnership, or an insulated membership interest in a limited liability company pursuant to Section 1.5002(ii) and (iii)), Petitioner seeks approval for each of these entities to hold a "deemed" voting interest equal to its respective equity interest:

Name:                Public Investment Fund
Entity Type:         Instrumentality of Saudi Arabia
Citizenship:         Kingdom of Saudi Arabia
Principal Business:  Investments
Specific Approval:   15.1% equity / 15.1% voting

Advance Approval:    up to  20%  equity / 20% voting

Name:    L'Imad 1st SPV 2 Exempt RSC Ltd
Entity Type:    Limited company
Citizenship:    United Arab Emirates
Principal Business:    Investments
Specific Approval:    12.8% equity / 12.8% voting
Advance Approval:    up to  20%  equity / 20% voting

Name:    L'imad 1st Holding 1 Exempt RSC Ltd
Entity Type:    Limited company
Citizenship:    United Arab Emirates
Principal Business:    Investments
Specific Approval:    12.8% equity / 12.8% voting
Advance Approval:    up to  20%  equity / 20% voting

Name:    L'imad 1st Capital Holding Ltd
Entity Type:    Limited company
Citizenship:    United Arab Emirates
Principal Business:    Investments
Specific Approval:    12.8% equity / 12.8% voting
Advance Approval:    up to  20%  equity / 20% voting

Name:    L'imad Holding Company – P.J.S.C
Entity Type:    Public Joint-Stock Company
Citizenship:    United Arab Emirates
Principal Business:    Investments
Specific Approval:    12.8% equity / 12.8% voting
Advance Approval:    up to  20%  equity / 20% voting

Name:    QIA TMT Holding LLC
Entity Type:    Limited Liability Company
Citizenship:    Qatar
Principal Business:    Investments
Specific Approval:    10.6% equity / 10.6% voting
Advance Approval:    up to  20%  equity / 20% voting

Name:    Qatar Investment Authority
Entity Type:    Government Investment Fund
Citizenship:    Qatar
Principal Business:    Investments
Specific Approval:    10.6% equity / 10.6% voting
Advance Approval:    up to  20%  equity / 20% voting

**J.      Section 1.5001(m) – Response to Standard Questions of Executive Branch Agencies**

Concurrently with this Petition, Paramount is submitting directly to the Committee for the Assessment of Foreign Participation in the United States Telecommunications Services Sector ("Team Telecom") responses to the standard questions and will, within three business days, provide Team Telecom with a copy of this Petition.

**K.      Section 1.5001(n) – Certifications**

By its signature to this Petition, Paramount and, to the extent applicable, the Licensees, certify that they will:

- Designate the following point of contact who is located in the United States and is a U.S. citizen or lawful U.S. permanent resident, for the execution of lawful requests and as an agent for legal service of process:

    Makan Delrahim
    Chief Legal Officer
    Paramount Global
    1515 Broadway
    New York, NY 10036
    (212) 258-6000
    md@paramount.com

- Ensure the continuing accuracy and completeness of all information submitted, whether at the time of submission of the application or subsequently in response to either a Commission or Team Telecom request, as required by 47 C.F.R. § 1.65(a), and inform the Commission and Team Telecom of any substantial and significant changes while the Petition is pending; and

- After the Petition is no longer pending for purposes of 47 C.F.R. § 1.65, notify the Commission and Team Telecom of any changes in the authorization holder or

18

licensee information and/or contact information promptly, and in any event within 30 days.

Paramount acknowledges that if it or the Licensees fail to fulfill any of the conditions and obligations set forth in the certifications set out in Section 1.5001(n)(1), or in the grant of an application, petition, license, or authorization, and/or that if the information provided to the U.S. Government is materially false, fictitious, or fraudulent, that it and the Licensees may be subject to all remedies available to the U.S. Government, including but not limited to revocation and/or termination of the Commission's authorization or license, and criminal and civil penalties, including penalties under 18 U.S.C. § 1001.

## III.    GRANT OF THIS PETITION IS IN THE PUBLIC INTEREST

Grant of this Petition is in the public interest because it will afford Paramount and, in turn, the Licensees, greater access to capital, including from foreign sources, thereby enabling the company to compete more effectively in the provision of television broadcast services and in the broader video programming marketplace.

