Jeffrey L. Kessler (*pro hac vice*)
**WINSTON TAYLOR LLP**
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-4698
Facsimile: (212) 294-4700
jeffrey.kessler@winstontaylor.com

Conor A. Reidy (*pro hac vice*)
Kevin B. Goldstein (*pro hac vice*)
**WINSTON TAYLOR LLP**
300 N. LaSalle Drive
Chicago, IL 60654-3406
Telephone: (312) 558-7542
Facsimile: (312) 558-5700
conor.reidy@winstontaylor.com
kevin.goldstein@winstontaylor.com

Jeanifer E. Parsigian (SBN 289001)
Matthew R. DalSanto (SBN 282458)
**WINSTON TAYLOR LLP**
101 California Street, 21st Floor
San Francisco, CA 94111-5891
Telephone: (415) 591-1469
Facsimile: (415) 591-1400
jeanifer.parsigian@winstontaylor.com
matthew.dalsanto@winstontaylor.com

Matthew R. Huppert (*pro hac vice*)
**WINSTON TAYLOR LLP**
1901 L Street NW
Washington, DC 20036-3506
Telephone: (202) 282-5004
Facsimile: (202) 282-5100
matthew.huppert@winstontaylor.com

*Attorneys for Defendants Paramount Skydance
Corporation and Skydance Media, LLC*

*Additional counsel on signature page*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| PAMELA FAUST, LEN MARAZZO, LISA McCARTHY, DEBORAH RUBINSOHN, and GARY TALEWSKY<br><br>Plaintiffs,<br><br>vs.<br><br>PARAMOUNT SKYDANCE CORPORATION (formerly Paramount Global), and SKYDANCE MEDIA, LLC,<br><br>Defendants. | Case No. 4:26-cv-03790-AMO<br><br>**DEFENDANTS PARAMOUNT SKYDANCE CORPORATION AND SKYDANCE MEDIA, LLC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**<br><br>Hearing Date:   July 16, 2026<br>Time:            2:00 p.m.<br>Judge:           Hon. Araceli Martínez-Olguín<br>Courtroom:       TBD |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................2

I.  PLAINTIFFS FAIL TO ALLEGE FACTS PLAUSIBLY ESTABLISHING THEIR STANDING TO CHALLENGE EITHER MERGER ..................................................2

  A.  Plaintiffs' Allegations of Harm Are Insufficient to Confer Article III Standing ...............2

  B.  Plaintiffs' Allegations of Antitrust Standing Are Deficient ..................................4

II.  PLAINTIFFS FAIL TO ALLEGE FACTS PLAUSIBLY SHOWING A VIOLATION OF SECTION 7 OF THE CLAYTON ACT ..................................................................5

  A.  Plaintiffs' Opposition Fails to Rebut Defendants' Arguments That the Complaint Does Not Properly Define Relevant Markets ..................................................5

    1.  Plaintiffs Do Not Dispute That They Failed to Allege Cross-Elasticity of Demand ..................................................................................6

    2.  Plaintiffs' Alleged Markets Are Deficient ..............................................6

      a.  The Premium Video Market Is Facially Deficient ......................................6

      b.  The National Television News Market Is Facially Deficient ......................7

      c.  The Theatrical Distribution Market Is Facially Deficient..........................7

  B.  Plaintiffs Fail to Allege Facts Plausibly Showing That Either of the Mergers Is Likely to Substantially Lessen Competition ..................................................8

    1.  *Pabst* Does Not Rescue Plaintiffs' Defective Allegations....................................9

    2.  Plaintiffs Fail to Allege Facts Plausibly Showing That the Completed Skydance-Paramount Merger Has Substantially Lessened Competition...............11

      a.  Plaintiffs Fail to Address the Absence of Pre-Merger Competition in the "Premium Video Distribution" and "National TV News" Markets ..................................................................................11

      b.  The Single Post-Merger Price Increase on Paramount+ Does Not Plausibly Allege a Lessening of Competition...........................................12

      c.  The "Theatrical Distribution" Market Allegations Are Insufficient..........12

    3.  Plaintiffs Fail to Allege Facts Plausibly Showing the Paramount-Warner Bros. Merger Will Likely Cause a Substantial Lessening of Competition............12

      a.  Plaintiffs' Statistical Allegations Are Woefully Deficient .......................12

    b.    The Alleged Market Shares Do Not Support a Plausible Inference of Anticompetitive Effects ..................................................................................13

    c.    Plaintiffs' Remaining Competitive Harm Allegations Are Conclusory ...................................................................................................14

III.    PLAINTIFFS SHOULD NOT BE GRANTED LEAVE TO AMEND .........................................14

CONCLUSION .....................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
190 F.3d 1051 (9th Cir. 1999) ...................................................................................................4

*In re Apple iPhone Antitrust Litig.*,
2013 WL 4425720 (N.D. Cal. Aug. 15, 2013) ..........................................................................2

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................................10

*Bay Guardian Co. v. Chronicle Pub. Co.*,
340 F. Supp. 76 (N.D. Cal. 1972) ..............................................................................................5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................................7, 8

*Blantz v. Cal. Dep't Corr. & Rehab.*,
727 F.3d 917 (9th Cir. 2013) .....................................................................................................3

*Brantley v. NBC Universal, Inc.*,
675 F.3d 1192 (9th Cir. 2012) .................................................................................................12

*California v. Sutter Health Sys.*,
130 F. Supp. 2d 1109 (N.D. Cal. 2001) .....................................................................................9

*Cervantes v. Countrywide Home Loans, Inc.*,
656 F.3d 1034 (9th Cir. 2011) ............................................................................................14, 15

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
631 F.3d 939 (9th Cir. 2011) .....................................................................................................3

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)....................................................................................................................3

*Cont'l T.V., Inc. v. GTE Sylvania Inc.*,
433 U.S. 36 (1977)......................................................................................................................4

*Coronavirus Reporter v. Apple, Inc.*,
85 F.4th 948 (9th Cir. 2023) ......................................................................................................6

*DeHoog v. Anheuser-Busch InBev SA/NV*,
899 F.3d 758 (9th Cir. 2018) ...............................................................................................8, 10

*Demartini v. Microsoft Corp.*,
662 F. Supp. 3d 1055 (N.D. Cal. 2023) .........................................................................9, 12, 14

