# EXHIBIT 2



200 Park Avenue
New York, NY 10166-4193
+1 (212) 294-6700
+1 (212) 294-4700

**JEFFREY L. KESSLER**
Co-Executive Chairman
+1 212-294-4698
jkessler@winston.com

7/3/2026

**VIA EMAIL**

Attorney General Rob Bonta
Office of the Attorney General
California Department of Justice
1300 I Street
Sacramento, CA 95814

**Re:    Potential Paramount Skydance & Warner Bros. Discovery Merger Litigation**

Dear Attorney General Bonta:

Paramount Skydance Corporation ("Paramount") has engaged us as trial counsel for any litigation challenging its pending acquisition of Warner Bros. Discovery ("Warner Bros."). Based on recent conversations and media reports, we understand that you and other State attorneys general are considering filing an antitrust lawsuit to block the proposed acquisition.[1] As Paramount has explained, such a challenge to this strongly procompetitive transaction would be unwarranted. Combining Paramount and Warner Bros. would create significant value for consumers and content creators by enabling the combined firm to expand content and improve its merged streaming product, which in turn would foster greater competition by allowing the combined firm to more effectively compete with leading streamers like Netflix, Amazon Prime Video, and Disney+. The combined firm will have the incentive and intention to invest in more movie and television content, including specifically movies released in theaters, because doing so will draw more subscribers and viewers to its combined streaming platform and linear TV networks when these high-profile theatrically released films are later brought to those platforms. And more content means new jobs—both in the filmed entertainment industry and indirectly for suppliers, movie theaters, and other entertainment-related businesses.[2]

Notwithstanding these benefits to consumers and workers, we understand from numerous press reports that your office is seriously considering litigation to attempt to block the transaction. Paramount previously offered to address any concerns that we believed you and other State attorneys general might have and repeatedly requested that you and other State attorneys general

---

[1] *E.g.*, Matthew Perlman, *States Preparing to Challenge Paramount-Warner Bros. Deal*, Law360 (Jun. 8, 2026), https://www.law360.com/articles/2486867/states-preparing-to-challenge-paramount-warner-bros-deal.

[2] Ike Brannon, *How Paramount's theater commitments could boost local economies across the nation*, Fortune (Jul. 2, 2026), https://fortune.com/2026/07/02/paramount-warner-bros-merger-theatrical-commitment-local-economies-jobs-analysis/?utm_source=native_share&utm_medium=mobile&utm_campaign=social_share.

*DRAFT // Privileged & Confidential*

**WINSTON TAYLOR.**

identify your concerns so that it can attempt to address them.  Yet your office has largely declined to engage on the substance of the transaction or potential remedies, only recently asking substantive questions.  If your office is willing to engage with Paramount in a substantive dialogue about specific remedies that would address your concerns, Paramount continues to welcome that discussion.  But, at this point, based on your engagement to date, Paramount has not heard from you (or any other State) what it can do that will satisfy your concerns to prevent a lawsuit.

If you choose to move forward with a lawsuit challenging the transaction—which, to be clear, we hope you will not do because the evidence does not support any antitrust claims—Paramount's position will be that you should be prepared to move expeditiously to permit the court to rule on a motion for preliminary injunction by no later than September 30, 2026.  As you know, Paramount and Warner Bros. are committed to resolving any litigation as quickly as possible and, if a pending lawsuit were to prevent Paramount from closing the transaction by September 30, Paramount would incur substantial financial costs amounting to nearly $7 million a day.  A State request for preliminary relief should not hold up the transaction and force Paramount to unnecessarily incur these costs simply because of the timing and lack of expedition in the State's motion.

Your office has had ample time to investigate the transaction and has had access to a massive amount of information that is more than sufficient to make a fully informed enforcement decision.  Further, we understand that you have been coordinating your investigation with other States.  The States have long known of the proposed acquisition.  The merger between Paramount and Warner Bros. has been highly publicized, with Paramount making numerous escalating proposals to overcome Netflix's competitive bidding.  Paramount's public bidding started on December 8, 2025, before culminating in an executed agreement on February 27, 2026.  In between, Paramount submitted its Hart-Scott-Rodino Act premerger filing on December 8, 2025 and certified its compliance with the U.S. Department of Justice's Second Request on February 9, 2026.  As far back as February 20, 2026, a week before Paramount and Warner Bros. reached an agreement, your office issued a statement that it was "taking a close look" at the proposed merger.[3]  You have publicly said that you have been considering challenging this transaction in court since at least March 12, 2026.[4]

Throughout that time, the States have had the ability to issue legal process to secure any relevant party and non-party documents, data, or testimony.  And the States did so.  Indeed, you have had access to over two million documents from over 80 custodians.  Paramount began productions in response to subpoenas from your office and the New York Attorney General's on February 24 and January 28, respectively, and then produced to you on February 25, 27 and March 2, 3, and 4, 2026, the same trove of documents, data, and written responses Paramount provided to the U.S. Department of Justice, which you have had for approximately four months.  With

---

[3] *Attorney General Bonta Issues Statement on Proposed Warner Bros. Mergers: California is Taking a Close Look*, Cal. Dep't of Just. Off. Att'y Gen. (Feb. 20, 2026), https://oag.ca.gov/news/press-releases/attorney-general-bonta-issues-statement-proposed-warner-bros-mergers-california.

