UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PAMELA FAUST, et al.,

Plaintiffs,

v.

PARAMOUNT SKYDANCE
CORPORATION, et al.,

Defendants.

Case No.  26-cv-03790-AMO

**ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR SCHEDULING ORDER**

Re: Dkt. No. 36, 78

This is an antitrust case.  Defendants Paramount Skydance Corporation's and Skydance Media, LLC's ("Defendants") motion to dismiss was heard before this Court on July 17, 2026. Having read the papers filed by the parties and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, the Court **GRANTS** Defendants' motion for the following reasons.

## I.    BACKGROUND

For purposes of this Order and in the interest of providing the parties with speedier resolution of the pending motion, the Court largely assumes familiarity with the factual background of the case.  Plaintiffs are consumers who purchase streaming services, cable or live-TV packages, theatrical movie tickets, and related premium video products.  Compl. ¶¶ 24-46. Len Marazzo, Deborah Rubinsohn, and Gary Talewsky are current Paramount+ subscribers who paid increased subscription charges after the January 15, 2026 Paramount+ price increase.  Compl. ¶¶ 28-29.  Pamela Faust and Lisa McCarthy are prospective Paramount+ subscribers deterred by increased costs and reduced consumer-friendly terms.  Compl. ¶¶ 30-31.  Defendant Paramount Skydance Corporation ("Paramount"), the company resulting from the acquisition of Paramount Global by Skydance Media, is a global media and entertainment company operating through

studios, direct-to-consumer, and TV media.  Compl. ¶ 18.  Its portfolio includes Paramount Pictures, Paramount Television, CBS, CBS News, CBS Sports, 60 Minutes, Nickelodeon, MTV, BET, Comedy Central, Showtime, Paramount+, Paramount TV, and Skydance's animation, film, television, interactive/games, and sports divisions.  *Id.*  Paramount also controls a substantial film and television library.  *Id.*  Defendant Warner Bros. Discovery ("Warner Bros.") creates and distributes branded content across television, film, streaming, and gaming.  Compl. ¶ 20.  It owns major entertainment, news, sports, cable, streaming, motion-picture, television-production, animation, and gaming assets, including HBO Max, discovery+, CNN, DC, TNT Sports, HBO, Warner Bros. Motion Picture Group, Warner Bros. Television Group, Warner Bros. Games, New Line Cinema, Cartoon Network, Adult Swim, and related properties.  *Id.*  Warner Bros. also controls a substantial film and television library.  *Id.*

Plaintiffs initiated this lawsuit on April 30, 2026, advancing antitrust claims based on both (1) the completed acquisition of Paramount Global by Skydance Media and (2) the anticipated acquisition of Warner Bros. by the presently-constituted Paramount Skydance.  *See* Dkt. No. 1. The Court denied Plaintiffs' motion for preliminary injunction from the bench during the hearing on July 16, 2026.  Dkt. No. 69.

## II.      DISCUSSION

Defendants move to dismiss under Rule 12(b)(1) for lack of standing and under Rule 12(b)(6) for failure to state a claim.  Dkt. No. 36.  Though Defendants offer strong arguments for dismissal of the antitrust claims for insufficient pleading of relevant markets, the analysis here focuses on standing.

The Court evaluates challenges to Article III standing under Rule 12(b)(1), which governs motions to dismiss for lack of subject matter jurisdiction.  *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  Rule 12(b)(1) motions may be either facial, where the inquiry is confined to the allegations in the complaint, or factual, where the court is permitted to look beyond the complaint to extrinsic evidence.  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  When a defendant challenges jurisdiction "facially," all material allegations in the complaint are assumed

United States District Court
Northern District of California

true, and the court determines whether the factual allegations are sufficient to invoke the court's subject matter jurisdiction. *Id.*

"Article III confines the federal judicial power to the resolution of 'Cases' and 'Controversies.' For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case – in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citation omitted). To have standing, Article III requires that "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 330 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "To establish an injury in fact, a plaintiff must show that [they] suffered 'an invasion of a legally protected interest' that is 'concrete and particularized.' " *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 597 (9th Cir. 2020) (quoting *Spokeo*, 578 U.S. at 339). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561. "At the pleadings stage," this means the Plaintiffs "must clearly . . . allege facts demonstrating each element." *Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523 (9th Cir. 2023). And because "standing is not dispensed in gross, . . . plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). In an antitrust case, that requires demonstrating standing in each alleged market. *See In re Apple iPhone Antitrust Litig.*, No. 11-CV-06714-YGR, 2013 WL 4425720, at *6 (N.D. Cal. Aug. 15, 2013) (purchasing iPhone insufficient to establish standing for claimed overcharges in a separate "aftermarket").

