Joseph M. Alioto, Esq. (SBN 42680)
Tatiana V. Wallace, Esq. (SBN 233939)
**ALIOTO LAW FIRM**
One Sansome Street, 14th Floor
San Francisco, CA 94104
Tel:  (415) 434-8900
Fax:  (415) 434-9200
Email:  jmalioto@aliotolaw.com


Ronald D. Foreman, Esq. (SBN 61148)
Ian A. Hansen, Esq. (SBN 255449)
**FOREMAN & BRASSO**
850 Montgomery Street, Suite 300
San Francisco, CA 94133
Telephone:  (415) 433-3475
Facsimile:  (415) 781-8030
Email:  foremanandbrasso@foremanandbrasso.com

Attorneys for Plaintiffs Pamela Faust, Len Marazzo, Lisa McCarthy, Deborah Rubinsohn, and Gary Talewsky

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA FAUST, LEN MARAZZO, LISA McCARTHY, DEBORAH RUBINSOHN, and GARY TALEWSKY,<br><br>     Plaintiffs,<br><br>vs.<br><br>PARAMOUNT SKYDANCE CORPORATION (formerly Paramount Global), and SKYDANCE MEDIA, LLC,<br><br>     Defendants. | Case No. 4:26-cv-03790-AMO<br><br>**PLAINTIFFS' MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION** |

INTRODUCTION

Plaintiffs respectfully request leave under Civil Local Rules 7-9(b)(1) and 7-9(b)(3) to move for reconsideration of the Court's August 5, 2026 Order. Dkt. No. 79. First, the Order effectively required proximate causation for Article III standing, rather than the less demanding requirement that Plaintiffs' injuries be fairly traceable to the challenged acquisitions. Second, the Order appears to have required Plaintiffs to prove actual harm to competition, although Section 7 asks whether "the effect of such acquisition may be substantially to lessen competition." 15 U.S.C. § 18. Third, a newly available public statement from Paramount Chief Executive Officer David Ellison confirms that Plaintiffs' alleged causal connection between the acquisitions, resulting integration and synergies, and threatened consumer injuries is a plausible and reasonable economic inference rather than speculation. Plaintiffs therefore seek reconsideration of the Article III traceability and Section 7 standards presented in their opposition and applied in the Order. Dkt. No. 49 at 3, 7, 9-10.

LEGAL ANALYSIS

I.    THE ORDER REQUIRED A CAUSAL SHOWING GREATER THAN ARTICLE III TRACEABILITY REQUIRES

The Order recognized that Article III requires Plaintiffs' injuries to be "fairly traceable" to the challenged conduct. Dkt. No. 79 at 3. In applying that standard, however, the Court appears to have required a more direct showing of causation than Article III demands at the pleading stage. As to Marazzo, Rubinsohn, and Talewsky, the Court rejected the alleged connection between the merger and the Paramount+ price increase because Plaintiffs had not shown a sufficient "inference of causation," and later concluded that Plaintiffs failed to allege how the merger "has caused or would cause injury" to them personally. *Id.* at 5-6. The issue on reconsideration is whether that analysis required Plaintiffs to plead proximate causation, rather than the plausible, nonattenuated causal connection sufficient for Article III traceability.

Article III requires fair traceability, not proximate causation. *Maya v. Centex Corp.*, 846 F.3d 313, 324 (9th Cir. 2011). In *Maya v. Centex Corp.*, the Ninth Circuit expressly rejected the contention that plaintiffs must demonstrate that the challenged conduct was the "proximate

cause" of their injuries, explaining that "[p]laintiffs do not bear so heavy a burden." *Id.* A causal chain may contain multiple links so long as those links are plausible rather than hypothetical or tenuous. *Id.* The Supreme Court has likewise recognized that Article III causation and redressability may be assessed through ordinary economic inference. In *Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100, 116-17 (2025), the Court explained that the causation and redressability analysis takes account of "commonsense economic realities" and permits "commonsense inferences" where third-party economic behavior is predictable. It is a commonsense economic inference that eliminating an independent competitor may reduce competitive constraints and thereby increase the combined firm's ability and incentive to raise prices and reduce consumer choice.

