Joseph M. Alioto, Esq. (SBN 42680)
Tatiana V. Wallace, Esq. (SBN 233939)
**ALIOTO LAW FIRM**
One Sansome Street, 14th Floor
San Francisco, CA 94104
Tel: (415) 434-8900
Fax: (415) 434-9200
Email: jmalioto@aliotolaw.com

Ronald D. Foreman, Esq. (SBN 61148)
Ian A. Hansen, Esq. (SBN 255449)
**FOREMAN & BRASSO**
850 Montgomery Street, Suite 300
San Francisco, CA 94133
Telephone: (415) 433-3475
Facsimile: (415) 781-8030
Email: foremanandbrasso@foremanandbrasso.com

Attorneys for Plaintiffs Pamela Faust, Len Marazzo, Lisa McCarthy, Deborah Rubinsohn, and Gary Talewsky

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PAMELA FAUST, LEN MARAZZO, LISA McCARTHY, DEBORAH RUBINSOHN, and GARY TALEWSKY,<br><br>Plaintiffs,<br>vs.<br><br>PARAMOUNT SKYDANCE CORPORATION (formerly Paramount Global), and SKYDANCE MEDIA, LLC,<br><br>Defendants. | Case No. 4:26-cv-03790-AMO<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br>Judge: Hon. Araceli Martinez-Olguin |

**Defendants' opposition is without merit.** Their own CEO identifies the consumers whose standing they deny and the rivalry this acquisition will extinguish. David Ellison says the combined company cannot dictate "what audiences watch," promises more work because "nobody can dictate what audiences will love," says Hollywood succeeds only when "we connect with our audience," and concludes: "It's the audience—the American people—that has the final say" whether movies and news organizations succeed or fail. Alioto Decl. Ex. 2 at 1–2 (Dkt. 80-2). The evidence shows Paramount's own materials use "DTC" as shorthand for "direct-to-consumer." *See* Goldberg Decl., Ex. 2 (Dkt. 34-2) at 9 (describing a "premier direct-to-consumer platform" and, in the same transaction materials, the combination of Paramount+, HBO Max, and Pluto as "a highly competitive DTC business"); Goldberg Decl., Ex. 3 (Dkt. 34-3) at 10 (Ellison explaining that combining the services would produce "a little over 200 million direct-to-consumer subscribers"); Goldberg Decl., Ex. 4 [Dkt. 34-4] at 5–6 (identifying "Direct-to-Consumer" as a Paramount business segment and reporting "DTC revenue" and "DTC revenue and profit"). <u>Plaintiffs are those consumers</u>. The Court should preserve the status quo now and set a prompt hearing.

Standing is concrete. Plaintiffs are consumers and direct purchasers in the affected markets, and their sworn declarations verify their respective subscriptions, streaming use, moviegoing, purchasing habits, and threatened injury. Dkts. 44–48. Under Section 16, consumers need only show a significant threat of injury from an impending violation; they need not wait for the merger to close or prove that the threatened harm is certain. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130 (1969); *California v. American Stores Co.*, 495 U.S. 271, 284, 296 (1990); *DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 762–64 (9th Cir. 2018). The threat here is direct: the merger will eliminate independent competition between Paramount+ and HBO Max and expose Plaintiffs to the threat of higher prices, reduced output and choice, and diminished quality. Defendants' reliance on the earlier *DeMartini* ruling also **omits the subsequent order finding consumer standing** and permitting the Section 7 theory to proceed. *DeMartini v. Microsoft Corp.*, No. 22-cv-08991-JSC, Dkt. 228 at 2–5, 8–9 (N.D. Cal. June 27,

2023).

Binding Supreme Court precedent states that Section 7's purpose is to arrest concentration in its incipiency for the benefit of the consumer. *Brown Shoe Co. v. United States*, 370 U.S. 294, 317–18, 322–23 (1962). No "elaborate proof" is required. *United States v. Philadelphia National Bank*, 374 U.S. 321, 362–64 (1963). Judge Posner distilled the still-binding Supreme Court cases: "The elimination of a significant rival was thought by itself to infringe" Section 7, and "[n]one of these decisions has been overruled." *Hospital Corp. of America v. FTC*, 807 F.2d 1381, 1386–87 (7th Cir. 1986).

