Joseph M. Alioto, Esq. (SBN 42680)
Tatiana V. Wallace, Esq. (SBN 233939)
**ALIOTO LAW FIRM**
One Sansome Street, 14th Floor
San Francisco, CA 94104
Tel: (415) 434-8900
Fax: (415) 434-9200
Email: jmalioto@aliotolaw.com

Ronald D. Foreman, Esq. (SBN 61148)
Ian A. Hansen, Esq. (SBN 255449)
**FOREMAN & BRASSO**
850 Montgomery Street, Suite 300
San Francisco, CA 94133
Telephone: (415) 433-3475
Facsimile: (415) 781-8030
Email: foremanandbrasso@foremanandbrasso.com

Attorneys for Plaintiffs Pamela Faust, Len Marazzo, Lisa McCarthy, Deborah Rubinsohn, and Gary Talewsky

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

PAMELA FAUST, LEN MARAZZO, LISA McCARTHY, DEBORAH RUBINSOHN, and GARY TALEWSKY,

Plaintiffs,

vs.

PARAMOUNT SKYDANCE CORPORATION (formerly Paramount Global), and SKYDANCE MEDIA, LLC,

Defendants.

Case No. 4:26-cv-03790-AMO

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION REQUIRING SEPARATE OPERATION AND PRESERVATION OF ACQUIRED ASSETS; MEMORANDUM OF POINTS AND AUTHORITIES**

Hearing Date: December 3, 2026
Time: 2:00 p.m.
Judge: Hon. Araceli Martínez-Olguín
Courtroom: 5

# TABLE OF CONTENTS


NOTICE OF MOTION AND MOTION .......... 4

STATEMENT OF ISSUES PRESENTED .......... 4

I. INTRODUCTION .......... 5

II. FACTUAL BACKGROUND .......... 6

III. LEGAL ARGUMENT .......... 7

A. American Stores expressly permits post-closing separation to preserve divestiture. .......... 7

B. Defendants' announced integration threatens the viability of a meaningful remedy. .......... 8

C. The evidence supports a likelihood of success on the Section 7 claims. .......... 10

D. Plaintiffs face concrete, personal injury from elimination of competing services. .......... 11

E. Equity favors preservation; pre-closing ticking fees no longer apply. .......... 14

F. The requested injunction is specific, limited, and administrable. .......... 15

IV. CONCLUSION .......... 16

## TABLE OF AUTHORITIES

CASES

*Boardman v. Pacific Seafood Group,*
822 F.3d 1011 (9th Cir. 2016) .......... 13, 14
*Brown Shoe Co. v. United States,*
370 U.S. 294 (1962) .......... 10
*California v. American Stores Co.,*
495 U.S. 271 (1990) .......... 5, 7, 8, 12, 16
*PLS.com, LLC v. National Association of Realtors,*
32 F.4th 824 (9th Cir. 2022) .......... 12
*Reiter v. Sonotone Corp.,*
442 U.S. 330 (1979) .......... 12
*St. Alphonsus Medical Center-Nampa Inc. v. St. Luke's Health System, Ltd.,*
778 F.3d 775 (9th Cir. 2015) .......... 10
*United States v. Philadelphia National Bank,*
374 U.S. 321 (1963) .......... 10
*Winter v. Natural Resources Defense Council, Inc.,*
555 U.S. 7 (2008) .......... 14
*Zenith Radio Corp. v. Hazeltine Research, Inc.,*
395 U.S. 100 (1969) .......... 8, 12

STATUTES AND RULES

15 U.S.C. § 18 (Clayton Act § 7) .......... 10
15 U.S.C. § 26 (Clayton Act § 16) .......... 4, 7, 12
Fed. R. Civ. P. 65 .......... 4, 15
Fed. R. Evid. 801(d)(2) .......... 11

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on Thursday, December 3, 2026, at 2:00 p.m., or as soon thereafter as the matter may be heard, before the Honorable Araceli Martínez-Olguín, in Courtroom 5 of the United States District Court for the Northern District of California, 1301 Clay Street, Oakland, California, Plaintiffs Pamela Faust, Len Marazzo, Lisa McCarthy, Deborah Rubinsohn, and Gary Talewsky will move for a preliminary injunction under Section 16 of the Clayton Act, 15 U.S.C. § 26, and Federal Rule of Civil Procedure 65.

