United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA FAUST, et al.,<br>Plaintiffs,<br>v.<br>PARAMOUNT SKYDANCE CORPORATION, et al.,<br>Defendants. | Case No. 26-cv-03790-AMO<br><br>**ORDER RE DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 87 |

Defendants Paramount Skydance Corporation's and Skydance Media, LLC's motion to dismiss the First Amended Complaint ("FAC") was heard before this Court on October 21, 2026. Having read the papers filed by the parties and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, the Court **GRANTS** Defendants' motion for the following reasons.

## I. BACKGROUND

This is an antitrust case arising from two corporate mergers. Plaintiffs originally filed this action on April 30, 2026, asserting violation of Section 7 of the Clayton Act with respect to both the August 7, 2025 Skydance-Paramount merger and the then-anticipated Paramount-Warner Bros. Discovery merger. Dkt. No. 1 ("Compl."). Defendants moved to dismiss the original complaint on June 3, 2026, contending that Plaintiffs lacked Article III standing and antitrust standing and had failed to state a claim upon which relief can be granted. Dkt. No. 36. The Court granted the motion and dismissed Plaintiffs' claims for lack of Article III and antitrust standing on August 5, 2026. Dkt. No. 79. This order largely assumes familiarity with that earlier order for contextual purposes, but there, the Court found that Plaintiffs alleged "only one concrete and particularized injury – a single, historical price increase on Paramount+," and that such alleged

injury did not confer Article III standing because (1) Plaintiffs Faust and McCarthy did not claim to pay for Paramount+, and (2) for the other Plaintiffs, the price increase was not fairly traceable to either challenged merger transaction. *Id.* at 4-5. The Court also held that Plaintiffs' other allegations of harm from the mergers failed "to allege any facts to plausibly show how those claimed harms have materialized or would materialize." *Id.* at 6. The Court held such allegations were "too vague and speculative to establish standing," and the Court dismissed Plaintiffs' complaint because they had not made "allegations that plausibly show how the merger has caused or would cause injury to any of the Plaintiffs 'in a personal and individual way.' " *Id.* The Court granted Plaintiffs leave to amend, affording them an opportunity "to proffer factual allegations that support standing to prosecute these antitrust claims." *Id.* at 9.

Plaintiffs filed the FAC on August 14, 2026. Dkt. No. 81 ("FAC"). The FAC modifies the definitions of the antitrust markets alleged in the original complaint. First, instead of a "premium video distribution" market, Plaintiffs now allege a market that includes only "direct-to-consumer subscription streaming services." FAC ¶ 63. The FAC no longer includes "cable television and related offerings" as competitors in that market. *Compare id.*, *with* Compl. ¶ 86. Second, instead of a "national television news programming" market, Plaintiffs now allege a narrower market for "paid national television news," which includes only news "supplied to consumers through paid cable, satellite, and live-TV streaming packages." FAC ¶ 92. This new market definition no longer includes national news distributed via broadcast television. *Compare id.*, *with* Compl. ¶ 99. Third, instead of a "theatrical distribution" market in which theaters were the licensees of films, Plaintiffs now allege a "consumer market for first-run theatrical motion pictures," which consists of "the sale of admission to differentiated first-run theatrical motion pictures to consumers in the United States." FAC ¶ 112. One further amendment in the FAC bears emphasis. To connect the Skydance-Paramount merger to the January 2026 Paramount+ price increase, the FAC alleges that Paramount's "new management" adopted a "post-acquisition change in pricing and monetization policy" which "emphasiz[ed] average revenue per user ["ARPU"] and profitability." *See* FAC ¶¶ 23-24, 26, 136-137, 139.

Despite the amendments, Defendants move to dismiss the FAC on many of the same grounds previously considered. Dkt. No. 87.

## II. DISCUSSION

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, it need not accept legally conclusory statements unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679.

Review is generally limited to the contents of the complaint, although the court can also consider a document on which the complaint relies if the document is central to the claims asserted in the complaint, and no party questions the authenticity of the document. *See Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). The court may consider matters that are properly the subject of judicial notice, *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001), and may also consider documents referenced extensively in the complaint and documents that form the basis of the plaintiffs' claims. *See No. 84 Emp'r-Teamster Jt. Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 925 n.2 (9th Cir. 2003).

**A. Antitrust Injury**

In their motion to dismiss the FAC, Defendants advance several related challenges, including, for example, failure to allege Article III standing, failure to allege antitrust standing, failure to allege a cognizable antitrust market to support a Clayton Act claim, and failure to allege substantial harm to competition as a result of either merger. *See generally* Dkt. No. 87. The Court focuses its attention on the issue of antitrust standing and does not reach the remaining arguments in favor of dismissal.