In adopting rules to implement Section 310(b)(4) of the Act to allow foreign investment in broadcast licensees exceeding the 25 percent indirect foreign ownership benchmark, the Commission adopted the same streamlined standard that it previously had applied to common carriers.[13]  Accordingly, the Commission will approve indirect foreign ownership of broadcast licensees above the 25 percent threshold "unless the Commission finds that the public interest will be served by refusing to permit such foreign ownership."[14]  As the Commission

---

[13] 47 U.S.C. § 310(b)(4); *see Review of Foreign Ownership Policies for Broadcast, Common Carrier and Aeronautical Radio Licensees under Section 310(b)(4) of the Communications Act of 1934, as Amended*, Report and Order, 31 FCC Rcd 11272 ¶ 11 (2016) ("*2016 Foreign Ownership Order*").

[14] *2016 Foreign Ownership Order* ¶ 5.

acknowledged, permitting greater foreign investment in broadcast stations "increase[s] regulatory transparency and predictability" and thereby facilitates greater access to capital and "help[s] create new opportunities for U.S. broadcasters to enter foreign radio and television markets."[15]

Permitting foreign ownership of Paramount of up to and including 100 percent is consistent with the public interest and well-established Commission precedent, and will promote the intended policy objectives underlying the Commission's foreign ownership rules.[16]  In particular, grant of this Petition will afford the company flexibility in accessing the capital necessary to ensure that the Licensees remain competitive in the television broadcast marketplace through greater innovation and a broader range of programming and content.[17]

Paramount's combination with Skydance Media, LLC—which the Commission approved on July 24, 2025[18]—has enabled the company to begin making strategic investments to improve the Licensees' newsgathering and reporting operations, both nationally and at a local level. Among such initiatives is the rejuvenation of the Licensees' online presence, allowing them to

---

[15] *Id.* ¶ 13.

[16] *See, e.g.*, *Searchlight II HMT, L.P.*, Declaratory Ruling, 38 FCC Rcd 7412 (2023) (approving specific approval of foreign individuals and entities to hold up to 49.99 percent, and in some cases up to 100 percent, and up to 100 percent foreign ownership in the aggregate, of the broadcast licensee); *Hemisphere Media Group, Inc. Petition for Declaratory Ruling*, Declaratory Ruling and Memorandum Opinion and Order, 34 FCC Rcd 10504 (2019) (approving up to 100 percent of broadcast licensee's equity and voting interests in the aggregate to be owned by foreign entities and/or individuals); *Univision Holdings, Inc.*, Declaratory Ruling, 32 FCC Rcd 6 (2017); *Pandora Radio LLC*, Declaratory Ruling, 30 FCC Rcd 5094 (2015).

[17] *See Commission Policies and Procedures Under Section 310(b)(4) of the Communications Act, Foreign Investment in Broadcast Licensees*, Declaratory Ruling, 28 FCC Rcd 16244 ¶ 10 (2013) ("Greater capitalization [of broadcasters] may … yield greater innovation, particularly in programming directed at niche or minority audiences.").

[18] *See Applications for Consent to the Transfer of Control of Paramount Global*, Memorandum Opinion and Order, 40 FCC Rcd 5689 (2025).

meet viewers where they are and ensuring their continued relevance to the communities that they serve, in turn enhancing the availability of reliable, high-quality, non-paywalled local and national news across the country.  At the same time, efforts are underway to revitalize the technology underlying the company's streaming services, particularly its flagship Paramount+ and PlutoTV platforms, whose continued success will help to stabilize and support the viability of the Licensees' broadcast services.  And the synergies between Skydance's dynamic creative assets and sports development and production units, on the one hand, and Paramount's broadcast distribution platform, on the other, are allowing the Licensees to offer their local audiences enhanced access to a greater diversity and variety of entertainment and sports content, such as Ultimate Fighting Championship (UFC) programming.