*DIRECTV, LLC v. Nexstar Media Group, Inc.*,
2026 WL 851401 (E.D. Cal. Mar. 27, 2026) ...........................................................................10

*Feitelson v. Google Inc.*,
  80 F. Supp. 3d 1019 (N.D. Cal. 2015) ................................................................................5

*Fry v. Cap. One Fin. Corp.*,
  2026 WL 751422 (N.D. Cal. Mar. 17, 2026).............................................................8, 14, 15

*FTC v. Lab. Corp. of Am.*,
  2011 WL 3100372 (C.D. Cal. Feb. 22, 2011)....................................................................13

*FTC v. Microsoft Corp.*,
  136 F.4th 954 (9th Cir. 2025) ...........................................................................................8

*FTC v. Microsoft Corp.*,
  681 F. Supp. 3d 1069 (N.D. Cal. 2023) ...........................................................................11

*FTC v. Qualcomm Inc.*,
  969 F.3d 974 (9th Cir. 2020) ............................................................................................6

*Hicks v. PGA Tour, Inc.*,
  897 F.3d 1109 (9th Cir. 2018) ..........................................................................................7

*hiQ Labs, Inc. v. LinkedIn Corp.*,
  485 F. Supp. 3d 1137 (N.D. Cal. 2020) ............................................................................7

*Hogan v. Amazon.com, Inc.*,
  2025 WL 869202 (9th Cir. Mar. 20, 2025)........................................................................5

*Hospital Corp. of Am. v. FTC*,
  807 F.2d 1381 (7th Cir. 1986) ..........................................................................................9

*Huskey v. City of San Jose*,
  204 F.3d 893 (9th Cir. 2000) ............................................................................................2

*Kaplan v. Burroughs Corp.*,
  611 F.2d 286 (9th Cir. 1979) ............................................................................................6

*Khamooshi v. Politico LLC*,
  786 F. Supp. 3d 1174 (N.D. Cal. 2025) ............................................................................4

*Lake v. Fontes*,
  83 F.4th 1199 (9th Cir. 2023) ...........................................................................................3

*Lanovaz v. Twinings N. Am., Inc.*,
  726 F. App'x 590 (9th Cir. 2018) .....................................................................................3

*Lansdown v. Bayview Loan Serv., LLC*,
  2023 WL 2934932 (N.D. Cal. Apr. 12, 2023) ................................................................1, 6

*Leadsinger, Inc. v. BMG Music Pub.*,
  512 F.3d 522 (9th Cir. 2008) ..........................................................................................15

*Lesnik v. Eisenmann SE*,
  2018 WL 4700342 (N.D. Cal. Oct. 1, 2018).....................................................................15

*Malaney v. UAL Corp.*,
  2010 WL 3790296 (N.D. Cal. Sept. 27, 2010) ...............................................................9

*Malaney v. UAL Corp.*,
  2011 WL 6845773 (N.D. Cal. Dec. 29, 2011) ...............................................................15

*Miami Herald Pub. Co. v. Tornillo*,
  418 U.S. 241 (1974).......................................................................................................4

*Newcal Indus., Inc. v. Ikon Off. Sol.*,
  513 F.3d 1038 (9th Cir. 2008) ........................................................................................9

*In re Nexstar-Tegna Merger Litigation*,
  2026 WL 1049295 (E.D. Cal. Apr. 17, 2026).................................................................10

*Reilly v. Apple Inc.*,
  578 F. Supp. 3d 1098 (N.D. Cal. 2022) ...........................................................................4

*Reilly v. Hearst Corp.*,
  107 F. Supp. 2d 1192 (N.D. Cal. 2000) ........................................................................4, 5

*Sanner v. Bd. of Trade of Chi.*,
  62 F.3d 918 (7th Cir. 1995) ............................................................................................2

*Somers v. Apple, Inc.*,
  729 F.3d 953 (9th Cir. 2013) .......................................................................................2, 12

*St. Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys., Ltd.*,
  778 F.3d 775 (9th Cir. 2015) .......................................................................................9, 14

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021).......................................................................................................2

*Tundra, Inc. v. Faire Wholesale, Inc.*,
  2024 WL 589097 (N.D. Cal. Feb. 13, 2024) .................................................................7, 8

*United States v. Baker Hughes Inc.*,
  908 F.2d 981 (D.C. Cir. 1990)........................................................................................9

*United States v. E.I. du Pont de Nemours & Co.*,
  353 U.S. 586 (1957).....................................................................................................8, 11

*United States v. Marine Bancorp., Inc.*,
  418 U.S. 602 (1974).......................................................................................................9

*United States v. Oracle Corp.*,
  331 F. Supp. 2d 1098 (N.D. Cal. 2004) .........................................................................14

*United States v. Pabst Brewing Co.*,
  384 U.S. 546 (1966)....................................................................................................9, 10

*United States v. Phila. Nat'l Bank*,
  374 U.S. 321 (1963).......................................................................................................9

*Whalen v. Albertsons Cos.*,
   2025 WL 371806 (N.D. Cal. Feb. 3, 2025) .......................................................................................15

*Yoshimoto v. Alaska Airlines, Inc.*,
   2026 WL 1121960 (D. Haw. Apr. 24, 2026) ....................................................................................15

**Statutes**

15 U.S.C. § 18................................................................................................................*passim*

15 U.S.C. § 1801..................................................................................................................5

**INTRODUCTION**

Plaintiffs' Opposition, much like their Complaint, is an empty vessel. It is long on rhetoric but devoid of any substance. Rather than confronting the myriad specific pleading deficiencies Defendants identified in their Motion to Dismiss, Plaintiffs parrot their conclusory allegations, misstate the governing legal standards, and ignore binding authority. Indeed, for most of the arguments and authorities Defendants raised in their Motion, Plaintiffs offer no response at all, thereby conceding the points. *See, e.g., Lansdown v. Bayview Loan Serv., LLC*, 2023 WL 2934932, at *4 (N.D. Cal. Apr. 12, 2023). Plaintiffs' Opposition confirms that their Complaint should be dismissed with prejudice.

*First*, the Opposition does not offer any cogent response to Plaintiffs' lack of Article III or antitrust standing. Plaintiffs allege only one particularized or concrete injury—a single, historical price increase on Paramount+—but do not allege how it is fairly traceable to either merger. Plaintiffs' remaining allegations of harm are conclusory assertions of "higher prices, reduced output, diminished quality," and the like, which this Court and the Ninth Circuit have repeatedly rejected as insufficient to show standing.