[4] Ilana Kowarski, *Paramount Deal Raises Antitrust Concerns About Choice, Content Control, Calif. AG Says*, mLex (Mar. 12, 2026), https://www.mlex.com/mlex/articles/2452612/paramount-deal-raises-antitrust-concerns-about-choice-content-control-calif-ag-says.

**WINSTON
TAYLOR.**

respect to Paramount in particular, to comply with the Department of Justice's extensive Second Request, Paramount produced 822,214 documents, 1,064 GB of data, and a 214-page narrative response.  Although not required to, Paramount signed confidentiality waivers to permit the Department of Justice to share all of this information with you and other States.  Then, on May 6 and 7, DOJ took depositions of two Paramount executives, and Paramount permitted the States the opportunity to participate.  Attorneys for the States attended, including attorneys from your office, although they decided to ask no questions.

We have seen press reports that you have hired outside counsel to litigate your contemplated challenge.[5]  All of this shows that the States have the information and resources they would need to move forward with any lawsuit without further delay and in an expedited manner.  It is now more than four months since you publicly announced your investigation, and Paramount has committed to you three times not to close the transaction—first by June 1, 2026, then extended until July 1, 2026, and then extended until July 16, 2026—to provide the States ample time to resolve their concerns.  Under the law, any further delay in bringing an enforcement action (should you choose to do so) would be "inexcusable."  *See, e.g.*, *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1235 (8th Cir. 2010); *Advocacy Org. for Patients & Providers v. Mercy Health Servs.*, 987 F. Supp. 967, 970 (E.D. Mich. 1997) ("Because that suit was filed with the FTC three months ago, this court sees absolutely no reason the instant lawsuit could not have been filed earlier.  Plaintiffs need not have waited until the eleventh hour to file their 98-page complaint and request for a TRO with this court.").

Given the substantial volume of materials that the parties have already produced, we propose the following schedule to hold a preliminary injunction hearing by the end of August and permit the court sufficient time to issue a reasoned decision on the preliminary injunction by September 30:

| Event | Date |
|---|---|
| Plaintiffs to produce all documents received during investigation | Day after complaint filed |
| Plaintiffs file motion for preliminary injunction with any expert submissions | Three days after complaint filed |
| Defendants file answers to complaint | Four days after complaint filed |
| Parties exchange initial witness lists | Five days after complaint filed (Plaintiffs) Seven days after complaint filed (Defendants) |
| Defendants file opposition to motion for preliminary injunction with any expert submissions | Fourteen days after motion for preliminary injunction filed |

---

[5] Leah Nylen & Josh Sisco, *California eyes Milbank lawyers for Paramount deal challenge*, MSN (Jun. 18, 2026), https://www.msn.com/en-us/money/companies/california-eyes-milbank-lawyers-for-paramount-deal-challenge/ar-AA25Z8sY.



7/3/2026
Page 4

| Event | Date |
|---|---|
| Close of fact discovery (document only)[6] | August 7, 2026 |
| Parties exchange exhibit lists and final witness lists | August 14, 2026 |
| Parties exchange objections to exhibits | August 18, 2026 |
| Any MIL filings | August 18, 2026 |
| Oppositions to any MIL filings | August 21, 2026 |
| Parties submit witness lists, exhibit lists, and exhibits to the Court (if requested) | August 21, 2026 |
| Pre-hearing conference | August 24, 2026 |
| Preliminary injunction hearing (12 hours per side) | August 25–28, 2026 |
| Post-hearing briefing | September 4, 2026 |

Paramount is willing to meet and confer about the specific dates in this schedule, so long as the endpoint facilitates a resolution of a motion for a preliminary injunction sufficiently in advance of September 30 to allow a closing to occur by that date.

If you agree to this schedule (or a mutually agreeable alternative), Paramount would agree not to close the transaction until September 30 or three days after the issuance of the court's preliminary injunction decision, whichever is earlier. However, if you seek a more prolonged preliminary injunction schedule or delay in bringing suit in a way that makes it impossible to resolve a preliminary injunction motion and close the transaction by September 30, Paramount will oppose that schedule and contest a TRO seeking to prevent the transaction closing.

I sincerely hope we can agree on a mutually acceptable way to proceed.

Sincerely

Jeffrey L. Kessler

cc:
    Makan Delrahim
    Marguerite Sullivan
    Kathy O'Neill
    Eric Stock
    Dan Petrocelli
    Derek Ludwin

---

[6] Discovery will be limited to reflect the scope of the preliminary injunction. For example, Rule 26 disclosures, if necessary, will happen after the PI ruling.