Based on Plaintiffs' need to demonstrate standing in each alleged market, Defendants advance a multi-part attack on Plaintiffs' standing assertions. First, Defendants undercut Plaintiffs' claims of harm arising from the premium video distribution market, including both monetary harm and threats of harm to competition. Second, Defendants aver that Plaintiffs fail to establish antitrust standing as to the remaining two markets, the national TV news market and the theatrical distribution market. The Court takes up the two attacks in turn.

United States District Court
Northern District of California

United States District Court
Northern District of California

### A.      Plaintiffs' Claims of Harm

Plaintiffs allege a handful of purported harms that has and would inure to them based on the two challenged mergers, including an increase in price, Compl. ¶¶ 28-30, and other harms to competition, including "lower quality and variety" and "decreased consumer choice," *id.* ¶¶ 2, 90; *see also id.* ¶¶ 26, 43, 113.  Defendants challenge these purported harms on several bases, emphasizing that "standing is not dispensed in gross" and that Plaintiffs must establish it plaintiff-by-plaintiff, claim-by-claim, and market-by-market.  Dkt. No. 36 at 18 (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021); *In re Apple iPhone Antitrust Litig.*, 2013 WL 4425720, at \*6 (N.D. Cal. Aug. 15, 2013)).  Indeed, Defendants highlight that the various Plaintiffs stand differently as to each of the challenged mergers, the increase in price, and the remaining asserted harms to competition.  *See* Dkt. No. 36 at 19-22.  Plaintiffs counter that they do not assert a "generalized grievance but are purchasers and consumers who personally receive less value when competition is reduced through higher prices, reduced output, narrowed content choice, reduced promotional availability, diminished news quality, and fewer independent sources of premium programming."  Dkt. No. 49 at 12 (citing Compl. ¶ 25).  Plaintiffs rest on these purported harms as sufficiently concrete and particularized to establish standing.  *Id.* (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339-41 (2016)).  Pressing further, Plaintiffs insist that they sufficiently allege monetary injury as to Paramount+ subscribers and "threatened injury as to ongoing and future purchases."  *Id.* (citing Compl. ¶¶ 26-46).  This breakdown provides the most helpful structure for analyzing standing here: (1) monetary harms for Paramount+ subscribers and (2) threats of harm to competition.  The Court considers these two arguments regarding harm in turn.

#### 1.      Monetary Harms

Plaintiffs allege only one concrete and particularized injury – a single, historical price increase on Paramount+.  *See* Compl. ¶¶ 28-31.  But this injury was not suffered in the same way by all five of the Plaintiffs.

First, Plaintiffs' allegations of "direct out-of-pocket harm in the form of" higher subscription charges for Paramount+, do not apply to Plaintiffs Faust and McCarthy because they do not claim to be Paramount+ subscribers and thus do not and cannot claim to have paid any

4

price for Paramount+, let alone an increased price. Compl. ¶¶ 28-30. Faust and McCarthy allege instead that the 2026 price increase has "deterred" them from subscribing to Paramount+. Compl. ¶ 30. Defendants argue that such an allegation fails to sufficiently show injury by analogizing to a Seventh Circuit case in which farmers "refraining from selling soybeans" fell short of establishing standing to assert antitrust claims based on the "depressed price" of soybeans. Dkt. No. 36 (citing *Sanner v. Bd. of Trade of Chi.*, 62 F.3d 918, 923-24 (7th Cir. 1995)). Though *Sanner* is not binding nor squarely applicable, it is nonetheless persuasive, especially as Plaintiffs fail to identify a single case in which a purchaser's "deterrence" from buying a product sufficed to establish injury-in-fact. Because Faust and McCarthy have insufficiently shown injury, they fail to carry their Article III burden to establish standing. *In re Facebook*, 956 F.3d at 597.