*Freeland v. Nippon Steel Corp.*, 827 F. Supp. 3d 1241 (N.D. Cal. 2026) applied those principles in a merger challenge. There, consumers alleged that increased steel concentration would raise steel prices and ultimately increase prices for downstream consumer products. The court held that the theory plausibly satisfied Article III traceability at the pleading stage. *Id.* at 8 ("It is not implausible to infer that a price increase in the primary market for steel may 'cause downstream . . . economic injuries to others in the chain.'")

Plaintiffs do not cite these authorities to present a new standing theory on reconsideration. Plaintiffs argued before entry of the Order that their injuries were fairly traceable to the transactions and that reasonable inferences from the pleaded facts were required at the pleading stage. Dkt. No. 49 at 7, 9-10. These authorities identify the legal standard governing that argument.

The distinction affects the Premium Video Distribution claims in particular. The Order separately addressed Defendants' antitrust-standing challenge only as to the National TV News and Theatrical Distribution markets.[1] Dkt. No. 79 at 6-8. It did not determine that Plaintiffs

---

[1] To the extent the Court relied on the 2013 interlocutory Apple iPhone order, *In re Apple iPhone Antitrust Litigation*, No. 11-cv-06714-YGR, 2013 WL 4425720, at *6 (N.D. Cal. Aug. 15, 2013), the Ninth Circuit subsequently reversed the final dismissal in that litigation, *Pepper v. Apple, Inc.*, 846 F.3d 313, 324 (9th Cir. 2017), and the Supreme Court affirmed, holding that the consumers could sue, *Apple Inc. v. Pepper*, 587 U.S. 273, 278,

**PLAINTIFFS' MOTION FOR LEAVE TO FILE MOTION          CASE NO. 4:26-cv-03790-AMO**
**FOR RECONSIDERATION**

lacked antitrust standing in Premium Video Distribution. The Article III ruling nevertheless disposed of that market as well. If the Court applied a more demanding causation standard than Article III requires, then reconsideration of that ruling could therefore restore claims in a market the Court did not otherwise find deficient on antitrust-standing grounds.

II.    THE ORDER'S "HARM TO COMPETITION" FORMULATION DOES NOT STATE THE SECTION 7 STANDARD

The Order analyzed Plaintiffs' remaining Article III allegations under the heading "Threats of Harm to Competition." Dkt. No. 79 at 6. It rejected the asserted injuries because Plaintiffs had not alleged facts showing how those claimed "harms have materialized or would materialize." *Id.*

Section 7 does not require proof that an acquisition has caused "harm to competition." It prohibits an acquisition where "the effect of such acquisition may be substantially to lessen competition." 15 U.S.C. § 18. The distinction between "harm to competition" and a possible "lessening of competition" is deliberate because Section 7 requires only a reasonable probability of diminished competition, not proof that competitive harm has or will occur. Section 7 addresses "probabilities, not certainties" and reaches anticompetitive tendencies "in their incipiency." *Brown Shoe Co. v. United States*, 370 U.S. 294, 323, 346 (1962). The Ninth Circuit accordingly recognizes the analysis requires not merely an appraisal of the immediate impact of the merger upon competition, but a prediction of its impact upon competitive conditions in the future. *St. Alphonsus Medical Center-Nampa Inc. v. St. Luke's Health System, Ltd.*, 778 F.3d 775, 783 (9th Cir. 2015).

Requiring Plaintiffs to establish actual harm to competition applies the wrong legal standard. That requirement belongs to Sherman Act rule-of-reason analysis, which examines whether an existing restraint has produced anticompetitive effects in the relevant market. *See*, *e.g.*, *O'Bannon v. National Collegiate Athletic Ass'n*, 802 F.3d 1049, 1070-71 (9th Cir. 2015);

285–86 (2019).