That rule controls. Paramount+ and HBO Max are significant independent rivals. Defendants admit they will combine the services on one technology stack and prune content after closing. Goldberg Decl., Ex. 1 at 3, 5, 8–9 (Dkt. 34-1); *id.*, Ex. 3 at 10, 15 (Dkt. 34-3); Brandon-Gordon Decl. ¶¶ 8, 12, 17 (Dkt. 35). Ellison identifies Netflix, Amazon, and Apple as the combined firm's competitors. Alioto Decl., Ex. 2 at 1 (Dkt. 80-2). These admissions alone identify the competitive arena, the consumers, and the elimination of a significant independent rival.[1]

The charts filed with the amended complaint make the scale unmistakable. First, $10.3 billion in WBD domestic streaming revenue plus $7.6 billion for Paramount becomes $17.9 billion, third among the services shown. FAC ¶ 138.

---

[1] Paramount's judicially noticeable SEC statements remove any market-definition doubt. Paramount distinguished premium subscription streaming from YouTube, TikTok, Instagram, and Facebook because those platforms do not substitute for professional programming on Netflix or HBO Max. Paramount Skydance Corp., Ex. (a)(5)(Y) to Schedule TO (Jan. 7, 2026). Those statements are party admissions. Fed. R. Evid. 801(d)(2).




Second, HBO Max's 128 million subscriptions plus Paramount+'s 79.1 million becomes approximately 207.1 million, moving the two services from fifth and sixth to second, behind only Netflix, subject to subscriber overlap. FAC ¶ 141. Third, Paramount's 10.2% studio share plus WBD's 13.4% becomes **23.6%**, the largest share among named services; the top-four share becomes 76.3%. FAC ¶ 184.




WBD's 13.4-point increment alone dwarfs the 1.3% increment condemned in *United States v. Aluminum Co. of America*, 377 U.S. 271, 277–81 (1964), the 4.49% combined national share in *United States v. Pabst Brewing Co.*, 384 U.S. 546, 550–52 (1966), and the 7.5% combined local share in *United States v. Von's Grocery Co.*, 384 U.S. 270, 272–78 (1966). The industry compilations cited in the complaint are the kind of commercial publications covered by Rule 803(17), and the Court may consider them at the TRO stage. Fed. R. Evid. 803(17); *see also Flynt Distributing Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial).

This Court has already applied the law to this same $110 billion transaction. *State of California v. Paramount Skydance Corp.*, No. 4:26-cv-07116-AMO, Dkt. 141 at 2, 5–7 (N.D.

Cal. July 20, 2026) ("States TRO Order"). It found "compelling evidence," held that the combined share alone supported the presumption of illegality, and found a strong showing of substantially lessened competition. *Id.* at 5–6. After considering the competing Lee and Murphy expert evidence, the Court held Defendants at most created factual disputes and serious merits questions. *Id.* at 6–7; Lee Decl. ¶¶ 83–89 & figs. 10–12 (States Dkt. 29).

The threatened injury is not speculative. Paramount has already demonstrated both the ability and willingness to raise DTC prices, and Marazzo and Rubinsohn have already paid those higher prices. FAC ¶¶ 64–65, 201–04. The threatened injury from further consolidation follows from a basic economic inference: reducing the number of independent competitors reduces competitive constraints and increases the risk of higher prices. The proposed merger would eliminate HBO Max as an independent DTC competitor while leaving the combined company with approximately $79 billion in net debt, aggressive deleveraging targets, and a stated dependence on increased DTC revenue and profitability. Fewer competitors, greater pricing power, and extraordinary debt pressure create the significant threat Section 16 addresses.

Closing will end independent ownership and permit integration and content pruning. Money damages cannot recreate lost rivalry. This Court already held that the transaction's lessened competition is irreparable, unwinding would be difficult or impossible, and the public interest outweighs Defendants' economic harm. States TRO Order at 7–8. Plaintiffs seek only a short standstill. Rule 65(c) is discretionary, and this Court waived security for the same transaction. States TRO Order at 9.

## CONCLUSION

The Court should immediately restrain Defendants from consummating or integrating the transaction, preserve the status quo pending determination of Plaintiffs' motions, and set a prompt hearing.

DATED: September 23, 2026

ALIOTO LAW FIRM

/s/ Joseph M. Alioto
Joseph M. Alioto, Esq.
Tatiana V. Wallace, Esq.
Attorneys for Plaintiffs

FOREMAN & BRASSO

/s/ Ronald D. Foreman
Ronald D. Foreman, Esq.
Ian A. Hansen, Esq.
Attorneys for Plaintiffs