Plaintiffs request an order requiring Defendants Paramount Skydance Corporation and Skydance Media, LLC to hold and operate separately, pending final adjudication or further order, the acquired Warner Bros. Discovery businesses and assets necessary to preserve viable independent HBO Max and Paramount+ services, together with identifiable associated film and national-news operations, so the Court may order effective divestiture if Plaintiffs prevail. Plaintiffs seek preservation of separate operations and relief against irreversible integration, not rescission of the completed closing.

This motion rests on this Notice and Memorandum, the Declaration of Joseph M. Alioto and accompanying exhibits, Plaintiffs' proposed order, the operative First Amended Complaint, the Court's orders, and any evidence or argument the Court properly considers. Plaintiffs request that the Court establish security under Rule 65(c) in an amount supported by evidence of the incremental cost, if any, of compliance.

**STATEMENT OF ISSUES PRESENTED**

1. Whether Section 16 of the Clayton Act authorizes an order preserving the separate operation and competitive viability of Warner Bros. Discovery's acquired businesses after

consummation of a merger, so that divestiture remains effective final relief if Plaintiffs prevail.

2. Whether Defendants' announced plan to unify Paramount+ and HBO Max, their consolidation of executive decision-making, and the actual post-closing increase in discovery+ subscription prices establish a present threat to independent competitive offerings and consumer interests warranting interim preservation.

3. Whether the equities favor maintaining identifiable separate assets and operations during the litigation, now that closing is complete and pre-closing financing charges cannot be invoked to justify irreversible integration.

## I. INTRODUCTION

The merger has closed. The question now is whether the Court will preserve its power to afford an effective remedy. The Supreme Court answered that question in *California v. American Stores Co.*, 495 U.S. 271 (1990): a court may require an acquiring company to operate acquired businesses separately pending adjudication and may ultimately order divestiture in an action under Section 16 of the Clayton Act. The injunction requested here is the very sort of remedy sustained in *American Stores*.

The threat is no longer hypothetical. On October 6, 2026, Skydance announced the completed acquisition of Warner Bros. Discovery and declared that its direct-to-consumer streaming products "will unify into a single service over time." Alioto Decl. ¶¶ 2–4, Exs. A–B. It disclosed a program targeting more than $6 billion in synergies and a reorganization of technology, procurement, marketing, and operations. *Id.* ¶¶ 3–4. Seven days after closing, on October 13, discovery+ increased its U.S. monthly subscription prices from $5.99 to $6.99 and from $9.99 to $11.99. *Id.* ¶ 5, Ex. C. Those increases are approximately 16.7 percent and 20 percent. The company's own announcements establish both a concrete pricing development and

an announced course toward product consolidation.

Consumers should not be told to await final judgment while the businesses they challenge are being combined beyond practical separation. Streaming customers buy not just content but independently determined prices, subscriptions, promotions, libraries, and product features. Removing independent decision-makers threatens those purchasing choices. Likewise, the disappearance of separate studios and news organizations would affect programming, editorial staffing, investment, and distinct offerings in ways that cannot readily be reconstructed from financial records after trial.

Plaintiffs do not ask the Court to undo the closing today. They ask Defendants to preserve what remains: identifiable assets, separate business operations, independent subscriber offerings, records, programming and licensing rights, and the means to implement meaningful structural relief. A preservation order now allows a full merits adjudication without letting unilateral integration render the judgment ineffectual.

## II. FACTUAL BACKGROUND

Skydance acquired Paramount in August 2025. Before the Warner Bros. Discovery transaction, Paramount+ and HBO Max competed under independent ownership for subscribers' monthly expenditures, attention, retention, promotional response, and demand for differentiated programming. The First Amended Complaint alleges that Marazzo and Rubinsohn subscribe to both services and make recurring decisions whether to keep, cancel, replace, or change each subscription based on price, programming, advertising, and perceived quality. FAC ¶¶ 30–34, 82–89.