Consumers bringing antitrust claims must establish antitrust standing, a threshold requirement for private plaintiffs. *See R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*, 890 F.2d 139, 145 (9th Cir. 1989) ("If [antitrust] standing is not found, an essential element of the plaintiff's case is missing and the plaintiff's case fails."). "Antitrust standing is distinct from Article III standing. A plaintiff who satisfies the constitutional requirement of injury in fact is not necessarily a proper party to bring a private antitrust action." *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1054 n.3 (9th Cir. 1999) (citation omitted). To establish antitrust standing, the plaintiff must show that its loss or damage constitutes "antitrust injury" – that is, injury "of the type the antitrust laws were intended to prevent." *Am. Ad Mgmt.*, 190 F.3d at 1055 (quoting *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990)).

In particular, antitrust injury "ensures that the harm claimed by the plaintiff corresponds to the rationale for finding a violation of the antitrust laws in the first place." *Atl. Richfield*, 495 U.S. at 342. "[A] plaintiff may not merely allege that the defendant is engaged in some anticompetitive conduct and that 'some injury is occurring.' " *Reilly v. Apple Inc.*, 578 F. Supp. 3d 1098, 1110 (N.D. Cal. 2022) (quoting *Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*, 959 F.2d 468, 486-87 (3d Cir. 1992)). Demonstrating antitrust injury requires a plaintiff to "*link* the two showings with a theory of causation that is both plausible and cognizable by the antitrust laws." *Id.* at 1110 (emphasis in original). The Ninth Circuit has identified four requirements for showing antitrust injury: "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *City of Oakland v. Oakland Raiders*, 20 F.4th 441, 456 (9th Cir. 2021) (quoting *Am.*

*Ad Mgmt.*, 190 F.3d at 1055 (quotations omitted); *see also Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977)).

In *Demartini v. Microsoft Corp.*, 662 F. Supp. 3d 1055 (N.D. Cal. 2023), the court described the relevant pleading standard for antitrust harm in a Section 7 case, stating,

> To meet its prima facie burden, a plaintiff must allege facts that plausibly show it is reasonably probable a merger will be anticompetitive[.] *Dehoog v. Anheuser-Busch InBev SA/NA*, 899 F.3d 758, 763 (9th Cir. 2018). "In practical terms, this means adequately alleging facts that an acquisition creates 'an appreciable danger' or a 'reasonable probability' of anticompetitive effects in the relevant market." *Id.*; *see also Saint Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys., Ltd.*, 778 F.3d 775, 785 (9th Cir. 2015) (to meet its prima facie burden, the plaintiff must establish "that the merger will probably lead to anticompetitive effects in that market"). Merely alleging the elimination of a rival does not plausibly support an inference of an appreciable danger of anticompetitive effects in a relevant market. *See Malaney v. UAL Corp.*, No. 3:10-CV-02858-RS, 2010 WL 3790296, at *7 n.11 (N.D. Cal. Sept. 27, 2010), aff'd, 434 F. App'x 620 (9th Cir. 2011) ("Simply put, there is no support for the notion that, merely by removing one competitor, any horizontal merger in the airline industry will be anticompetitive and thereby violate Section 7").

*Demartini*, 662 F. Supp. 3d at 1064-65.

In this Section 7 case, antitrust standing is premised on two forms of purported antitrust harm, the same two forms of harm discussed in the Court's earlier order: (1) the price increase for Marazzo's and Rubinsohn's Paramount+ subscriptions and (2) the loss of competition resulting from the mergers. The Court considers these two issues in turn.

**1. Monetary Harms**

Plaintiffs allege antitrust harm in the form of the Paramount+ price increase that occurred in January 2026, five months after the Skydance-Paramount merger. FAC ¶¶ 137-38. This price increase only shows harm to Plaintiffs Marazzo and Rubinsohn, not Faust, McCarthy, or Talewsky. *See, e.g.*, FAC ¶¶ 19, 25, 76, 79, 135, 138-39, 171-73, 183 (alleging only Marazzo and Rubinsohn subscribe to Paramount+ and have paid a price increase). The price increase for the subscription service fails to establish actionable antitrust harm, however, for at least a few reasons.