Reducing barriers to further investment in Paramount, including by allowing the company to pursue additional capital from non-U.S. investors, will enable it to allocate additional resources to preserve and enhance the legacy and broad reach of the Licensees' television broadcast operations.  In turn, Paramount's ability to compete in the television broadcast and broader video marketplaces will improve, thereby promoting the strength of the industry overall.  The new equity investment, leveraged on the efficiency gains resulting from the Paramount-Skydance transaction, will better position the company to weather continuing challenges facing broadcasters and operators of linear pay-television networks.

Further, grant of this Petition will not present any national security, law enforcement, foreign policy, or trade policy concerns.  Notably, the Ellison family (which includes only U.S. persons) will retain a majority of the voting interests and control of Paramount, and each of the entities through which the Ellison family holds its interests in the company is a U.S. entity.  With

21

respect to such considerations, the Commission "accords deference" to the expertise of "the relevant Executive Branch agencies." [19]

## IV.    CONCLUSION

For the reasons set forth herein, Paramount respectfully requests that the Commission issue a declaratory ruling (1) permitting existing and prospective new foreign investors to indirectly hold in excess of 25 percent of Paramount's equity and voting interests, in the aggregate, and (2) granting specific and advance approval for the non-U.S. individuals and entities identified in Section II.I, above, to indirectly hold greater than 5 percent equity and/or deemed voting interests in Paramount, in the form of newly issued non-voting, Class B shares, and for existing and prospective new foreign investors to indirectly hold up to 100 percent of Paramount's equity and voting interests, in the aggregate.

Respectfully submitted,

*/s/ Matthew A. Brill*

Matthew A. Brill
Elizabeth R. Park
Latham & Watkins LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC  20004
Tel: (202) 637-2200
matthew.brill@lw.com
elizabeth.park@lw.com

*Counsel for Paramount Global*

---

[19] *See 2016 Foreign Ownership Order* ¶ 6.

**Exhibit A**

| Call Sign | Fac. ID | Community of License | Licensee |
|---|---|---|---|
| WUPA | 6900 | Atlanta, GA | Atlanta Television Station WUPA Inc. |
| KCBS-TV | 9628 | Los Angeles, CA | CBS Broadcasting Inc. |
| KDKA-TV | 25454 | Pittsburgh, PA | CBS Broadcasting Inc. |
| KPIX-TV | 25452 | San Francisco, CA | CBS Broadcasting Inc. |
| KYW-TV | 25453 | Philadelphia, PA | CBS Broadcasting Inc. |
| WBBM-TV | 9617 | Chicago, IL | CBS Broadcasting Inc. |
| WCBS-TV | 9610 | New York, NY | CBS Broadcasting Inc. |
| WCCO-TV | 9629 | Minneapolis, MN | CBS Broadcasting Inc. |
| KCCW-TV | 9640 | Walker, MN | CBS Broadcasting Inc. |
| WWJ-TV | 72123 | Detroit, MI | CBS Broadcasting Inc. |
| WLNY-TV | 73206 | Riverhead, NY | CBS LITV LLC |
| WBXI-CD | 70416 | Indianapolis, IN | CBS Mass Media Corporation |
| WTOG | 74112 | St. Petersburg, FL | CBS Operations Investments Inc. |
| W26DP-D | 74116 | Inverness, FL | CBS Operations Investments Inc. |
| W36FJ-D | 74113 | Sebring, FL | CBS Operations Investments Inc. |
| KTVT | 23422 | Fort Worth, TX | CBS Stations Group of Texas LLC |
| WBZ-TV | 25456 | Boston, MA | CBS Television Licenses LLC |
| WJZ-TV | 25455 | Baltimore, MD | CBS Television Licenses LLC |
| WSBK-TV | 73982 | Boston, MA | CBS Television Licenses LLC |
| WFOR-TV | 47902 | Miami, FL | CBS Television Licenses LLC |
| KCNC-TV | 47903 | Denver, CO | CBS Television Stations Inc. |
| WKBD-TV | 51570 | Detroit, MI | Detroit Television Station WKBD Inc. |
| KCAL-TV | 21422 | Los Angeles, CA | Los Angeles Television Station KCAL LLC |
| WBFS-TV | 12497 | Miami, FL | Miami Television Station WBFS Inc. |
| WPSG | 12499 | Philadelphia, PA | Philadelphia Television Station WPSG, Inc. |