*Second*, the Opposition fails to respond to virtually all of Defendants' arguments for why Plaintiffs' alleged relevant markets are facially defective. Plaintiffs do not dispute that they failed to allege cross-elasticity of demand, "the principle most fundamental to product market definition," for any of their three alleged markets. And they fail to offer any substantive response to the other facial deficiencies Defendants' motion identified with their three proposed markets.

*Third*, the Opposition points to no Complaint allegations capable of overcoming the absence of facts plausibly showing that either challenged merger is likely to substantially lessen competition. Instead, the Opposition confirms that Plaintiffs' claims are premised on a fundamental misreading of the governing legal standards, *i.e.*, that any combination of competitors, raising a bare possibility of harm to competition, states a violation of Section 7 of the Clayton Act. Binding case law, however, requires more—a "reasonable probability" of competitive harm, grounded in concrete facts about market characteristics, which Plaintiffs' threadbare allegations do not come close to meeting.

Finally, Plaintiffs' request for leave to amend should be denied. The deficiencies in their Complaint and their counsel's track record of filing serial, meritless merger challenges reflect their fundamental disagreements with governing antitrust law and federal pleading standards. Those

deficiencies cannot be remedied by amendment. Indeed, Plaintiffs do not even try to propose a cure. The Court and the parties should be spared further meritless litigation. The Complaint should be dismissed with prejudice.

<u>**ARGUMENT**</u>

**I.   PLAINTIFFS FAIL TO ALLEGE FACTS PLAUSIBLY ESTABLISHING THEIR STANDING TO CHALLENGE EITHER MERGER**

**A.   Plaintiffs' Allegations of Harm Are Insufficient to Confer Article III Standing**

Defendants showed that "standing is not dispensed in gross" and that Plaintiffs must establish it plaintiff-by-plaintiff, claim-by-claim, and market-by-market. Mot. 8 (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021); *In re Apple iPhone Antitrust Litig.*, 2013 WL 4425720, at *6 (N.D. Cal. Aug. 15, 2013)). Plaintiffs ignore this entirely and instead argue that they have suffered injuries generically across all three alleged markets without explaining which Plaintiff has standing in which market for which merger and why. *See* ECF No. 49 ("Opp'n") 8–10.

*First*, the Opposition fails to explain how the only concrete and particularized injury alleged in the Complaint—a single, historical price increase on Paramount+—is traceable to either challenged merger. *See* Compl. ¶¶ 28–31; Opp'n 8–10. Specifically, Plaintiffs fail to demonstrate how combining two producers of movies and television shows plausibly caused a price increase in a different market for streaming services. Opp'n 9–10. Plaintiffs instead ask the Court to infer causation from a mere temporal sequence—a price increase that happened to occur five months after the Skydance merger. *See id*. 9–10, 16–17. This is insufficient. Mot. 9–10; *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (post hoc reasoning is a "logical fallacy"). And they concede in the Complaint that prices for all "leading streaming services . . . have increased materially over time," Compl. ¶ 98, an "obvious alternative explanation" that dooms any plausible inference of causation. *Somers v. Apple, Inc.*, 729 F.3d 953, 965 (9th Cir. 2013).

Plaintiffs claim that two of them not being Paramount+ subscribers "misses the point" about their lack of injury from the price increase because they "would consider purchasing Paramount+." Opp'n 9. But they ignore the case law holding that allegations of being "deterred" from purchasing something are insufficient to establish standing. *See* Mot. 9 (quoting *Sanner v. Bd. of Trade of Chi.*, 62 F.3d 918, 923–24 (7th Cir. 1995)). Indeed, Plaintiffs' "deterrence" theory includes multiple layers of speculation: the Court

would have to assume (1) that the Skydance-Paramount merger caused the Paramount+ price increase (which Plaintiffs have not plausibly alleged, *see supra* at 2); (2) that Plaintiffs Faust and McCarthy would have subscribed at the pre-merger price (even though they never did); and (3) that their decision not to subscribe post-merger is attributable to the price increase rather than to any of the countless other reasons a consumer might choose not to purchase a streaming service. Such speculation does not meet the test for Article III standing. *See Lake v. Fontes*, 83 F.4th 1199, 1204 (9th Cir. 2023) (speculative allegations of potential future injuries are insufficient for standing); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) ("highly attenuated chain of possibilities" cannot support standing). And of course, the Paramount+ price increase cannot conceivably provide standing to challenge the Paramount-Warner Bros. merger, which has yet to close.

*Second*, other than the Paramount+ price increase, Plaintiffs fail to explain how any injury alleged in their Complaint is concrete or particularized. They simply parrot their conclusory Complaint allegations that eliminating a competitor is likely to result in various generic harms (*e.g.*, "higher prices," "reduced output") that will somehow, someday injure Plaintiffs. *See* Opp'n 8–9; *see, e.g.*, Compl. ¶¶ 8, 25, 27, 40, 129. Such "naked assertions devoid of further factual enhancement" are insufficient to confer standing. *Blantz v. Cal. Dep't Corr. & Rehab.*, 727 F.3d 917, 927 (9th Cir. 2013); *see also Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 954–55 (9th Cir. 2011) ("This list of alleged [statutory] violations cannot substitute for the factual allegations required in the complaint to satisfy Article III's requirement of an injury-in-fact."). Plaintiffs argue they need not allege any facts to plausibly show a specific injury is imminent, such as "the next specific Paramount or Warner Bros. film they will attend," Opp'n 12, but that runs headlong into cases holding that a profession of general intent to engage in conduct that might result in an injury-in-fact is insufficient to confer standing. *See, e.g.*, *Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018) (allegation that plaintiff would "consider buying" defendant's products was insufficient to confer Article III standing); Mot. 12.

In sum, Plaintiffs' standing theory amounts to little more than the assertion that they are consumers who watch television and go to the movies, and therefore a merger between entertainment companies would injure them. Arguing for standing based on such generalized injury allegations makes a mockery of Article III standing doctrine. It should be rejected out of hand. *See, e.g.*, *Lake*, 83 F.4th at 1204 (no

Article III standing where plaintiffs "posit only 'conjectural allegations of potential injuries[,]' . . . [based] on a 'long chain of hypothetical contingencies'"); *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1183 (N.D. Cal. 2025) ("[A]n unmaterialized risk of future harm does not qualify as a concrete injury.").