Second, the other three Plaintiffs – Marazzo, Rubinsohn, and Talewsky – allege they paid an "increased amount" for Paramount+ beginning on January 15, 2026. Compl. ¶ 28. These Plaintiffs, however, fail to allege any facts to show that this increased price was "fairly traceable to the challenged action of the defendant," i.e., the Skydance-Paramount merger. *See Lujan*, 504 U.S. at 560. Plaintiffs ask the Court to infer causation from a temporal sequence, i.e., that the price increase was caused by the merger because it occurred five months after the merger. *See, e.g.*, Compl. ¶¶ 91, 98. But Plaintiffs fail to cite any authority for the premise that a price increase five months after a merger shows sufficient temporal proximity to merit an inference of causation that would support their standing to bring the antitrust claims at issue. Perhaps more importantly, Plaintiffs' temporal proximity argument is severely undermined by their express allegation that prices for all "leading streaming services . . . have increased materially over time," independent of the merger. Compl. ¶ 98. If prices across the relevant market increased during the relevant period, then Plaintiffs' fail *Lujan's* traceability requirement, and they fail to satisfy an essential element to establish standing.

For both these reasons, the lack of injury based on Faust and McCarthys' "deterrence" harm and the lack of traceability for the price increase incurred by Marazzo, Rubinsohn, and Talewsky, Plaintiffs fail to establish standing based on purported monetary harm. The analysis turns to assess whether Plaintiffs may establish standing based on threats of harm to competition.

### 2. Threats of Harm to Competition

Plaintiffs' other allegations of harm from the mergers are too vague and speculative to establish standing. The Complaint contains a boilerplate assertion of competitive harms, such as "lower quality and variety" and "decreased consumer choice," Compl. ¶¶ 2, 90; *see also id.* ¶¶ 26, 43, 113, but it fails to allege any facts to plausibly show how those claimed harms have materialized or would materialize. Such "naked assertions devoid of further factual enhancement" are insufficient. *Blantz v. Ca. Dept. Corr. & Rehab.*, 727 F.3d 917, 927 (9th Cir. 2013); *see also Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 954-55 (9th Cir. 2011) ("This list of alleged [statutory] violations cannot substitute for the factual allegations required in the complaint to satisfy Article III's requirement of an injury-in-fact."). Plaintiffs have simply asserted no allegations that plausibly show how the merger has caused or would cause injury to any of the Plaintiffs "in a personal and individual way." *Kumar v. Koester*, 131 F.4th 746, 751 (9th Cir. 2025).

In sum, Plaintiffs' standing theory amounts to little more than the assertion that they are consumers who watch television and go to the movies, and therefore a merger between entertainment companies would injure them. Plaintiffs cite to no authority establishing that the generalized asserted competitive harms constitute concrete harms that support standing, instead simply relying on *Spokeo* and arguing that the monetary injury certain of them suffered by increased Paramount+ prices is sufficiently concrete to support standing for each of them and for both challenged mergers. *See* Dkt. No. 49 at 12-13. This is insufficient. Accordingly, Plaintiffs fail to establish standing, and the Court must dismiss on this basis.

### B. Plaintiffs' Antitrust Standing

Defendants assert that Plaintiffs fail to show cognizable economic injuries of the sort the antitrust laws were designed to against in two of their proposed markets: Theatrical Distribution and National TV News. While there is no exact standard by which to measure antitrust standing, the Ninth Circuit requires trial courts to balance the following factors in making the assessment:

> (1) the nature of the plaintiff's alleged injury; that is, whether it was the type the antitrust laws were intended to forestall;
> (2) the directness of the injury;

(3) the speculative measure of the harm;
(4) the risk of duplicative recovery; and
(5) the complexity in apportioning damages.

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1054 (9th Cir. 1999) (citations omitted).  "[N]o single factor is decisive," but courts give "great weight to the nature of the plaintiff's alleged injury."  *Id.* at 1054 (citations omitted).

There are four requirements for showing antitrust injury: "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent."  *City of Oakland v. Oakland Raiders*, 20 F.4th 441, 456 (9th Cir. 2021) (quoting *Am. Ad Mgmt.*, 190 F.3d 1051, 1055 (9th Cir. 1999) (quotations omitted); *see also Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977)).  In particular, antitrust injury "ensures that the harm claimed by the plaintiff corresponds to the rationale for finding a violation of the antitrust laws in the first place."  *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 342 (1990).  To allege antitrust injury, a plaintiff must allege injury to "competition in the market as a whole" – such as marketwide reduction in output or increase in prices – "not merely injury to itself as a competitor."  *Gorlick Distrib. Ctrs., LLC v. Car Sound Exhaust Sys., Inc.*, 723 F.3d 1019, 1024-25 (9th Cir. 2013).  "Thus, a plaintiff may not merely allege that the defendant is engaged in some anticompetitive conduct and that 'some injury is occurring.' "  *Reilly v. Apple Inc.*, 578 F. Supp. 3d 1098, 1110 (N.D. Cal. 2022) (quoting *Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*, 959 F.2d 468, 486-87 (3d Cir. 1992)).  Demonstration of antitrust injury requires a plaintiff to "link the two showings with a theory of causation that is both plausible and cognizable by the antitrust laws."  *Id.*  The alleged harm also must be " 'attributable to an anticompetitive aspect of the practice under scrutiny' " – "harm that could have occurred under the normal circumstances of free competition" does not suffice.  *In re NFL's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1150 (9th Cir. 2019) (quoting *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990)).