**PLAINTIFFS' MOTION FOR LEAVE TO FILE MOTION       CASE NO. 4:26-cv-03790-AMO**
**FOR RECONSIDERATION**

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1180 n.2 (9th Cir. 2016). Section 7 instead asks the forward-looking question whether "the effect of such acquisition may be substantially to lessen competition." 15 U.S.C. § 18. It permits intervention before the threatened consequences become established facts.

That distinction is particularly pronounced with respect to an unconsummated acquisition. Requiring a plaintiff to demonstrate that competitive harm has materialized before challenging the transaction would require proof of the very post-acquisition effects that Section 7 permits a court to prevent.

Plaintiffs presented Section 7's predictive standard before entry of the Order. See Dkt. No. 49 at 3. The Complaint also expressly alleged identifiable consumer injuries, including higher prices, reduced output and variety, diminished quality, reduced promotional availability, and fewer independent alternatives, and tied those injuries to the challenged transactions. The issue on reconsideration is therefore not whether Plaintiffs alleged consumer injury, or whether they should be permitted to reargue the sufficiency of their competitive-effects allegations. It is whether the Court's requirement that Plaintiffs show how the asserted "harms have materialized or would materialize" imposed a degree of factual demonstration of future competitive effects and their causal mechanism that is inconsistent with Section 7's predictive standard and Article III's separate traceability inquiry.

III.    ELLISON'S POST-BRIEFING STATEMENTS CONSTITUTE A MATERIAL DIFFERENCE IN FACT UNDER CIVIL LOCAL RULE 7-9(b)(1).

On August 4, 2026, after the motion to dismiss had been fully briefed and submitted and only one day before the Court entered its Order, Paramount Chairman and Chief Executive Officer David Ellison published an opinion piece in the New York Times concerning the proposed Paramount-Warner transaction. A true and correct copy of that opinion piece is submitted with this application and attached as Exhibit A to the Declaration of Joseph M. Alioto. Ellison's statements address the same competitive relationships, market conditions, and threatened effects placed at issue by Defendants' motion. Plaintiffs did not know of the article at

**PLAINTIFFS' MOTION FOR LEAVE TO FILE MOTION**          **CASE NO. 4:26-cv-03790-AMO**
**FOR RECONSIDERATION**

the time of the July 16, 2026, hearing and had no reasonable opportunity to discover, evaluate, and submit it before the Court entered its Order. Ellison's statements supply, from Paramount's own chief executive, the factual connection between the challenged acquisition and the consumer injuries alleged by Plaintiffs. Plaintiffs allege that they purchase Paramount+ and Max, that the services compete for their subscription payments and viewing time, and that common ownership threatens them with higher prices, reduced output, diminished programming variety, and fewer independently controlled alternatives. The Order found the alleged connection between the transaction and those injuries insufficient. Ellison has now publicly confirmed the central links in that causal chain.

First, Ellison confirms that the transaction is intended to change competition for consumer viewing. He states that a combined Paramount-Warner will compete "every day" against Netflix, Amazon, and Apple. That statement identifies the competitive arena in which Paramount understands the combined company will operate. Plaintiffs participate in that same arena as paying subscribers to Paramount+, Max, Netflix, and other subscription-streaming services.

Second, Ellison confirms that the transaction will aggregate a substantial portion of consumer viewing under common control. He states that the combined company will account for nearly 20 percent of all American television watch time. He reaches the lower figure of approximately 13 percent only by adding YouTube's user-generated content to the denominator. Even under Paramount's broader measure, Ellison acknowledges that the transaction will transfer nearly one-fifth of American television viewing to a single decisionmaker.[2]

---

[2] Ellison's reliance on market share and the greater size of technology firms does not defeat Plaintiffs' claims. Section 7 has prohibited mergers involving shares of 4.49%, 7.5%, and an incremental 1.3% where the transaction eliminated an independent competitor in a concentrating market. *United States v. Pabst Brewing Co.*, 384 U.S. 546, 550-53 (1966); *United States v. Von's Grocery Co.*, 384 U.S. 270, 272-78 (1966); *United States v. Aluminum Co. of America*, 377 U.S. 271, 278-81 (1964). Nor is a merger justified because greater scale may help the combined firm compete with larger companies. *United States v. Philadelphia National Bank*, 374 U.S. 321, 370-71 (1963). These principles support the Complaint's allegations that acquisition-driven consolidation eliminates independent choices and threatens Plaintiffs, as purchasers of the affected streaming, news, and theatrical products, with higher prices, reduced output, and diminished quality. Compl. ¶¶ 24-46, 83-118.