Skydance completed its acquisition of Warner Bros. Discovery on October 6, 2026. Its contemporaneous public release identifies the two streaming products, two major film studios,

and the CBS News and CNN businesses now housed within one company. Alioto Decl. ¶¶ 2–4, Exs. A–B. Its stated plan is not simply shared corporate ownership. It calls for unifying direct-to-consumer streaming products into one service, with savings derived from technology and operational integration. *Id.*

Skydance's October 6 communication to employees acknowledges that integrating the companies will entail workforce decisions. Alioto Decl. ¶ 6, Ex. D. Its October 5 leadership announcement identifies a companywide executive management structure. *Id.* ¶ 7, Ex. E. A contemporaneous *Variety* report states that Warner Bros. Motion Picture Group executives Pamela Abdy and Michael De Luca were dismissed during the transition. *Id.* ¶ 8, Ex. F. These developments demonstrate that the new ownership is already replacing distinct decision-making structures, not merely holding acquired shares.

On October 13, discovery+ posted new subscription prices effective immediately for new U.S. customers. The ad-supported tier increased by $1 per month and the ad-free tier by $2 per month. Existing subscribers were notified of the increases applicable on billing dates beginning November 12, subject to their plan terms. Alioto Decl. ¶ 5, Ex. C. Plaintiffs do not depend on treating discovery+ as the same subscription product as Paramount+ or HBO Max. The increase is actual post-closing conduct within the acquired streaming portfolio, accompanying the company's announced plan to unify the two principal rival services.

## III. LEGAL ARGUMENT

### A. AMERICAN STORES EXPRESSLY PERMITS POST-CLOSING SEPARATION TO PRESERVE DIVESTITURE.

Section 16 authorizes a private plaintiff facing threatened injury from an antitrust violation to obtain injunctive relief according to equitable principles. 15 U.S.C. § 26. *American Stores*

addresses exactly the circumstance presented here: a merger already consummated and a plaintiff asking that the acquired business continue to operate separately while the Section 7 claim is adjudicated. 495 U.S. at 274–78. The Court held that Section 16 reaches divestiture and the intermediate restraint necessary to preserve it. *Id.* at 295–96.

The trial court in *American Stores* prohibited the purchaser from integrating the acquired grocery-store business. The Supreme Court held that the broad statutory authorization of injunctive relief allowed such structural preservation even though legal title had transferred. 495 U.S. at 274–77, 295–96. The practical lesson is straightforward: the formal completion of a merger does not strip the Court of authority to prevent the acquired operations from being combined while the legality of the transaction is tried.

Plaintiffs seek the same protection. The operative order can leave the completed stock acquisition intact while keeping the affected streaming businesses separately identifiable, financially accountable, and commercially viable. The Court need not decide today whether divestiture ultimately will be ordered. It need only preserve that option against integration steps that would materially frustrate the final decree. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130 (1969).

**B. DEFENDANTS' ANNOUNCED INTEGRATION THREATENS THE VIABILITY OF A MEANINGFUL REMEDY.**

The Court should evaluate the transaction on the facts as they now stand. Defendants themselves forecast a single direct-to-consumer service. Alioto Decl. ¶ 4, Ex. B. A single subscriber database, consolidated pricing strategy, unified customer-facing application, migrated licensing rights, and eliminated independent management may eventually make it impracticable to restore two functioning competitors. The point of hold-separate relief is to avoid asking the

Court after trial to reconstruct a business whose capacity to compete has already been dismantled.

The workforce and management evidence reinforces the immediacy of the threat. Management has acknowledged difficult workforce decisions in the integration and has announced a single leadership structure. Alioto Decl. ¶¶ 6–7, Exs. D–E. Reported removals of senior Warner Bros. film leadership show the potential effect on independently exercised creative and release decisions. *Id.* ¶ 8, Ex. F. The proposed injunction would not reverse lawful personnel decisions already made; it would preserve the separate assets, authority, contractual relationships, and information needed for independent competitive operations pending judgment.