First, Plaintiffs rely heavily on "a straightforward sequence" to trace the price increase to Skydance's merger with Paramount: "Skydance acquired Paramount; control and incentives

United States District Court
Northern District of California

changed; new management adopted a monetization strategy emphasizing ARPU and profitability; Paramount announced the increase about three months later; and Marazzo and Rubinsohn paid it." Dkt. No. 90 at 11 (citing FAC ¶¶ 18-26, 76-79); *see also* FAC ¶ 139. However, Plaintiffs acknowledge that the price increase in question was announced in November 2025 and implemented in January 2026, *see* FAC ¶¶ 24-25, before Paramount and Warner Bros. executed their merger agreement in February 2026, *see* Compl. ¶¶ 69-70. Plaintiffs accordingly cannot establish that the price increase resulted from the Paramount and Warner Bros. merger – it went into effect prior to the merger and accordingly cannot be attributed to that transaction. Plaintiffs' assertions of antitrust standing cannot rest on such unstable footing as to the second challenged merger.

Second, Defendants aver that Marazzo and Rubinsohn continue to fall short of establishing standing to challenge the Paramount-Skydance merger based on the Paramount+ price increase. *See* Dkt. No. 87 at 13-16. In general, Defendants contend, Plaintiffs fail to allege sufficient facts to draw a traceable connection between the conduct complained of – the Paramount-Skydance merger – and the price increase. *Id.* In response, Plaintiffs assert "the FAC alleges the missing connection: changed control and incentives, transferred control over rival-supplied content, a post-acquisition monetization strategy, the ensuing price increase, and Plaintiffs' payment of it." Dkt. No. 90 at 13-14 (citing FAC ¶¶ 18-26, 67-81). Plaintiffs, however, proffer no factual connection between the "monetization strategy" and reduced competition resulting from the merger. Likewise, they advance no factual connection between the "transfer of control" affected by the merger and the price increase. Indeed, Plaintiffs elsewhere acknowledge that the "transfer of control" of which they complain relates to a different issue – vertical integration of the entities and control over "pipeline, licensing, exclusivity, windowing, duration, and platform allocation" – not to raising prices on Paramount+ streaming subscriptions to consumers. Dkt. No. 90 at 25 (citing FAC ¶¶ 20-22, 68-81, a nearly identical range of paragraphs as cited in support of a potential connection between the merger and the price increase). In the absence of further factual support, Plaintiffs fail to establish a plausible "link" between such strategies or altered incentives and any lessening of competition from the merger. *Reilly*, 578 F. Supp. 3d at 1110; *see also Lujan v. Defs.*

*of Wildlife*, 504 U.S. 555, 560 (1992) (holding that, to generally support standing, connection must be "between the injury and the conduct complained of").[1]

If Plaintiffs' challenge to the Paramount-Skydance merger is based on a lessening of competition of the type the antitrust laws were designed to protect against, they fail to explain how the merger led, as a factual matter, to the price increase. In this way, Plaintiffs' "bare assertions" remain too " 'vague and conclusory' to plead a plausible antitrust injury." *Arcell v. Google LLC*, 744 F. Supp. 3d 924, 931 (N.D. Cal. 2024) (dismissing amended complaint for failure to establish antitrust injury). The monetary harm of the price increase cannot support antitrust standing as presently pleaded.

**2. Threats of Harm to Competition**

Plaintiffs further assert they have antitrust standing because consumers like them are always injured by horizontal mergers – any time a merger "places presently independent competitors under common ownership," injury to consumers is inevitable, though the nature of that injury is "uncertain[]." Dkt. No. 90 at 15; *see also id.* at 16 ("the alleged injury is . . . consumer harm flowing from elimination of independent rivalry"). Plaintiffs aver that, because the antitrust laws are designed to protect against consumer harm, consumers always have standing to challenge any merger. *See* Dkt. No. 90 at 5-6, 8-10, 13-15. But that is not the law. *Malaney*, 2010 WL 3790296, at *7 (stating that it is "wrong" that "any non-trivial acquisition of a significant rival is per se violative of the Clayton Act"). Additional factual allegations are required to connect the dots between the challenged mergers and the harm to competition. *Dehoog*, 899 F.3d at 763 ("In practical terms, this means adequately alleging facts that an acquisition creates 'an appreciable danger' or a 'reasonable probability' of anticompetitive effects in the relevant market.").

Plaintiffs claim that "[t]he FAC alleges much more" than the elimination of a competitive rival. *See* Dkt. No. 90 at 24 (citing FAC ¶¶ 67-134, 151-80); *see also id.* at 14-15 (citing FAC ¶¶ 82-97, 151-80). The wide range of cited paragraphs, however, reflect no concrete and

[1] Even if Plaintiffs had presented a factual nexus, they advance no legal authority that such "incentives" or "strategies" are cognizable antitrust harms.