1

2

| Call Sign | Fac. ID | Community of License | Licensee |
|---|---|---|---|
| WPKD-TV | 69880 | Jeannette, PA | Pittsburgh Television Station WPCW Inc. |
| KMAX-TV | 51499 | Sacramento, CA | Sacramento Television Stations, Inc. |
| KOVR | 56550 | Stockton, CA | Sacramento Television Stations, Inc. |
| KPYX | 69619 | San Francisco, CA | San Francisco Television Station KBCW Inc. |
| KTXA | 51517 | Fort Worth, TX | Television Station KTXA Inc. |
| KSTW | 23428 | Tacoma, WA | The CW Television Stations Inc. |

**Exhibit B**

# Post-Proposed Investment Organizational Structure
### (Part One)



**Pinnacle Media**
(See Part Two)

**RedBird**
(See Part Four)

**Harbor Lights Entertainment, Inc.**
(Maryland)

100% Voting /
1.9% Equity*

**HLE Entertainment Holdings LLC**
(Delaware)

30.65% Voting /
0.65% Equity

**Other Public Shareholders**

**SPV-HLE LLC**
(Delaware)

**Proposed Non-U.S. Investors**
(See Part Five)

15.83% Voting /
0.21% Equity

**Paramount Skydance Corporation**
(Delaware)

100% Voting /
100% Equity

**Paramount Global**
(Delaware)

100% Voting /
100% Equity

**FCC Licensees**
(See Part Six)

**Notes**

All percentages reflect indirect interests in Paramount Global.

* The equity percentage held by Harbor Lights Entertainment, Inc. includes Class A and Class B stock of Paramount Skydance Corporation held directly and indirectly through its wholly owned subsidiaries, HLE Entertainment Holdings LLC and SPV-HLE LLC.

All percentages reflect indirect interests in Paramount Global.

Paramount Skydance Corporation is the public holding corporation created in the merger of Paramount Global and Skydance Media, LLC, and identified as "New Paramount" in MB Docket No. 24-275.

Harbor Lights Entertainment, Inc. was formerly known as National Amusements Inc.; HLE Entertainment Holdings LLC was formerly known as NAI Entertainment Holdings LLC; and SPV-HLE LLC was formerly known as SPV-NAIEH LLC.

The interests held in Paramount Skydance Corporation and, in turn, Paramount Global by the entities shaded in grey are not attributable pursuant to the Notes to Section 73.3555 of the FCC's rules.

# Post-Proposed Investment Organizational Structure
## (Part Two)



**Sayonara, LLC**
(See Part Three)

**David Ellison**
(United States)

27.5% Voting /
32.55% Equity

50% Voting /
1.84% Equity*

**Hikouki, LLC**
(Delaware)

**Furaito, LLC**
(Delaware)

**Aozora, LLC**
(Delaware)

31% Voting /
29.09% Equity

31% Voting /
1.77% Equity

15.5% Voting /
1.69% Equity

**Pinnacle Media Ventures, LLC**
(Delaware)

**Pinnacle Media Ventures II, LLC**
(Delaware)

**Pinnacle Media Ventures III, LLC**
(Delaware)

31% Voting /
29.09% Equity†

31% Voting /
1.77% Equity†

15.5% Voting /
1.69% Equity†

0% Voting /
2.80% Equity

**Harbor Lights Entertainment**
(See Part One)

### Notes

All percentages reflect indirect interests in Paramount Global. Equity percentages include the value of Class A and Class B shares.

†By voting proxy, Pinnacle Media Ventures, LLC, Pinnacle Media Ventures II, LLC, and Pinnacle Media Ventures, III, LLC has each granted David Ellison approximately 64.5 percent of their respective voting interests in Harbor Lights Entertainment, Inc. ("HLE") (and indirectly Paramount Skydance Corporation), and granted Sayonara the remaining 35.5 percent. David Ellison and Sayonara have the right to designate the Ellison family directors of HLE and Paramount Skydance Corporation, each in accordance with these voting percentages.

*David Ellison indirectly owns Class B shares in Paramount Skydance Corporation through a holding company not depicted in this chart.