## B.    Plaintiffs' Allegations of Antitrust Standing Are Deficient

Plaintiffs' conclusory assertions are similarly insufficient to establish antitrust standing in the alleged National TV News and Theatrical Distribution markets. *See* Opp'n 10–12; *Reilly v. Apple Inc.*, 578 F. Supp. 3d 1098, 1110 (N.D. Cal. 2022) (dismissing complaint for lack of antitrust injury with only conclusory allegations of "increased prices and costs, reduced innovation and quality of service, and lowered output"). In the alleged National TV News market, Plaintiffs fail to show that alleged losses of "editorial independence" or "viewpoint diversity" are cognizable antitrust injuries. Mot. 13–14. And Plaintiffs admit they are not participants in the alleged "Theatrical Distribution Market," foreclosing them from claiming antitrust injury there. *See, e.g.*, *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1057 (9th Cir. 1999) ("Parties whose injuries . . . are experienced in another market do not suffer antitrust injury.").

Specifically, Plaintiffs offer no response to Defendants' authorities showing that antitrust injuries are only those "of economic consequence," rather than matters of social or political complaint. *See* Mot. 13. Having failed to dispute that legal principle, Plaintiffs also cite no support for their assertion that "editorial independence" or "viewpoint diversity" are alleged economic harms, rather than social or political ones. Opp'n 11. Though Plaintiffs contend their claim in the alleged National TV News market concerns "quality, variety, and innovation," *id.*, the Complaint allegations underscore the opposite, *i.e.*, that "***political*** leverage over the ownership and ***editorial direction*** of a major news network" is the non-economic "injury" they seek to vindicate. Compl. ¶ 78 (emphasis added). That alleged "injury" is plainly a political one that cannot satisfy the antitrust injury requirement. Mot. 13 (citing *Cont'l T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 53 n.21 (1977); *Reilly v. Hearst Corp.*, 107 F. Supp. 2d 1192, 1195 (N.D. Cal. 2000) (antitrust laws "exclusively confine their scope to matters of economic consequence")).

Moreover, even if a loss of "editorial independence" or "viewpoint diversity" could be recast as an economic injury, a court placing its thumb on the scale of editorial outcomes under the auspices of antitrust enforcement would violate the First Amendment. *See id*. 13–14 (citing *Miami Herald Pub. Co.*

*v. Tornillo*, 418 U.S. 241, 258 (1974) ("governmental regulation of" the "crucial process" of "the exercise of editorial control and judgment" cannot occur "consistent with First Amendment guarantees of a free press")). Plaintiffs offer no colorable response to this point.

Plaintiffs' discussion of the Newspaper Preservation Act ("NPA"), Opp'n 10–11, only underscores the deficiencies in their antitrust claims. Plaintiffs allege no claim under the NPA, which is not an antitrust law. To the contrary, that statute creates an exception to antitrust liability based on non-antitrust considerations. *See, e.g.*, *Bay Guardian Co. v. Chronicle Pub. Co.*, 340 F. Supp. 76, 78 (N.D. Cal. 1972) (NPA "creates a limited exemption from antitrust laws"); *Reilly*, 107 F. Supp. 2d at 1201 (NPA reflects policy judgment "that the public interest in preserving editorial voices would be best served by permitting newspaper monopolies"). Plaintiffs may agree with the policy objectives of the NPA, but those concerns do not satisfy the antitrust injury requirements of the Clayton Act.

Finally, with respect to the alleged Theatrical Distribution market, Plaintiffs fail to respond to the requirement that they must participate and suffer injury "in the market where competition is being restrained" to have antitrust standing. *Hogan v. Amazon.com, Inc.*, 2025 WL 869202, at *1 (9th Cir. Mar. 20, 2025); *see* Mot. 14–15. Instead, Plaintiffs confirm that they participate in a market "downstream" from the purported Theatrical Distribution market they allege would be restrained by the merger. Opp'n 11. Their claim that they have antitrust standing when they allege an injury at a different "level" of the supply chain than the one "at which competition is restrained," *id*. 12, is wrong as a matter of law. Mot. 14–15; *Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019, 1027–28 (N.D. Cal. 2015) (dismissing complaint where plaintiffs alleged injury was not in "the market in which the alleged anticompetitive conduct occurred").

## II. PLAINTIFFS FAIL TO ALLEGE FACTS PLAUSIBLY SHOWING A VIOLATION OF SECTION 7 OF THE CLAYTON ACT

### A. Plaintiffs' Opposition Fails to Rebut Defendants' Arguments That the Complaint Does Not Properly Define Relevant Markets

Contrary to Plaintiffs' contentions, Opp'n 12–13, granting Defendants' Motion on failed market definition grounds does not require weighing any factual or merits disputes or considering anything beyond the pleadings. The Complaint's relevant market allegations are deficient on their face. Indeed, Plaintiffs concede that an antitrust claim fails on the pleadings where, like here, its "market definition is facially defective." *Id*. 12. Yet they respond to Defendants' market definition arguments by simply

REPLY MEMO ISO MOTION TO DISMISS

5

CASE NO. 4:26-CV-03790-AMO

repeating their deficient Complaint allegations and asserting they should be enough. *See id*. 13–15. But they are not enough. The law is clear that relevant antitrust market allegations are inadequate where the Complaint offers no factual allegations plausibly suggesting cross-elasticity of demand or reasonable interchangeability. *See* Mot. 15–18. Plaintiffs also fail to respond in any substantive way to the six specific deficiencies in their relevant market pleading that Defendants have identified, *id*., conceding those points through their silence. *See Lansdown*, 2023 WL 2934932, at *4 ("[A] failure to respond in an opposition to an argument . . . concedes the argument.").

### 1.    Plaintiffs Do Not Dispute That They Failed to Allege Cross-Elasticity of Demand

Defendants demonstrated that each of Plaintiffs' three alleged markets fails to satisfy the threshold legal requirement of alleging cross-elasticity of demand, *see* Mot. 15–16, *i.e.*, the "principle most fundamental to product market definition." *Coronavirus Reporter v. Apple, Inc.*, 85 F.4th 948, 955 (9th Cir. 2023). Plaintiffs do not contest this failure.