### 1.    National TV News market

In the alleged National TV News market, Plaintiffs fail to show that alleged losses of "editorial independence" or "viewpoint diversity" are cognizable antitrust injuries.  Dkt. No. 36 at

7

23-24.  Plaintiffs also cite no support for their assertion that "editorial independence" or "viewpoint diversity" are cognizable economic harms protected by antitrust laws, rather than social or political harms.  Dkt. No. 49 at 15.  Though Plaintiffs discuss the Newspaper Preservation Act to show a legal importance to the protection of editorial independence or viewpoint diversity, such discussion brings into relief the lack of cognizable injury under the antitrust laws, in addition to highlighting that Plaintiffs did not allege a Newspaper Protection Act cause of action.  *See* Dkt. No. 49 at 14-15.  And although Plaintiffs contend their claim in the alleged National TV News market concerns "quality, variety, and innovation," they cite no authority showing that such concerns give rise to antitrust injury.  Plaintiffs fail to allege antitrust standing related to the National TV News market.

### 2. Theatrical Distribution market

With respect to the alleged Theatrical Distribution market, Plaintiffs allege that they routinely attend theatrical motion pictures, intend to continue doing so, and will face fewer independent theatrical-distribution decision-makers, fewer competing release slates, reduced genre and budget variety, and fewer meaningful theatrical choices if Paramount acquires Warner Bros.  Compl. ¶¶ 41-42.  But Plaintiffs fail to respond to the requirement that they must participate and suffer injury "in the market where competition is being restrained" to have antitrust standing.  *Hogan v. Amazon.com, Inc.*, 2025 WL 869202, at *1 (9th Cir. Mar. 20, 2025); *see* Dkt. No. 36 at 24-25.  Instead, Plaintiffs admit they are not participants in the alleged "Theatrical Distribution Market," foreclosing them from claiming antitrust injury there.  *See* Dkt. No. 49 at 15-16; *see also Am. Ad Mgmt.*, 190 F.3d at 1057 ("Parties whose injuries . . . are experienced in another market do not suffer antitrust injury.").  Further, Plaintiffs confirm that they participate in a market "downstream" from the purported Theatrical Distribution market they allege would be restrained by the merger.  Dkt. No. 49 at 15.  Their claim that they have antitrust standing when they allege an injury at a different "level" of the supply chain than the one "at which competition is restrained," is wrong as a matter of law.  *See Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019, 1027-28 (N.D. Cal. 2015) (dismissing complaint where plaintiffs alleged injury was not in "the market in which the alleged anticompetitive conduct occurred").  Plaintiffs thus fail to allege antitrust

United States District Court
Northern District of California

8

standing for the Theatrical Distribution market and the Complaint must face dismissal on this basis as well.

### C.    Leave to Amend

"Generally, Rule 15 advises the court that leave shall be freely given when justice so requires.  This policy is to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotations and citations omitted).  Courts may deny leave to amend "only if there is strong evidence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc." *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (modification in original).

At this stage, the Court cannot determine as a matter of law that amendment would prove futile.  Plaintiffs may still be able to proffer factual allegations that support standing to prosecute these antitrust claims.  In light of this potential, as well as the extreme liberality with which the Court must apply Rule 15, the Court will grant Plaintiffs leave to file an amended complaint.

### III.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss the Complaint.  Plaintiffs may file any amended complaint by no later than August 26, 2026.  No parties or claims may be added without leave of Court or stipulation of Defendants.

Discovery in this matter shall remain closed, at least until Plaintiffs can establish standing to proceed with their claims.  Accordingly, the Court **DENIES** Plaintiffs' motion to set a case management conference and for entry of a Rule 16 scheduling order, Dkt. No. 78.

**IT IS SO ORDERED.**

Dated: August 5, 2026

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

United States District Court
Northern District of California

9