**PLAINTIFFS' MOTION FOR LEAVE TO FILE MOTION**    **CASE NO. 4:26-cv-03790-AMO**
**FOR RECONSIDERATION**

Third, Ellison confirms that obtaining greater scale is a purpose of the acquisition. He argues that Paramount and Warner must combine because Netflix, Amazon, and Apple possess resources that "dwarf ours," and he states that the transaction will create a company with sufficient "strength and resources" to compete against those firms. The transaction is therefore intended to alter the competitive structure governing subscriptions, viewing, programming investment, and content distribution. It is not, as Defendants' dismissal argument suggested, a transaction lacking a plausible relationship to the consumer market in which Plaintiffs participate.

Fourth, Ellison connects the transaction directly to output and programming. He promises that the combined company will produce 30 theatrical films and 170 television series annually and invest more than $30 billion each year in content. Those statements confirm that the acquisition will place decisions concerning streaming scale, content investment, programming output, and consumer viewing under unified corporate control. Plaintiffs' threatened injuries from reduced independent choice, coordinated pricing and terms, diminished programming competition, and common control over Paramount+ and Max flow directly from that change.

Finally, Ellison's repeated assertion that "the audience" and "the American people" have the "final say" confirms that consumers are participants in the affected markets whose purchasing, subscription, viewing, and trust decisions determine competitive outcomes. Ellison expressly states that audiences determine "whether a movie succeeds or fails, whether a news organization thrives or withers and therefore whether our industry succeeds or fails." His statements contradict the contention that Plaintiffs are mere observers of the transaction or that their threatened injuries are too attenuated to support Article III traceability and antitrust standing. Plaintiffs purchase Paramount+ and Max, allocate limited subscription budgets among competing streaming services, purchase tickets to motion pictures distributed by competing studios, and pay for video packages containing competing national news services, including CBS News and CNN. Their subscription, cancellation, ticket-purchasing, viewing, and service-selection decisions directly affect whether the competing services, studios, films, and news

organizations succeed.

Ellison similarly acknowledges that consumer trust is a competitive attribute of national news programming. He cites Gallup's finding that only 28 percent of Americans trust the news, states that trust must be earned "story by story, day by day," and recognizes that credible journalism requires factual reporting, newsroom independence, and work performed by "real reporters." Those statements confirm that credibility, independence, investigative quality, and consumer trust are attributes on which CNN, CBS News, and other national news services compete for audiences. Ellison's own description therefore supports Plaintiffs' allegation that the elimination of independent competition between Paramount+ and Max, between Paramount and Warner's film studios, and between CBS News and CNN threatens injury directly to consumers who purchase and use the affected products..

The causal chain is therefore neither hypothetical nor dependent on speculation about unrelated third parties. Paramount and Warner propose to combine; the transaction will place Paramount+ and Max under one owner; the combined company will control pricing, programming, output, platform integration, and content investment; Paramount seeks that control specifically to obtain greater scale in competition for consumer viewing; and Plaintiffs purchase the services and programming subject to that control. Ellison's statements confirm each transaction-level link in that chain from the mouth of Paramount's own chief executive.

Ellison's statements do not replace Plaintiffs' allegations of personal injury. The Complaint supplies those allegations by identifying Plaintiffs' paid subscriptions, prior Paramount+ price increases, intended continued purchases, and threatened loss of price, quality, output, and choice competition. The newly available statements instead confirm the portion of standing disputed by Defendants and questioned by the Order: whether the proposed acquisition is plausibly connected to those consumer-facing injuries.