Price competition is also a present concern, not a remote abstraction. A week after closing, discovery+ increased its published U.S. subscription rates by 16.7 and 20 percent. Alioto Decl. ¶ 5, Ex. C. The motion does not require the Court to determine the cause of that specific pricing decision on this record.[1] It demonstrates the importance of preserving competitive pricing alternatives as Defendants publicly commit to unifying Paramount+ and HBO Max. The threatened loss of independent price-setting is precisely the loss the injunction would prevent.

### C. THE EVIDENCE SUPPORTS A LIKELIHOOD OF SUCCESS ON THE

[1] The Court previously declined to infer causation from Paramount+'s price increase approximately five months after Skydance acquired Paramount, finding that temporal proximity insufficient to establish traceability. (Dkt. 79 at 5.) Now, following Paramount's acquisition of Warner Bros. Discovery, discovery+ increased subscription prices just seven days after closing. Defendants may argue that this increase occurred too soon to be attributable to the acquisition because it was planned beforehand. Apparently, five months is too long, while seven days may be too short. The antitrust laws cannot impose an unstated temporal window in which a price increase is sufficiently close to a merger to be relevant, but not so close that it can be dismissed as preplanned. Such a standard would render post-merger pricing evidence practically incapable of supporting an inference of competitive injury, regardless of when the increase occurred. The timing and circumstances of these increases are evidence to be evaluated, not a basis for categorically excluding the inference Plaintiffs advance.

**SECTION 7 CLAIMS.**

Section 7 prohibits an acquisition whose effect "may be substantially to lessen competition." 15 U.S.C. § 18. Its standard is preventive. *Brown Shoe Co. v. United States*, 370 U.S. 294, 317 (1962). The newly combined enterprise acquired control over Paramount+ and HBO Max, whose formerly separate operators competed for the same recurring customers, content, and engagement. The company has confirmed that those products will be unified. Alioto Decl. ¶ 4, Ex. B. This is direct evidence of the intended elimination of independent commercial decision-making between two significant streaming offerings.

The antitrust inquiry is not confined to proof of a single concentration percentage. Market structure is relevant, but the Court also examines competitive relationships, substitution, and the probable effect of the acquisition. *United States v. Philadelphia National Bank*, 374 U.S. 321, 363 (1963); *St. Alphonsus Medical Center-Nampa Inc. v. St. Luke's Health System, Ltd.*, 778 F.3d 775, 785–86 (9th Cir. 2015). The complaint identifies the independently supplied differentiated products, overlapping subscribers, promotional rivalry, separate production decisions, and predictable incentives arising from common ownership. FAC ¶¶ 63–97, 112–134.

Paramount's own SEC filing forecloses any suggestion that a paid direct-to-consumer (DTC) subscription-streaming market is fanciful. While competing with Netflix to acquire Warner Bros. Discovery, Paramount filed with the SEC a statement by its general counsel, rejecting Netflix's attempt to treat free, user-generated YouTube and TikTok videos as adequate substitutes for premium programming on Netflix and HBO Max. Paramount characterized that approach as a "tortured and absurd definition of the market." Alioto Decl. ¶ 9, Ex. G (SEC filing Jan. 20, 2026). It would be extraordinary for Defendants now to deny the plausibility of the very streaming-market distinction their chief legal officer insisted regulators recognize when Netflix

was the proposed acquirer. The statement is attributable to Paramount, Fed. R. Evid. 801(d)(2), and corroborates the distinct consumer demand for paid, professionally produced subscription streaming alleged in the FAC. Paramount's position defeats the suggestion that Plaintiffs invented this competitive arena.

Defendants may contend that adding two studios and two libraries produces a more valuable consumer product. That theory is an issue for evidence, not a reason to permit permanent integration before the evidentiary record can be developed. The relief sought leaves both brands and their programming available; it preserves the possibility of the independent offerings consumers already purchase. A hold-separate order thus respects the merits inquiry while preventing the answer from being determined by acts undertaken during the litigation.