United States District Court
Northern District of California

particularized injury to any Plaintiff and instead describe market conditions and "reduced incentives." FAC ¶¶ 82-97, 151-80. Plaintiffs again fail to identify any specific facts to support their antitrust injury claims beyond overbroad, conclusory contentions. Plaintiffs' mere assertions, devoid of factual support, that the mergers threaten to cause some generalized injury, *see* Dkt. No. 90 at 5, 15, 17, 28 (alleging that the mergers "threaten[] higher prices, reduced output, diminished quality and variety, and fewer independent choices"), do not satisfy the pleading test. *See Twombly*, 550 U.S. at 557. Plaintiffs continue to fail to allege any facts to plausibly show how those claimed harms have materialized or would materialize.

Plaintiffs' failure is clarified when compared to other antitrust cases. In a recent Northern District case, for example, the court considered the sufficiency of plaintiffs' allegations that "prices and rates may be increased; rewards may be lowered or eliminated; the quality of the services may be decreased; and the benefits of competition will be substantially and adversely impacted if not completely eliminated." *Fry v. Cap. One Fin. Corp.*, No. 25-CV-03769-HSG, 2026 WL 751422, at *3 (N.D. Cal. Mar. 17, 2026) (quoting the pleading; emphasis omitted). The court found such a theory of harm too "attenuated and conclusory" to support plaintiffs' Clayton Act claims. *Id.* So too here. Similarly, the court dismissed a separate Section 7 Clayton Act case challenging a merger of steel producers where the thrust of plaintiffs' claims rested on the consolidation of market competitors – a theory of harm similar to the claims asserted by Plaintiffs in this case. *Freeland v. Nippon Steel Corp.*, 827 F. Supp. 3d 1241, 1252-53 (N.D. Cal. 2026). The court found "barebones" allegations regarding the elimination of competition through corporate merger insufficient, particularly where plaintiffs failed to proffer "non-conclusory allegations about the probable effect of the merger in terms of market share or concentration." *Id.* at 1252-53. And in finding the allegations of generalized harm to competition insufficient, the orders of dismissal in both *Fry* and *Freeland* rejected nearly identical arguments regarding the applicability of Supreme Court precedent as the argument presented by Plaintiffs here. *Compare* Dkt. No. 90 at 22-23 *with Fry*, 2026 WL 751422, at *6, & *Freeland*, 827 F. Supp. 3d at 1252 (rejecting plaintiffs' reliance on *Brown Shoe Co. v. United States*, 370 U.S. 294, 322 n.38 (1962), and *United States v. Philadelphia Nat. Bank*, 374 U.S. 321, 364 (1963)). In this case, just as in

those other recent Northern District cases involving similar challenges, Plaintiffs' allegations fall short. Plaintiffs' allegations projecting that potential anticompetitive harms would necessarily result from the elimination of a market competitor, devoid of further factual support, fail to establish actionable harm of the sort the antitrust laws were designed to shield against. To the extent they rely on the purported antitrust harm inherent in corporate mergers, Plaintiffs' Clayton Act claims must face dismissal.

* * *

Plaintiffs again fail to plausibly allege antitrust standing based on either potential harm. The Court must accordingly GRANT Defendants' motion to dismiss the FAC.

**B. Leave to Amend**

Rule 15(a) dictates that "[t]he court should freely give leave [to amend] when justice so requires," and there is a strong public policy in favor of permitting amendment. Fed R. Civ. P. 15(a); *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999). Courts in the Ninth Circuit apply Rule 15(a) with "extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (per curiam). Courts may deny leave to amend "only if there is strong evidence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc." *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (modification in original).

Here, Plaintiffs have now presented two deficient pleadings, but the Court finds that Plaintiffs may yet be able to plausibly allege antitrust standing. The Court, employing the "extreme liberality" with which to permit leave to amend required in this Circuit, therefore GRANTS Plaintiffs leave to file a further amended complaint. *Eminence Cap.*, 316 F.3d at 1051. The Court is very unlikely to permit further amendment as to any claim not sufficiently pleaded in the next amended complaint.

//

//

## III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss. The Court allows Plaintiffs to file a further amended complaint within 21 days from the date of this order. No additional claims or parties may be added absent leave of Court or stipulation of Defendants.

**IT IS SO ORDERED.**

Dated: October 21, 2026

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**