**Paramount Skydance Corporation**
(Delaware)

# Post-Proposed Investment Organizational Structure
## (Part Three)



**Lawrence J. Ellison**
(United States)

27.5% Voting /
36.96% Equity*

**The Lawrence J. Ellison Revocable Trust u/a/d 1/22/88, as amended**
(California)

27.5% Voting /
35.35% Equity

**Cephalopod Corporation**
(California)

[<1]% Voting /
[<1]% Equity

**Sayonara, LLC**
(California)

**Notes**

All percentages reflect indirect interests in Paramount Global. Equity percentages include the value of Class A and Class B shares.

*Lawrence J. Ellison indirectly holds additional Class B shares in Paramount Skydance Corporation through a holding company not depicted in this chart.

The interests held in Paramount Skydance Corporation and, in turn, Paramount Global by the entities shaded in grey are not attributable pursuant to the Notes to Section 73.3555 of the FCC's rules.

# Post-Proposed Investment Organizational Structure
## (Part Four)



**Gerald J. Cardinale**
(United States)

22.5% Voting /
0% Equity

**Phoenix HoldCo, LLC**
(Florida)

22.5% Voting /
0% Equity

**RedBird Capital Partners L.P.**
(Delaware)

22.5% Voting /
0% Equity

**RedBird Capital Partners
Holdings LLC**
(Delaware)

22.5% Voting /
0% Equity

**RB Tentpole GenPar LLC**
(Delaware)

**Insulated Limited Partners**

22.5% Voting /
0% Equity

0% Voting /
8.5% Equity

**RB Tentpole LP**
(Delaware)

22.5% Voting /
8.5% Equity

**RB Tentpole Holdings LP**
(Delaware)

22.5% Voting /
8.5% Equity

**Harbor Lights Entertainment**
(See Part One)

**Paramount Skydance
Corporation**
(Delaware)

### Notes

All percentages reflect indirect interests in Paramount Global. Equity percentages include the value of Class A and Class B shares.

All of the limited partners of RB Tentpole LP are insulated in accordance with Section 1.5003 of the Commission's rules. None of such insulated limited partners holds a 10 percent or greater interest in Paramount Global.

The interests held in Paramount Skydance Corporation and, in turn, Paramount Global by the entities shaded in grey are not attributable pursuant to the Notes to Section 73.3555 of the FCC's rules.

# Post-Proposed Investment Organizational Structure
## (Part Five)



**L'imad Holding Company – P.J.S.C**
(United Arab Emirates)

0% Voting /
12.8% Equity

**L'imad 1st Capital Holding Ltd**
(United Arab Emirates)

0% Voting /
12.8% Equity

**Qatar Investment Authority**
(Qatar)

**L'imad 1st Holding 1 Exempt RSC Ltd**
(United Arab Emirates)

0% Voting /
10.6% Equity

0% Voting /
12.8% Equity

**QIA TMT Holding LLC**
(Qatar)

**L'imad 1st SPV 2 Exempt RSC Ltd**
(United Arab Emirates)

**The Public Investment Fund**
(Saudi Arabia)

0% Voting /
10.6% Equity

0% Voting /
12.8% Equity

0% Voting /
15.1% Equity

**Paramount Skydance Corporation**
(Delaware)

**Notes**

All percentages reflect indirect interests in Paramount Global.

The interests held in Paramount Skydance Corporation and, in turn, Paramount Global by the entities shaded in grey are not attributable pursuant to the Notes to Section 73.3555 of the FCC's rules.



Post-Proposed Investment Organizational Structure
(Part Six)

**Exhibit C**

The following individuals are directors and/or officers of Paramount Global:

| Name | Position | Citizenship |
|---|---|---|
| Andrew Gordon | Officer & Director | U.S. |
| Katherine Gill-Charest | Officer & Director | U.S. |
| Julie Behuniak | Officer | U.S. |
| Alexander Coedo | Officer | U.S. |
| Kevin J. Creighton | Officer | U.S. |
| Amy Dow | Officer | U.S. |
| Anthony J. Driscoll | Officer | U.S. |
| Christopher Fontana | Officer | U.S. |
| Anthony Gonzalez | Officer | U.S. |
| Jonathan M. Jenkins | Officer | U.S. |
| Laurie Lawrence-Dillon | Officer | U.S. |
| Mallory Levitt | Officer | U.S. |
| Christopher Lovejoy | Officer | U.S. |
| Stephanie R. Marcus | Officer | U.S. |
| Stephanie McKinnon | Officer | Canada |
| James C. Morrison | Officer | U.S. |
| Christina Skaliks | Officer | U.S. |
| James J. Sterner | Officer | U.S. |
| Syed A. Wasim | Officer | U.S. |