Instead, Plaintiffs seek to avoid the requirement to plead cross-elasticity of demand under *Coronavirus Reporter* because it was "not a Section 7 merger" case. Opp'n 12. But that distinction is immaterial. "A threshold step in **any antitrust case** is to accurately define the relevant market," *FTC v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020) (emphasis added), and "principles of market definition applicable to cases arising under" the Sherman Act, including cross-elasticity of demand, "are also applicable . . . to merger cases arising under [Section] 7 of the Clayton Act," *Kaplan v. Burroughs Corp.*, 611 F.2d 286, 291–92 & n.2 (9th Cir. 1979). Thus, Plaintiffs' formulaic invocations of "reasonable interchangeability" are insufficient here, as they would be in a Sherman Act case.

### 2.    Plaintiffs' Alleged Markets Are Deficient

#### a.    The Alleged Premium Video Market Is Facially Deficient

Plaintiffs fail to address the two independent defects Defendants identified in Plaintiffs' "Premium Video Distribution" market definition. First, Plaintiffs do not explain—in the Complaint or in their Opposition—what "related offerings" are included in the market beyond "subscription streaming services" and "cable television," leaving the market's boundaries impermissibly ambiguous. *See* Mot. 16; Opp'n 13. Second, Plaintiffs allege no reasonable boundaries around "premium" video content, instead relying

on vague adjectives (*e.g.*, "professionally produced," "high-budget," *see id.*) that fail to identify which content is within or outside the alleged market. Such vague pleading is insufficient. *See Tundra, Inc. v. Faire Wholesale, Inc.*, 2024 WL 589097, at *1 (N.D. Cal. Feb. 13, 2024) (markets modified by undefined adjectives are insufficient); *hiQ Labs, Inc. v. LinkedIn Corp.*, 485 F. Supp. 3d 1137, 1148 (N.D. Cal. 2020) (dismissing where "parameters" of alleged market were "vague"). Once again, Plaintiffs' Opposition simply restates their Complaint's conclusory allegations about what the market "identifies" and never addresses why, for example, major video distributors like YouTube—which vigorously compete to distribute "premium" content—are excluded from the market. *See* Mot. 16–17.

### b.    The Alleged National Television News Market Is Facially Deficient

Defendants identified two independent defects in the alleged "National TV News" market: (a) the Complaint's purported distinguishing criterion of "continuous live coverage" is internally contradicted by the inclusion of broadcast network news, which does not offer continuous live coverage; and (b) the Complaint fails to allege any facts explaining why major national digital news outlets with video content (*e.g.*, *The New York Times*, *The Washington Post*, AP, Reuters) are not reasonable substitutes. *See* Mot. 17. Plaintiffs' Opposition acknowledges these challenges but summarily dismisses them as "a factual substitution argument" best tested "in discovery," without citing any authority. Opp'n 14. The allegations in a complaint must set forth specific facts that plausibly support the claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (complaint must proffer "enough facts to state a claim to relief that is plausible on its face"). Where, as here, a "relevant market definition is facially unsustainable," the Complaint must be dismissed. *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1121 (9th Cir. 2018).

### c.    The Alleged Theatrical Distribution Market Is Facially Deficient

Plaintiffs offer no substantive response to Defendants' arguments that the alleged "Theatrical Distribution" market conflates production, distribution, and exhibition. Plaintiffs also fail to explain why feature films produced for theatrical release are not reasonably interchangeable with feature films produced for streaming or video-on-demand. Mot. 17–18. Plaintiffs' only response is to restate their conclusory allegations that "theatrical distribution is distinct from home viewing because theatrical films involve different release windows, consumer experiences, exhibition channels, and competitive constraints." Opp'n 14. Plaintiffs identify no specific factual allegations in the Complaint to support this

claim. This too is fatal under *Twombly* and its progeny, especially since it is undisputed that the same films may be distributed through both channels. *See* 550 U.S. at 555–56. Nor does the Opposition address Defendants' argument that the proposed "Theatrical Distribution" market improperly excludes major movie production companies (*e.g.*, Amazon, Netflix, and Apple) that compete with Paramount and Warner Bros. in producing feature films. Mot. 18. By ignoring these competitors, the Complaint's market definition is implausible on its face. *See Tundra*, 2024 WL 589097, at *1.

**B.      Plaintiffs Fail to Allege Facts Plausibly Showing That Either of the Mergers Is Likely to Substantially Lessen Competition**

Plaintiffs' Opposition also does not meaningfully respond to any of Defendants' arguments that the Complaint fails to allege facts plausibly showing that either merger is likely to substantially lessen competition.[1] Plaintiffs seek to justify their pleading failure by relying upon an erroneous legal standard, *i.e.*, that a showing of any theoretically possible harm resulting from a merger meets their burden. *See* Opp'n 2–7. But a "mere possibility" falls short of what Section 7 demands. *See United States v. E.I. du Pont de Nemours & Co.*, 353 U.S. 586, 598 (1957) ("mere possibility" of harm is insufficient); *Fry v. Cap. One Fin. Corp.*, 2026 WL 751422, at *2 (N.D. Cal. Mar. 17, 2026) (same). While the "incipiency" standard does not require a "certainty" of harm, it does require that the showing of harm be "reasonabl[y] probable," based on factual showings of market share, concentration, barriers to entry, and other relevant market characteristics. *See, e.g.*, *FTC v. Microsoft Corp.*, 136 F.4th 954, 964, 968, 971 (9th Cir. 2025). This standard cannot be satisfied by the "speculative conclusion[s]" that make up the entirety of the Complaint. *See DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 765 (9th Cir. 2018) (rejecting speculative allegations of harm to competition).

Plaintiffs fail to grapple with the critical distinction in Section 7 law between a mere increase in market concentration (which occurs in any horizontal merger) and a merger resulting in "undue" market concentration. Mot. 21. Because Plaintiffs have not alleged any specific market shares or market concentration increases, they are forced to contend that the mere fact of any increase in market concentration, no matter how small, is sufficient to state a claim. *See* Opp'n 15–18. Plaintiffs are wrong.

---

[1] Defendants do not contend that federal government review "displace[s]" Plaintiffs' claims. *See* Opp'n 6. Defendants ask the Court to dismiss the Complaint because it fails to plead Article III or antitrust injury, or the threshold elements of a Section 7 claim.