Article III traceability does not require Plaintiffs to prove that the transaction is the sole or proximate cause of their threatened injuries. It requires a plausible and nonattenuated connection between the challenged conduct and the injury. *Maya v. Centex Corp.*, 658 F.3d at

1070. Ellison's own description of the transaction confirms that connection. The chief executive seeking the acquisition admits that its purpose is to combine the firms' resources, increase their competitive scale, control a substantial share of consumer viewing, and operate the combined content and distribution business as a stronger competitor. Those admissions materially support Plaintiffs' standing and contradict the conclusion that the alleged consumer injuries rest only on generalized concerns about entertainment-industry consolidation.

IV.    CIVIL LOCAL RULE 7-9(b)(3) IS SATISFIED

Civil Local Rule 7-9(b)(1) permits reconsideration where, at the time leave is sought, "a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order" and the moving party, through reasonable diligence, did not know of that fact when the order was entered. That requirement is satisfied here. Ellison published his article after briefing concluded and only one day before the Court entered its Order. Plaintiffs did not know of the publication and had no reasonable opportunity to discover, analyze, and present it before the Court ruled. Plaintiffs sought leave promptly after learning of the article.

The difference is material because Ellison's statements concern the precise matters on which Defendants sought and obtained dismissal: the competitive relationship among streaming services, the proposed transaction's scale, the purpose of combining Paramount and Warner, and the connection between consolidation, streaming performance, content output, and consumer viewing. Paramount's own chief executive now describes the acquisition as a means of obtaining greater scale to compete with identified streaming and technology platforms and acknowledges that the combined firm would control nearly 20 percent of all American television watch time under Paramount's own broad measure.

Civil Local Rule 7-9(b)(3) independently permits reconsideration based on "[a] manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." Plaintiffs presented Article III traceability and the requirement that reasonable inferences be drawn from the pleaded facts. Dkt.

**PLAINTIFFS' MOTION FOR LEAVE TO FILE MOTION          CASE NO. 4:26-cv-03790-AMO**
**FOR RECONSIDERATION**

No. 49 at 7, 9-10. Plaintiffs also presented Section 7's predictive and incipiency-based standard. *Id.* at 3. Plaintiffs do not merely repeat those arguments. They seek leave to address whether the Order required proximate causation rather than fair traceability and whether its requirement that Plaintiffs show how competitive harms "have materialized or would materialize" imposed a burden inconsistent with Section 7's forward-looking standard.

The newly available statements and the legal standards reinforce one another. Ellison's admissions demonstrate that the competitive relationship, market scope, scale, and likely consequences of the transaction present factual disputes. Article III requires a plausible, nonattenuated causal connection, not proof of proximate causation. Section 7 requires a reasonable probability that competition may be substantially lessened, not proof of "harm to competition." Reconsideration is therefore warranted under both Civil Local Rule 7-9(b)(1) and Civil Local Rule 7-9(b)(3).

CONCLUSION

Plaintiffs respectfully request leave under Civil Local Rules 7-9(b)(1) and 7-9(b)(3) to seek reconsideration of the Court's Article III standing determination in light of newly available, material admissions by Paramount's Chief Executive Officer and the Court's manifest failure to consider the governing traceability standard.

DATED: August 11, 2026                    ALIOTO LAW FIRM


                                          __/s/ Joseph M. Alioto_____
                                          Joseph M. Alioto, Esq.
                                          Tatiana V. Wallace, Esq.
                                          Attorneys for Plaintiffs



                                          FOREMAN & BRASSO


                                          __/s/ Ronald D. Foreman_____
                                          Ronald D. Foreman, Esq.
                                          Ian A. Hansen, Esq.
                                          Attorneys for Plaintiffs


**PLAINTIFFS' MOTION FOR LEAVE TO FILE MOTION          CASE NO. 4:26-cv-03790-AMO**
**FOR RECONSIDERATION**