### D. PLAINTIFFS FACE CONCRETE, PERSONAL INJURY FROM ELIMINATION OF COMPETING SERVICES.

Marazzo and Rubinsohn are actual customers of both Paramount+ and HBO Max. FAC ¶ 34. They do not assert a generalized preference that competition exist somewhere in the economy. Their own recurring subscription decisions involve two services whose independent price, promotions, content selection, and other commercial attributes are the subject of the announced unification. The purchase of two separately offered products does not become immaterial merely because their merger has already legally closed. Their prospective injury is the threatened removal of independently set customer terms and differentiated choices in their own purchases.

Defendants' own chief executive recognizes that consumers determine the commercial success of the products at issue. In his August 4, 2026 guest essay in *The New York Times*, David Ellison wrote: "It's the audience — the American people — that has the final say" whether

movies succeed or news organizations thrive. Alioto Decl. ¶ 10, Ex. H; Dkt. 80-2 at 3. That same audience includes the subscribers who choose, pay for, renew, or cancel Paramount+ and HBO Max. Marazzo and Rubinsohn are among them. If consumers are the final arbiters of these businesses' commercial success, it would turn the antitrust laws on their head to treat the consumers who actually purchase the competing subscription products as strangers to the threatened elimination of their independent choices. The assertion does not eliminate the need to prove a concrete, traceable injury; it underscores why these Plaintiffs' own purchases and the threatened loss of competition in their market provide that connection.

The Supreme Court recognizes that consumers are the central beneficiaries of antitrust law. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 343 (1979). The Ninth Circuit identifies higher prices, fewer choices, and lower-quality products as cognizable antitrust injuries. *PLS.com, LLC v. National Association of Realtors*, 32 F.4th 824, 840 (9th Cir. 2022). Section 16 authorizes protection against threatened injury without insisting that consumers first endure every projected consequence. *Zenith Radio*, 395 U.S. at 130. Indeed, *American Stores* itself recognizes that a private plaintiff must show harm to its own interests while recognizing the availability of hold-separate and divestiture relief. 495 U.S. at 295–96.

Indeed, it would be a remarkable inversion of the antitrust laws to suggest that the consumers who directly purchase the affected products cannot challenge the elimination of competition between their suppliers. Congress did not reserve the right to challenge unlawful mergers to competitors, the Department of Justice, or state attorneys general. Section 16 of the Clayton Act expressly authorizes private persons threatened with antitrust injury to seek injunctive relief. 15 U.S.C. § 26; *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130 (1969).

That independent statutory right is particularly important here. The States elected to settle their challenge to the acquisition. Plaintiffs did not. Congress provided a private right of action precisely so that enforcement of the antitrust laws would not depend exclusively upon the willingness of public officials to pursue a particular merger. A governmental settlement cannot extinguish the independent rights Congress conferred upon consumers. To deny these Plaintiffs standing merely because they are consumers would effectively treat them as "second-class citizens" and deprive the intended beneficiaries of the antitrust laws of the means Congress provided to protect themselves when public enforcement does not preserve competition.

The threatened injury is concrete. Paramount has announced that it will unify its direct-to-consumer services into a single platform, replacing independent competitive decision-making with common control. The loss of separate pricing decisions, competing programming investments, independent promotional strategies, and distinct service offerings directly threatens the value of the subscriptions Plaintiffs purchase. Once subscriber systems, content rights, pricing functions, and personnel capabilities have been integrated, an eventual divestiture may be substantially more difficult to accomplish. Monetary relief cannot recreate an independent competitor whose operational capacity has been dismantled. *See Boardman v. Pacific Seafood Group*, 822 F.3d 1011, 1022–24 (9th Cir. 2016).

The requested injunction therefore serves the precise preventive purpose of Section 16. Plaintiffs do not ask the Court to undo the acquisition today. They ask only that Defendants preserve the separate businesses so that, should Plaintiffs prevail, the Court can order meaningful relief rather than discover that the competitors Congress intended to protect have already been irreversibly combined.

The Court's August 5 order addressed an earlier pleading and permitted amendment. Dkt.