The following individuals are directors and/or officers of Paramount Skydance Corporation:

| Name | Position | Citizenship |
| --- | --- | --- |
| David Ellison | Officer & Director | U.S. |
| Alice Abatzis | Officer | U.S. |
| Barbara M. Byrne | Director | U.S. |
| Andrew Campion | Director | U.S. |
| Gerald J. Cardinale | Director | U.S. |
| Safra A. Catz | Director | U.S./Israel |
| George Cheeks | Officer | U.S. |
| Dennis Cinelli | Officer | U.S. |
| Julie Connors | Officer | U.S. |
| Kevin Creighton | Officer | U.S. |
| Linda C. Davidoff | Officer | U.S. |
| Makan Delrahim | Officer | U.S. |
| Amy Dow | Officer | U.S. |
| Tony Driscoll | Officer | U.S. |
| Katherine Gill-Charest | Officer | U.S. |
| Dana M. Goldberg | Officer | U.S. |
| Andrew Gordon | Officer & Director | U.S. |
| Josh Greenstein | Officer | U.S. |
| Justin Hamill | Director | U.S. |
| Cynthia L. Holland | Officer | U.S. |
| Ray Hopkins | Officer | U.S. |
| Sherry Lansing | Director | U.S. |

2

| Christopher Lovejoy | Officer | U.S. |
|---|---|---|
| Paul Marinelli | Director | U.S. |
| Stephanie McKinnon | Officer | Canada |
| James C. Morrison | Officer | U.S. |
| James J. Sterner | Officer | U.S. |
| David Stonehill | Officer | U.S. |
| John L. Thornton | Director | U.S. |
| Jose Turkienicz | Officer | Brazil/Poland |
| Barrie Wexler | Officer | U.S. |
| Phil Wiser | Officer | U.S. |
| Melissa S. Zukerman | Officer | U.S. |

The following individuals are directors or officers of Harbor Lights Entertainment, Inc.:

| Name | Position | Citizenship |
|---|---|---|
| Tyler Alexander | Director | U.S. |
| Marie E. Bergman | Officer | U.S. |
| David Ellison | Director | U.S. |
| Andrew Gordon | Director | U.S. |
| Julie Heinzelman | Officer | U.S. |
| Paul Marinelli | Director | U.S. |
| Lisa M. Martignetti | Officer | U.S. |
| Janet Nova | Director | U.S. |
| Edward Ryan | Officer | U.S. |

The following individuals are officers of Pinnacle Media Ventures, LLC:

| Name | Position | Citizenship |
|---|---|---|
| Nathan Haratani | Officer | U.S. |
| Paul Marinelli | Officer | U.S. |
| Tanya B. McGregor | Officer | U.S. |
| Barry T. Mori | Officer | U.S. |

The following individuals are managers and/or officers of Pinnacle Media Ventures II, LLC:

| Name | Position | Citizenship |
|---|---|---|
| Nathan Haratani | Officer | U.S. |
| Paul Marinelli | Officer | U.S. |
| Tanya B. McGregor | Officer | U.S. |
| Barry T. Mori | Officer | U.S. |

4

The following individuals are managers and/or officers of Pinnacle Media Ventures III, LLC:

| Name | Position | Citizenship |
|---|---|---|
| Nathan Haratani | Officer | U.S. |
| Paul Marinelli | Officer | U.S. |
| Tanya B. McGregor | Officer | U.S. |
| Barry T. Mori | Officer | U.S. |