To state a *prima facie* Section 7 claim based on market structure, Plaintiffs must allege facts showing an "undue" increase in market concentration. *See United States v. Phila. Nat'l Bank*, 374 U.S. 321, 363 (1963) (requiring showing that merger produces firm "controlling an undue percentage share of the relevant market"); *California v. Sutter Health Sys.*, 130 F. Supp. 2d 1109, 1118 (N.D. Cal. 2001) (requiring "an initial statistical showing that the transaction will lead to undue concentration in the market"). Courts have rejected the argument that any increase in concentration, or the elimination of any competition, is sufficient to state a claim. *See* Mot. 20–21; *Demartini v. Microsoft Corp.*, 662 F. Supp. 3d 1055, 1065 (N.D. Cal. 2023). But that is all that the Complaint alleges here.

### 1.    *Pabst* Does Not Rescue Plaintiffs' Defective Allegations

Plaintiffs' Opposition leans heavily on *United States v. Pabst Brewing Co.*, 384 U.S. 546 (1966) as purported support for the proposition that they do not have to allege facts plausibly showing a substantial lessening of competition. But *Pabst* provides no basis to rescue Plaintiffs from their pleading deficiencies.

***First***, while *Pabst* has not been formally overruled, the Supreme Court has "cut [it] back sharply." *United States v. Baker Hughes Inc.*, 908 F.2d 981, 990–91 (D.C. Cir. 1990) (Thomas, J.). *Pabst* accepted relatively small market shares by the merging parties, combined with a "steady trend toward concentration," as being enough to show a Section 7 violation on the facts of that case. *Pabst*, 384 U.S. at 550–53. However, modern merger case law requires much more—higher levels of concentration and a valid economic theory of how that undue concentration is likely to harm competition. *Hospital Corp. of Am. v. FTC*, 807 F.2d 1381, 1386 (7th Cir. 1986) (Posner, J.). Ninth Circuit law is in agreement. *See* Mot. 20–21 (citing *Demartini*, 662 F. Supp. 3d at 1065; *Malaney v. UAL Corp.*, 2010 WL 3790296, at *6–7 (N.D. Cal. Sept. 27, 2010), *aff'd*, 434 F. App'x 620 (9th Cir. 2011); *St. Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys., Ltd.*, 778 F.3d 775, 783–85 (9th Cir. 2015); *Sutter*, 130 F. Supp. 2d at 1118). Moreover, despite Plaintiffs' contentions, Opp'n 3, *Pabst* did not abandon the view that a Section 7 claim requires alleging and proving a "relevant geographic market." *United States v. Marine Bancorp., Inc.*, 418 U.S. 602, 621 n.20 (1974); *accord Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1045 n.4 (9th Cir. 2008) ("Antitrust law requires allegation of both a product market and a geographic market.").

***Second***, *Pabst* turned on a showing of a "sharp rise" in concentration in the brewer market, *Pabst*,

384 U.S. at 551–52. Here, the Complaint contains no market concentration allegations at all, so it could not satisfy even the outdated *Pabst* approach. The Complaint points to only two other transactions in the entertainment industry—Disney/21st Century Fox in 2019 and Amazon/MGM in 2021, *see* Compl. ¶ 9—but it does not allege any facts about how those mergers increased concentration in any of the three alleged markets, let alone facts to plausibly show a "sharp rise" in concentration in any market.

*Third*, the Ninth Circuit expressly rejected Plaintiffs' identical "incipiency" argument in *DeHoog*. There, consumer plaintiffs challenged a beer-industry merger, and the Ninth Circuit rejected the plaintiffs' attempt to use the "incipiency" standard applied in *Pabst* and *Philadelphia National Bank* to allege a Section 7 violation through speculative allegations of future competitive harm. 899 F.3d at 764–65. It held that the plaintiffs' assertion that a third-party producer "will adopt the distribution practices of" the acquiring firm was "a classic speculative conclusion" that "stops short of the line between possibility and plausibility of entitlement to relief." *Id*. at 765. Further, the Circuit emphasized that "[m]erely stating that" a post-merger entity "is likely to have incentives to change its practices," "without more, is insufficient." *Id.* at 762, 765 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). That holding applies squarely to Plaintiffs' faulty allegations here, which allege that the challenged mergers will increase the combined firm's "ability and incentive" to harm competition, Compl. ¶¶ 40, 43–44, 93, 114, 122, 129, without providing any factual support for *why* such harm is reasonably probable rather than merely possible.

*Fourth*, *Pabst* was decided after a full trial on the merits, with an evidentiary record that included "documents, statistics, official records, depositions, and affidavits by witnesses." 384 U.S. at 550. Conclusory assertions in a complaint are no substitute for allegations of specific facts, and *Pabst* says nothing about the federal pleading standards, which require "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). The same is true of *DIRECTV, LLC v. Nexstar Media Group, Inc.*, 2026 WL 851401 (E.D. Cal. Mar. 27, 2026) and *In re Nexstar-Tegna Merger Litigation*, 2026 WL 1049295 (E.D. Cal. Apr. 17, 2026), both of which were decided on the basis of actual economic evidence—including evidence of post-merger market shares greater than 50% in several markets. No such market shares, or any market shares at all, are alleged here.

**2.    Plaintiffs Fail to Allege Facts Plausibly Showing That the Completed Skydance-Paramount Merger Has Substantially Lessened Competition**

**a.    Plaintiffs Fail to Address the Absence of Pre-Merger Competition in the Alleged "Premium Video Distribution" and "National TV News" Markets**

As Defendants showed in their Motion, the Complaint fails to allege any pre-merger competition between Skydance and Paramount in the purported "Premium Video Distribution" or "National TV News" markets, making any lessening of competition in those markets implausible. Mot. 19–20. Plaintiffs do not dispute this absence of pre-merger competition and instead argue that "Section 7 is not limited to acquisitions between firms with identical business models," citing *United States v. E.I. du Pont de Nemours & Co.*, 353 U.S. 586 (1957) for the proposition that Section 7 can reach "extension" acquisitions. Opp'n 16. This appears to be an attempt to press a vertical theory of harm, *i.e.*, harm from combining firms at different levels of the supply chain, but Defendants explained the requirements for alleging such harm, Mot. 22 (citing *FTC v. Microsoft Corp.*, 681 F. Supp. 3d 1069, 1090 (N.D. Cal. 2023)), and the Complaint fails to allege facts that would satisfy any of those requirements. Specifically, the Complaint pleads no facts plausibly suggesting (i) integrating Skydance's production operations with Paramount's streaming service foreclosed rivals; (ii) any incentive or ability to foreclose; or (iii) why Skydance's content is competitively necessary such that its integration into Paramount would substantially lessen competition. *Id*.