79 at 4–9. The current motion concerns the completed transaction and Defendants' subsequent public commitments, including an affirmative plan to unify the two services purchased by named Plaintiffs. The consumer harm alleged is now anchored in that announced plan and in observed post-closing changes. Plaintiffs seek prospective preservation for the period required to adjudicate the competing evidence, not an assumption that every announced synergy necessarily violates Section 7.

**E. EQUITY FAVORS PRESERVATION; PRE-CLOSING TICKING FEES NO LONGER APPLY.**

The familiar preliminary-injunction factors are likelihood of success, threatened irreparable harm, the balance of equities, and the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). The first two factors are supported by the evidence of lost independent rivalry and impending operational unification. Once subscriber systems, content rights, personnel capabilities, and pricing functions are irreversibly combined, monetary relief to individual subscribers cannot readily create functioning competitors. *See Boardman v. Pacific Seafood Group*, 822 F.3d 1011, 1022–24 (9th Cir. 2016).

Moreover, the balance of equities has changed materially since the pre-closing proceedings. Defendants have completed the acquisition. They no longer confront a requested delay to closing itself; pre-closing ticking fees cannot continue to accrue as the price of waiting to consummate that already completed transaction. The proposed injunction permits ordinary programming, subscriber service, maintenance, lawful licensing, investment, and day-to-day operations. It restricts only steps that would make the separate businesses materially more difficult to restore if the Court later orders structural relief. Legitimate, particularized compliance burdens may be addressed through tailored modifications.

The public interest favors a meaningful final judgment in a case challenging an acquisition of firms supplying nationally important streaming, film, and news products. Congress enacted Section 7 to address the incipiency of diminished competition. The Court need not require the public to bear irreversible loss of an independently viable business while these claims are tried. The Court may set an appropriate bond under Rule 65(c) after considering evidence of actual costs of maintaining separate operations rather than treating expired pre-closing financing charges as the measure of potential harm.

**F. THE REQUESTED INJUNCTION IS SPECIFIC, LIMITED, AND ADMINISTRABLE.**

Plaintiffs propose that Defendants retain separate, commercially viable Paramount+ and HBO Max subscriber services; preserve separate books, material subscriber and pricing records, and identifiable technology and licensing assets; refrain from forced subscriber migration into one replacement service; and avoid transactions that would make later separation impracticable. The relief may include preserving distinct identifiable film and national-news assets and the records necessary to determine and implement appropriate divestiture, while leaving editorial judgments, programming content, and ordinary lawful business activity untouched.

A compliance declaration and periodic reporting would provide a workable safeguard without placing the Court in day-to-day operational control. Nothing in the proposed order transfers title, orders current divestiture, reinstates employees, or prevents investment in either service. It simply requires that the acquisition not be used to destroy the practical possibility of the structural remedy Section 16 expressly permits.

**IV. CONCLUSION**

The Supreme Court has already approved a post-closing injunction requiring the acquirer to

operate the acquired business separately while a Section 7 claim is tried. *American Stores*, 495 U.S. at 274–78, 295–96. Here Defendants have announced consolidation of the very streaming products purchased by Plaintiffs, begun post-closing organizational changes, and increased published subscription prices within the acquired portfolio. A tailored hold-separate order preserves meaningful adjudication without undoing closing. Plaintiffs respectfully request that the Court grant the noticed motion and enter the accompanying proposed order.

DATED: October 16, 2026

**ALIOTO LAW FIRM**

By: /s/ Joseph M. Alioto
Joseph M. Alioto, Esq.
Tatiana V. Wallace, Esq.
Attorneys for Plaintiffs

**FOREMAN & BRASSO**

By: /s/ Ronald D. Foreman
Ronald D. Foreman, Esq.
Ian A. Hansen, Esq.
Attorneys for Plaintiffs

**LEAD TRIAL COUNSEL CERTIFICATION**

I certify that I have personally verified the accuracy of the factual representations, legal authorities, citations, and other content of this filing, as required by Judge Martínez-Olguín's Standing Order.

Dated: October 16, 2026

/s/ Joseph M. Alioto
Joseph M. Alioto, Lead Trial Counsel