The following individuals are managers or officers of Hikouki, LLC:

| Name | Position | Citizenship |
|---|---|---|
| David Ellison | Sole Manager | U.S. |
| Nathan Haratani | Officer | U.S. |
| Paul Marinelli | Officer | U.S. |
| Tanya B. McGregor | Officer | U.S. |
| Barry T. Mori | Officer | U.S. |

The following individuals are managers or officers of Furaito, LLC:

| Name | Position | Citizenship |
|---|---|---|
| David Ellison | Sole Manager | U.S. |
| Nathan Haratani | Officer | U.S. |
| Paul Marinelli | Officer | U.S. |
| Tanya B. McGregor | Officer | U.S. |
| Barry T. Mori | Officer | U.S. |

5

The following individuals are managers or officers of Aozora, LLC:

| Name | Position | Citizenship |
|---|---|---|
| David Ellison | Sole Manager | U.S. |
| Nathan Haratani | Officer | U.S. |
| Paul Marinelli | Officer | U.S. |
| Tanya B. McGregor | Officer | U.S. |
| Barry T. Mori | Officer | U.S. |

The following individuals are managers and/or officers of Sayonara, LLC:

| Name | Position | Citizenship |
|---|---|---|
| Lawrence J. Ellison | Officer | U.S. |
| Nathan Haratani | Officer | U.S. |
| Paul Marinelli | Manager & Officer | U.S. |
| Barry T. Mori | Officer | U.S. |
| Tanya B. McGregor | Officer | U.S. |

6

**<u>CERTIFICATION</u>**

I, Makan Delrahim, hereby certify as follows:

1.  I am Chief Legal Officer of Paramount Skydance Corporation Paramount Global and as such am an authorized as a signatory for Paramount Global ("Paramount").

2.  The foregoing Petition for Declaratory Ruling ("Petition") was prepared at my direction and supervision, and the contents are true and correct to the best of my knowledge, information, and belief.

3.  To the best of my knowledge, information, and belief, the ownership interests disclosed in the Petition have been calculated in accordance with the requirements set forth in Section 1.5002 and, where applicable, Section 1.5003 of the Commission's rules, 47 C.F.R. §§ 1.5002, 1.5003, and the interests disclosed satisfy each of the pertinent standards and criteria set forth in the rules.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 24, 2026

Signed by:

*Makan Delrahim*

5930A8TDZA464D4...

Name: Makan Delrahim
Title: Chief Legal Officer of Paramount
      Skydance Corporation
Paramount Global

# Exhibit B

# United States v. Pabst Brewing Co.

Supreme Court of the United States

April 27, 1966, Argued ; June 13, 1966, Decided

No. 404

## Reporter

384 U.S. 546 *; 86 S. Ct. 1665 **; 16 L. Ed. 2d 765 ***; 1966 U.S. LEXIS 2947 ****; 1966 Trade Cas. (CCH) P71,790

UNITED STATES v. PABST BREWING CO. ET AL.

**Prior History:** [****1] APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF WISCONSIN.

**Disposition:** 233 F.Supp. 475, reversed and remanded.

## Syllabus

In 1958 Pabst Brewing Company, the country's tenth largest brewer, acquired Blatz Brewing Company, the eighteenth largest, thus becoming the fifth largest with 4.49% of the total industry sales. The Government brought this action charging that the acquisition violated § 7 of the Clayton Act because its effect "may be substantially to lessen competition" in the production and sale of beer in the United States, in Wisconsin, and in the three-state area comprising Wisconsin, Illinois and Michigan. The Government introduced evidence to establish a marked decline in the number of brewers and a sharp rise in the share of the market controlled by the leading brewers, both prior to and following this merger. It also showed that the combined share of the two companies in Wisconsin in 1957 was 23.95%, and in the three-state area was 11.32%. At the close of the Government's case, the District Court dismissed the case, finding that [****2] the Government had not shown that Wisconsin or the three-state area was a relevant geographic market within which the probable effect of the acquisition should be tested and had not shown that the merger might substantially lessen competition in the continental United States, the only relevant geographic market. *Held*:

1. By the language of the Act the Government must only prove that the effect of the merger may be substantially to lessen competition in any line of commerce "in any section of the country." Pp. 548-550.