Plaintiffs' own case law highlights why their attempt to advance a theory of vertical harm fails as a matter of law. In *du Pont*, a supplier (du Pont) acquired a significant stock interest in a major customer (General Motors) to insulate its upstream business "from free competition." *du Pont*, 353 U.S. at 589; *id.* at 606 ("du Pont purposely employed its stock to pry open the General Motors market to entrench itself as the primary supplier of General Motors' requirements for automotive finishes and fabrics."). The case turned on decades of evidence showing actual foreclosure of competing suppliers to General Motors, which accounted for more than 40% of automotive vehicles in the United States. *Id.* at 595. The Complaint here lacks any such allegations or evidence.

### b. The Single Post-Merger Price Increase on Paramount+ Does Not Plausibly Allege a Lessening of Competition

Defendants have shown why the January 2026 Paramount+ price increase is insufficient to allege a substantial lessening of competition, Mot. 9–10, and Plaintiffs fail to rebut any of Defendants' points. *First*, Skydance was not a participant in the alleged "Premium Video Distribution" market before the merger, so the merger could not have increased concentration in that market, making it implausible to attribute a consumer price increase in that market to the transaction. *Second*, a price increase by itself "does not sufficiently allege an injury to competition." *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1202 (9th Cir. 2012). Indeed, Plaintiffs allege that prices for "leading streaming services . . . have increased materially over time," independent of any merger. Compl. ¶ 98. There are thus "'obvious alternative explanation[s]'" for the price increase alleged. *Somers*, 729 F.3d at 965. *Third*, Plaintiffs' theory that eliminating an "independent producer" increased Paramount's "ability and incentive to raise consumer prices," Opp'n 10, is unsupported by any facts plausibly showing that acquiring Skydance's content production operations would alter Paramount's pricing incentives in a separate streaming market.

### c. The "Theatrical Distribution" Market Allegations Are Insufficient

Plaintiffs respond to Defendants' arguments regarding the purported "Theatrical Distribution" market by asserting that they "do not rely on a bare elimination theory." However, Plaintiffs do not identify any facts other than the bare elimination of a competitor to support their claim. Opp'n 15. The Complaint does not allege Skydance's pre-merger market share, any change in concentration attributable to the merger, any outputs that were allegedly reduced, any facts showing that quality or consumer choice have been diminished, which theatrical distribution prices were increased, or how any price changes resulted from the merger. "Merely alleging the elimination of a rival does not plausibly support an inference of an appreciable danger of anticompetitive effects in a relevant market." *Demartini*, 662 F. Supp. 3d at 1065.

### 3. Plaintiffs Fail to Allege Facts Plausibly Showing the Paramount-Warner Bros. Merger Will Likely Cause a Substantial Lessening of Competition

#### a. Plaintiffs' Statistical Allegations Are Woefully Deficient

Plaintiffs assert that they allege "market-structure facts" and "concentration trends," Opp'n 5, but the Complaint tells a different story. There are no market shares alleged, no concentration increases alleged, and no other statistics that one would expect in a Section 7 complaint. Instead, the Complaint

only contains a hodgepodge of allegations about revenues, sales, market capitalization, and subscriber figures that are incapable of showing either market shares or concentration levels. *See* Compl. ¶¶ 94–97, 105–108. All of these data points are either incomplete, misaligned with the alleged markets, or otherwise incapable of plausibly supporting any allegations of market power or concentration. *See* Mot. 22–24.

For example, in the Premium Video Distribution market, the Complaint omits market share information for two of the three components of the alleged market—cable television and "related offerings"—and inexplicably excludes any data for major competitors like Amazon Prime Video and Apple TV. *See* Mot. 23 (citing Compl. ¶¶ 86, 94–97). Similarly, in the purported National TV News market, the Complaint alleges total revenues for diversified companies, *see* Compl. ¶¶ 105, 108, but does not allege any data about the national television news businesses within those companies, which is the only product market alleged. Moreover, the data includes companies expressly excluded from the market definition. *See* Mot. 23. In the purported Theatrical Distribution market, the alleged market shares include Canada, even though the market is limited to the United States. *Id.* 23–24.

Plaintiffs summarily dismiss these failures as purportedly being issues that "concern the weight and refinement of market evidence." Opp'n 18. But this is wrong. The fatal pleading defect is that Plaintiffs do not allege any economic facts or data capable of plausibly showing that the merger will probably lessen competition. *See* Mot. 22–23; *see also FTC v. Lab. Corp. of Am.*, 2011 WL 3100372, at *19 (C.D. Cal. Feb. 22, 2011) ("[M]arket shares must be measured in a proper relevant product and geographic market; alleging market shares in some other market is inadequate.").

Plaintiffs also falsely claim that Defendants made "efficiencies" and "scale" arguments in their Motion. Opp'n 18. Plaintiffs appear to confuse evidence Defendants presented in their Opposition to Plaintiffs' Motion for Preliminary Injunction (ECF No. 33) with the arguments Defendants made in the Motion to Dismiss that exclusively challenge Plaintiffs' pleading failures.

        **b.**     **The Alleged Market Shares Do Not Support a Plausible Inference of Anticompetitive Effects**

Even if the Court were to credit the Complaint's misaligned and incomplete statistical allegations (it should not), the numbers alleged do not support a plausible Section 7 claim. The highest post-merger market share Plaintiffs allege, in the purported Theatrical Distribution market, is 23.6%, *see* Compl. ¶ 116,

which falls well below the threshold courts have identified as capable of stating a *prima facie* Section 7 claim. *See United States v. Oracle Corp.*, 331 F. Supp. 2d 1098, 1123 (N.D. Cal. 2004) ("A presumption of anticompetitive effects from a combined share of 35% in a differentiated products market is unwarranted."); *Fry*, 2026 WL 751422, at *6 (dismissing complaint alleging a combined 16.2% market share). The Opposition does not address this authority or explain why a 23.6% combined market share supports a plausible inference that either challenged merger violates Section 7. For the purported Premium Video Distribution and National TV News markets, the Complaint does not allege any market shares at all that correspond to the defined markets—only raw revenue and subscriber figures that do not measure competitive position within the alleged markets. *See* Mot. 22–23. Plaintiffs' bare assertions that the Complaint "pleads subscriber scale, streaming revenue, asset control, national news concentration, and domestic box-office concentration," Opp'n 17, are unsupported by factual allegations that state a plausible Section 7 claim.