(a) A violation of § 7 would be proved by evidence showing that competition may be substantially lessened throughout the country or only in one or more sections of the Nation, and failure to prove a relevant "economic" or "geographic" market is not an adequate ground for dismissal. P. 549.

congressional premise that mergers are a major cause of concentration. We hold that a trend toward [*553] concentration in an industry, whatever its causes, is a highly relevant factor in deciding how substantial the anticompetitive effect of a merger may be.

*Reversed and remanded.*

**Concur by:** DOUGLAS; WHITE; HARLAN; FORTAS

## Concur

MR. JUSTICE DOUGLAS, concurring.

While I join the Court's opinion, I add only a word in support of the Court's description of the anatomy of the "relevant geographic market" for purposes of the Clayton Act. The alternative [****14] leads to a form of concentration whose ultimate *reductio ad absurdum* is described in the Appendix to this opinion.

APPENDIX TO CONCURRING OPINION OF MR. JUSTICE DOUGLAS.

Every time you pick up the newspaper you read about one company merging with another company. Of course, we have laws to protect competition in the United States, but one can't help thinking that, if the trend continues, the whole country will soon be merged into one large company.

It is 1978 and by this time every company west of the Mississippi will have [**1670] merged into one giant corporation known as Samson Securities. Every company east of the Mississippi will have merged under an umbrella [***772] corporation known as the Delilah Company.

It is inevitable that one day the chairman of the board of Samson and the president of Delilah would meet and discuss merging their two companies.

"If we could get together," the president of Delilah said, "we would be able to finance your projects and you would be able to finance ours."

"Exactly what I was thinking," the chairman of Samson said.

[*554] "That's a great idea and it certainly makes everyone's life less complicated."

The men shook [****15] on it and then they sought out approval from the Anti-Trust Division of the Justice Department.

At first the head of the Anti-Trust Division indicated that he might have reservations about allowing the only two companies left in the United States to merge.

"Our department," he said, "will take a close look at this proposed merger. It is our job to further competition in private business and industry, and if we allow Samson and Delilah to merge we may be doing the consumer a disservice."

The chairman of Samson protested

vigorously that merging with Delilah would not stifle competition, but would help it. "The public will be the true beneficiary of this merger," he said. "The larger we are, the more services we can perform, and the lower prices we can charge."

The president of Delilah backed him up. "In the Communist system the people don't have a choice. They must buy from the state. In our capitalistic society the people can buy from either the Samson Company or the Delilah Company."

"But if you merge," someone pointed out, "there will be only *one* company left in the United States."

"Exactly," said the president of Delilah. "Thank God for the free enterprise system. [****16] "

The Anti-Trust Division of the Justice Department studied the merger for months. Finally the Attorney General made this ruling. "While we find some drawbacks to only one company being left in the United States, we feel the advantages to the public far outweigh the disadvantages.

"Therefore, we're making an exception in this case and allowing Samson and Delilah to merge.

 [*555] "I would like to announce that the Samson and Delilah Company is now negotiating at the White House with the President to buy the United States. The Justice Department will naturally study this merger to see if it violates any

of our strong anti-trust laws."

ART BUCHWALD, *Washington Post*, June 2, 1966, p. A21.

 [**1674contd] [EDITOR'S NOTE: The page numbers of this document may appear to be out of sequence; however, this pagination accurately reflects the pagination of the original published document.]

MR. JUSTICE WHITE, concurring.

I join the Court's opinion insofar as it holds the merger of Pabst and Blatz may substantially lessen competition in the beer industry in the Nation as a whole.

MR. JUSTICE HARLAN, whom MR. JUSTICE STEWART joins, concurring in the result.

I [****17] concur in the judgment of reversal on the limited ground that the Government's evidence is sufficient to establish prima facie that Wisconsin and the tri-state area comprising Wisconsin, Michigan and [***773] Illinois are both proper sections of the country in which to measure the probable effects of the acquisition of Blatz by Pabst under § 7 of the Clayton Act, 38 Stat. 731, as amended, 64 Stat. 1125, 15 U. S. C. § 18 (1964 ed.). However, I am wholly unable to subscribe to the Court's opinion which appears to emasculate the statutory phrase "in any section of the country."

I.

The Court is quite right in stating that