<strong>c.    Plaintiffs' Remaining Competitive Harm Allegations Are Conclusory</strong>

The rest of the Complaint's allegations of anticompetitive effects from the Paramount-Warner Bros. merger are nothing more than the formulaic, conclusory assertions that courts routinely reject. For example, the Complaint asserts in conclusory fashion that the acquisition will "reduce theatrical film output and narrow release slates," "diminish[] the value of the theatrical experience," and increase the combined firm's "ability and incentive" to harm competition. Compl. ¶¶ 40–44, 93, 114. The Opposition does not identify (nor could it) any additional factual allegations in the Complaint that plausibly support these conclusory assertions. Plaintiffs instead proclaim that the Complaint's listing of the parties' media assets and their respective revenues and subscriber bases is sufficient. Opp'n 17–18. But merely identifying the size of merging parties does not establish a likelihood of competitive harm. What is required—and absent here—are factual allegations about market shares within properly defined markets, concentration levels, barriers to entry, or other economic facts from which a plausible inference of anticompetitive effects can be drawn. *See St. Alphonsus*, 778 F.3d at 783–86; *Demartini*, 662 F. Supp. 3d at 1062–63.

**III.    PLAINTIFFS SHOULD NOT BE GRANTED LEAVE TO AMEND**

Apparently aware of their facially deficient Complaint, Plaintiffs seek leave to amend. Opp'n 18–

REPLY MEMO ISO MOTION TO DISMISS<br>Case No. 4:26-cv-03790-AMO

20. That request should be denied because any amendment would be futile. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (court may deny leave to amend "where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile"). Plaintiffs have not made any showing that the many flaws in the Complaint are curable—especially those relating to their lack of Article III standing or antitrust injury. Indeed, they have not even tried to identify any new facts they could allege to cure all of the defects in their Complaint.

It is also relevant for the Court to consider the prior merger litigation history of Plaintiffs and their counsel. As Defendants have demonstrated, without any rebuttal, Plaintiffs and their counsel have a history of filing facially unsupported merger challenges which cannot be saved through amendment. *See, e.g.*, *Malaney v. UAL Corp.*, 2011 WL 6845773, at *4 (N.D. Cal. Dec. 29, 2011), *aff'd*, 552 F. App'x 698 (9th Cir. 2014); *Fry*, 2026 WL 751422, at *7; *Whalen v. Albertsons Cos.*, 2025 WL 371806, at *1 (N.D. Cal. Feb. 3, 2025); *Yoshimoto v. Alaska Airlines, Inc.*, 2026 WL 1121960, at *10–11 (D. Haw. Apr. 24, 2026).[2] Given this troubling litigation pattern, there is no basis for the Court to assume that Plaintiffs will do anything to cure the many defects in their Complaint rather than continue to advance arguments inconsistent with federal pleading standards. Having "fail[ed] to respond" to the arguments presented by Defendants establishing why dismissal is warranted and having pressed arguments "completely at odds" with governing law, Plaintiffs have not shown any basis to grant them leave to amend. *Lesnik v. Eisenmann SE*, 2018 WL 4700342, at *5 (N.D. Cal. Oct. 1, 2018); *see also, e.g.*, *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008).

## CONCLUSION

For all the reasons set forth above and in Defendants' Motion to Dismiss, the Complaint should be dismissed with prejudice.

---

[2] Many of the individual Plaintiffs have participated as plaintiffs in these previous merger challenge cases filed by Plaintiffs' counsel as well.

Dated: June 26, 2026

Respectfully submitted,

By: */s/ Jeffrey L. Kessler*
    Jeffrey L. Kessler (*pro hac vice*)
    **WINSTON TAYLOR LLP**
    200 Park Avenue
    New York, NY 10166-4193
    Telephone: (212) 294-4698
    Facsimile: (212) 294-4700
    jeffrey.kessler@winstontaylor.com

    Jeanifer E. Parsigian (SBN 289001)
    Matthew R. DalSanto (SBN 282458)
    **WINSTON TAYLOR LLP**
    101 California Street, 21st Floor
    San Francisco, CA 94111-5891
    Telephone: (415) 591-1469
    Facsimile: (415) 591-1400
    jeanifer.parsigian@winstontaylor.com
    matthew.dalsanto@winstontaylor.com

    Conor A. Reidy (*pro hac vice*)
    Kevin B. Goldstein (*pro hac vice*)
    **WINSTON TAYLOR LLP**
    300 N. LaSalle Drive
    Chicago, IL 60654-3406
    Telephone: (312) 558-7542
    Facsimile: (312) 558-5700
    conor.reidy@winstontaylor.com
    kevin.goldstein@winstontaylor.com

    Matthew R. Huppert (*pro hac vice*)
    **WINSTON TAYLOR LLP**
    1901 L Street NW
    Washington, DC 20036-3506
    Telephone: (202) 282-5004
    Facsimile: (202) 282-5100
    matthew.huppert@winstontaylor.com

    Natalie Kaliss (SBN 353838)
    **LATHAM & WATKINS LLP**
    505 Montgomery Street, Suite 2000
    San Francisco, CA 94111
    Telephone: (415) 391-0600
    Facsimile: (415) 395-8095
    natalie.kaliss@lw.com

    Marguerite Sullivan (*pro hac vice*)
    **LATHAM & WATKINS LLP**
    555 Eleventh Street NW, Suite 1000
    Washington, D.C. 20004
    Telephone: (202) 637-2200
    Facsimile: (202) 637-2201
    marguerite.sullivan@lw.com

Shayan Ahmad (*pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
shayan.ahmad@lw.com

*Attorneys for Defendants Paramount Skydance Corporation and Skydance Media, LLC*